**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

GEORGINA SANTICH, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

VCG HOLDING CORP,
LOWRIE MANAGEMENT, LLLP, and
DENVER RESTAURANT CONCEPTS LP D/B/A PT'S SHOWCLUB,

      Defendants.

---

## COMPLAINT & JURY DEMAND

---

Plaintiff Georgina Santich, individually and on behalf of all others similarly situated, by and through her attorneys, Mari Newman, Darold W. Killmer, and Andy McNulty, of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for her *Complaint & Jury Demand* as follows:

### I. INTRODUCTION

1.      This is a case about the exploitation of one of the most vulnerable groups of employees: young women working as dancers in adult entertainment establishments.

2.      Defendants, Denver Restaurant Concepts LP d/b/a PT's Showclub, VCG Holding Corp, and Lowrie Management LLLP, have and continue to unjustly and illegally enrich themselves at dancers' expense, denying Plaintiff and other Class members their earned minimum wages, overtime pay, and the full retention of their tips, charging the Plaintiff and similarly situated dancers fees to work, and subjecting them to fines.

3.      Defendants' actions in denying Plaintiff and other Class members a minimum wage, overtime pay, and the full retention of their earned tips, and requiring Plaintiff and other

1

Class members to pay various fees and fines in order to work, have significantly decreased the incomes of these vulnerable workers while unjustly and illegally enriching Defendants.

## JURISDICTION AND VENUE

4.     This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), the Colorado Minimum Wage Act (the "CMWA"), Colo. Rev. Stat. § 8-6-101 *et seq.*, and Colorado common law. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5.     This court has supplemental jurisdiction over any and all state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in the District of Colorado and a substantial part of the events at issue in this lawsuit took place in the District of Colorado.

## III. PARTIES

7.     Plaintiff Georgina Santich is citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado.  Plaintiff was, at relevant times, employed as a dancer at PT's Showclub in Denver, Colorado.

8.     The Class that Plaintiff seeks to represent is composed of employees who worked as dancers for Defendants in the State of Colorado and elsewhere where Defendants intentionally and unlawfully misclassified the members of the Class ("Plaintiff Dancers," "dancers" or "Class members") as independent contractors, failed to pay them a minimum wage and overtime payments, charged them various fees and fines, and otherwise violated their legal rights as set forth herein.

9.     Defendant VCG Holding Corp. ("VCG") is a corporation with a principal place of business in Lakewood, Colorado. VCG is a formerly publicly traded company that holds ownership of over twenty adult entertainment establishments in Colorado, California, Florida, Illinois, Indiana, Kentucky, Maine, and North Carolina. This includes locations in Denver, Miami, East St. Louis, Indianapolis, Louisville, and Portland. VCG owns, operates, and controls PT's Showclub. Troy Lowrie is the Chief Executive Officer of VCG. A list of each nightclub owned, operated, and controlled by VCG is provided below, along with each nightclub's address:

a.  Imperial Show Girls, 2640 W. Woodland Drive, Anaheim, California

b.  Diamond Cabaret & Steakhouse, 1222 Glenarm Place, Denver, Colorado

c.  PT's Showclub Denver, 1601 W. Evans Avenue, Denver, Colorado

d.  PT's All Nude Denver, 3480 S. Galena Street, Denver, Colorado

e.  La Boheme, 1443 Stout Street, Denver, Colorado

f.  The Penthouse Club, 4551 E. Virginia Avenue, Denver, Colorado

g.  PT's Showclub Miami, 7565 West 20th Avenue, Hialeah, Florida

h.  Country Rock Cabaret, 200 Monsanto Avenue, Sauget, Illinois

i.  The Penthouse Club, 1401 Mississippi Avenue, Sauget, Illinois

j.  Roxy's, 210 Madison Street, Brooklyn, Illinois

k.  PT's Centreville, 60 Four Corners Lane, Centreville, Illinois

l.  PT's Showclub Indy, 7916 Pendleon Pike, Inidianapolis, Indiana

m.  PT's Showclub Louisville, 227 E. Market Street, Louisville, Kentucky

n.  PT's Showclub Portland, 200 Riverside Street, Portland, Maine

o.  The Men's Club Raleigh, 3210 Yoker Road, Raleigh, North Carolina

10. Defendant VCG owns and operates these clubs through (at least) the following subsidiaries: VCG Real Estate Holdings, Inc.; VCG Restaurants Denver, Inc.; VCG CO Springs, Inc.; VCG Phoenix Corp.; Platinum of Illinois, Incorporated; Tennessee Restaurant Concepts, Inc.; International Entertainment Consultants, Inc.; Glenarm Restaurant LLC; Indy Restaurant Concepts, Inc.; Glendale Restaurant Concepts LP; Denver Restaurant Concepts LP; Cardinal Management LP; MRC LP; RCC LP; IRC LP; Golden Productions JGC Fort Worth, LLC; Kentucky Restaurant Concepts, Inc.; Classic Affairs, Inc.; Raleigh Restaurant Concepts, Inc.; KenKev II, Inc.; KenKev, Inc.; VCG Restaurant Miami, Inc.; Stout Restaurant Concepts, Inc.; Kenja II, Inc.; Kenja Venture, Inc.; Bradshaw Hotel, Inc.; VCG MN, Inc.; VCG Licensing, Inc.; and VCG Restaurants Portland, Inc.

7. Defendant Lowrie Management LLLP ("Lowrie Management") is a limited liability limited partnership with a principal place of business in Lakewood, Colorado. Upon information and belief, Defendant Lowrie Management, LLLP shares ownership of the adult entertainment establishments set forth herein. Lowrie Management LLLP, as of 2003, owned 57.82% of VCG shares and was the controlling shareholder of VCG. Lowrie Management LLLP owns, operates, and controls PT's Showclub. Troy Lowrie is the President and founder of Lowrie Management LLLP.

8. Defendant Denver Restaurant Concepts LP, d/b/a PT's Showclub ("PT's" or "PT's Showclub") is a Colorado corporation with a principal place of business in Lakewood, Colorado, that owns and operates one or more adult entertainment establishments located in Denver, Colorado.

9. At all times pertinent to this Complaint, Defendants were enterprises engaged in interstate commerce or in the production of goods for consumers as defined § 3(r) and 3(s) of the

4

FLSA, 29 U.S.C. §§ 203(r) and 203(s). The annual gross sales volume of the Defendants was in excess of $500,000 per annum.

## FACTUAL ALLEGATIONS[1]

***Defendants have, and continue to, exploit their vulnerable workers.***

10.     Defendant PT's Showclub in Denver, Colorado is an adult entertainment establishment that caters to male clientele by providing entertainment by female dancers, including Plaintiff and other Class members, in various states of undress.

11.     PT's Showclub in Denver is one of many such clubs in Colorado, California, Florida, Illinois, Indiana, Kentucky, Maine, and North Carolina owned and operated by Defendant VCG and Lowrie Management in the same manner as described herein.

12.     PT's Showclub and other clubs owned and operated by Defendants VCG (including its subsidiaries) and Lowrie Management, improperly classified Plaintiff and other Class members as independent contractors, failed to pay a minimum wage or overtime pay, regularly denied her and other members of the Class the full wages and tips they had earned, required them to pay various fees and fines in order to be allowed to work, and otherwise violated their legal rights as set forth herein.

13.     Defendants' business model is predicated entirely on the exploitation of Plaintiff and other Class members in order for the companies and their owners to earn a profit.

14.     Although Plaintiff and other Class members were employed by Defendants, Defendants paid them no money for the work they performed.

---

[1] While the allegations in this Complaint and Jury Demand are generally written in the past tense, they apply equally to Class members who are currently employed by Defendants.

15. Instead of paying Plaintiff and other Class members for their work, Defendants actually required that Plaintiff and other Class members pay *Defendants* before they were allowed to work.

16. The amounts that Defendants required Plaintiff and other Class members to pay before being allowed to work depended on the time their shifts began. In order to work the more profitable late night shifts, Plaintiff and other Class members were required to pay a larger fee to Defendants.

17. If Plaintiff and other Class members arrived prior to 3 p.m., they were forced to pay a "House Fee" of $30. If Plaintiff and other Class members arrived between 3 p.m. and 9 p.m., they were forced to pay a "House Fee" of $40 on Sunday – Thursday, and $50 on Friday and Saturday. If Plaintiff and other Class members arrived after 9 p.m., they were forced to pay a "House Fee" of $60.

18. During special events, Defendants could, at their sole discretion, charge dancers up to double the "House Fee."

19. In turn, Defendants used the money paid to them by Plaintiff and other Class members in order to fund the operation of PT's Showclub, and upon information and belief, other clubs owned by Defendants.

20. The only compensation received by Plaintiff and other Class members was a portion of the gratuities or "tips" that they were given by customers.

21. In addition to charging Plaintiff and other Class members various fees before allowing them to work, Defendants required that Plaintiff and other Class members give a portion of their earned tips to the security guards ("bouncers"), and a portion of their earned tips to the disk jockeys ("DJs").

22.     Plaintiff and other Class members were required to give 20% of their earned tips to the DJs at PT's Showclub after every shift.

23.     Plaintiff and other Class members were required to give 5% of their earned tips to the bouncers at PT's Showclub after every shift.

24.     Defendants required Plaintiff and other Class members to utilize valet parking, which was operated by Defendants for profit, and charged Plaintiff and other Class members $5 for valet parking each time they worked a shift.

25.     Defendants required Plaintiff and other Class members to pay the DJs fee of $5 for every song that they danced onstage. For example, if Plaintiff danced to twenty songs in one night on stage, she was required to pay $100. Defendants employed an individual who counted the number of songs Plaintiff and other Class members danced onstage to ensure that the $5 fee was tallied and collected.

26.     Defendants also required Plaintiff and other Class members to pay Defendants a fee of $5 for every personal dance provided to a customer.

27.     Defendants likewise required that Plaintiff and other Class members pay *additional* fees in order to dance in the" VIP Rooms." For every customer that Plaintiff and other Class members danced for in a VIP Room, Plaintiff and other Class members were required to pay $150 to Defendants for 60 minutes; $100 to Defendants for 30 minutes; and $30 to Defendants for 15 minutes.

28.     Further, Defendants fined Plaintiff and other Class members for not dancing on stage during their shifts. For every hour that Plaintiff and other Class members failed to dance on stage, they were fined $50 by Defendants.

29.     The fees, fines, and tips that Defendants required Plaintiff and other Class members to pay were unlawful "kick backs."

30.     In addition to funding their operations through the fees demanded of Plaintiff and other Class members, Defendants reaped the benefits of the substantial profits from door charges and drink sales without paying Plaintiff and Class members a wage.

31.     Furthering their exploitation, Defendants also failed to pay Plaintiff and other Class members overtime wages for weeks during which they worked in excess of forty hours.

32.     Plaintiff often worked over twelve hours a day, multiple times a week. Plaintiff consistently maintained this schedule for at least the past three years. She was never compensated for the hours that she worked beyond forty hours per week.  Upon information and belief, other Class members likewise worked more than 40 hours per week.

33.     In addition, Plaintiff and other Class members were denied access to drinking water and were forced to pay for bottled water while working, which cost $6 per bottle and directly profited Defendants.

***Plaintiff and other Class members were, and continue to be, employees of Defendants, not independent contractors.***

34.     At all relevant times, Plaintiff and other Class members are, and were, employees of PT's Showclub and other clubs owned and operated by Defendants VCG and Lowrie Management under the Fair Standards Labor Act ("FLSA") and relevant labor laws in the states in which they operate, including the Colorado Labor Code, and are, and were, entitled to a minimum wage, receipt of overtime pay, retention of all tips received, and all other benefits regularly conferred upon employees by statute.

35.     At all relevant times, Defendants have been the employers of Plaintiff and other Class members.

36.     Defendants intentionally and willfully misclassified Plaintiff and other Class members as independent contractors in order to avoid paying them the minimum wage and/or overtime pay required under the FLSA and/or and the labor laws of the states in which Defendants operated, including the Colorado Minimum Wage Act.

37.     Defendants also intentionally withheld other statutory rights and benefits, harming Plaintiff and other Class members and causing them significant injury and financial loss.

38.     Plaintiff and other Class members received no wage payments from Defendants, but instead depended only on gratuities received from customers.

39.     In many instances, Defendants' practices resulted in Plaintiff and other Class members earning less than minimum wage, in violation of federal and state law.

40.     Defendants exercised significant control over Plaintiff and other Class members.

41.     Defendants controlled the amount that Plaintiff and other Class members were allowed to charge for personal dances, setting the price at $20 per song, of which dancers were required to pay $5 to Defendants.

42.     Further, Defendants forced Plaintiff and other Class members to participate in periodic promotional activities, and to charge less for personal dances during these promotions by up to 50% less.

43.     Defendants controlled the amount that Plaintiff and other Class members were allowed to charge for dances in the VIP rooms, setting the amount at $450/hour (of which the dancer was required to pay $150 to Defendants); $300 for 30 minutes (of which the dancer was required to pay $100 to Defendants); and $150 for 15 minutes (of which the dancer was required to pay $30 to Defendants).

44.     Defendants restricted Plaintiff's and other Class members' access to the premises of the nightclub. If Plaintiff and other Class members were on the premises of any nightclub at any time when they were not scheduled to perform and they remained on the premise for more than 20 minutes, they were deemed to be on shift. Defendants then forced Plaintiffs and other Class members to pay the commensurate House Fee.

45.     Defendants required Plaintiff and other Class members to wear particular types of dress, styles of makeup, and maintain a certain level of fitness and grooming, and otherwise regulated their physical appearance. For example, Defendants required dancers to wear high heels at all times, approved dancers' outfits, and would not let them dance if their makeup did not meet management approval. Defendants required Plaintiff to lose weight in order to continue her employment. Plaintiff was fired on February 13, 2017, because she did not comply with Defendants' physical appearance requirements.

46.     Defendants also forbade Plaintiff and other Class members from using lotion, gels, or glitter during any performance on stage.

47.     Defendants regulated Plaintiff's and other Class members' workplace conduct through oral and written guidelines and policies.

48.     Defendants regulated Plaintiff and other Class members by specifying the manner in which they danced, including types of movements that were allowed and those that were prohibited.

49.     Defendants regulated Plaintiff and other Class members by specifying the manner in which they interacted with customers, specifying types of interaction and conduct that were allowed and others that were prohibited. For example, Defendants fined Plaintiff and other Class members for deciding not to dance on stage at a rate of $50 per hour.

50.     Defendants further regulated Plaintiff and other Class members by requiring them to "tip out" the disc jockeys ("DJs") and bouncers.

51.     Defendants required Plaintiff and other Class members to pay various fees to dance in VIP rooms, and also set the amount that customers were required to pay for lap dances and use of the VIP room.

52.     Defendants also required Plaintiff and other Class members to pay a fee to work any given shift, in varying amounts depending on the time of evening.

53.     Defendants controlled Plaintiff's and other Class members' schedules. Specifically, Defendants did this by reserving the right to require Plaintiff and other Class members to select the days they would be working a week in advance; setting a minimum number of sessions they must work that week; setting a minimum number of hours per showtime; and charging a lesser fee if Plaintiff and other Class members danced from 11 a.m. until 6 p.m. (the less lucrative shifts).

54.     Defendants additionally regulated Plaintiff and other Class members by punishing them for failing to have government issued identification on their person at all times while on the premises; failing to appear for showtimes on two or more occasions during any calendar month; filing to timely commence her showtimes on two or more occasions during any calendar week; failing to pay any house fee when due; or – most remarkably – claiming that her business relationship with Defendants was that of employee-employer.

55.      Plaintiff and other Class members did not have significant control over their opportunity for profit or loss.

56.     Defendants were responsible for attracting customers, advertising, and maintaining food and alcohol availability and pricing.

57.     The investment of Plaintiff and other Class members was relatively minor compared to Defendants' considerable investment in operating a nightclub.

58.     Plaintiff and other Class members established permanency at PT's Showclub and other clubs owned and operated by Defendants.

59.     Plaintiff regularly worked at PT's Showclub for approximately nine years. Other Class members also worked regularly for Defendants for a long time.

60.     Plaintiff and other Class members did not exercise the skill required to elevate their status to independent contractors.

61.     Plaintiff and other Class members were not selected as dancers based on prior dancing experience, skill, or propensity and received no training or instruction while employed by Defendants.

62.     Plaintiff and other Class members were an integral part of the success of the Defendants' business.

63.     Defendants' business model was dependent on Plaintiff and other Class members.

64.     The totality of the circumstances surrounding Plaintiff's and other Class members' employment relationship with Defendants indicates economic dependence.

***Plaintiff and other Class members were tipped employees entitled to full retention of all gratuities.***

65.     Plaintiff and other Class members were tipped employees who customarily and regularly received more than $200 a night in tips.

66.     Defendants intentionally denied Plaintiff and other Class members their due minimum wage as tipped employees.

67.     Plaintiff and other Class members were therefore obligated to support themselves exclusively through the tips received from customers for performing exotic stage, table, lap, topless, nude and/or VIP room dances (hereinafter collectively referred to as "dance tips").

68.     Defendants charged customers a set rate for the use of VIP rooms and private rooms and required Plaintiff and other Class members to pay fees for the use of such rooms.

69.     The dance tips and customer payments for private room performances are tips, not wages or service charges.

70.     Defendants did not directly receive any monies from customers for the dances performed by Plaintiff and other Class members. Instead, Defendants depended on Plaintiff and other Class members to give them the monies received by them.

71.     Defendants treated the dance tips and the payments by customers for private room performances as tips by requiring Plaintiff and other Class members to "tip-out" Defendants' bouncers and disc jockeys ("DJs") by paying them between five and twenty percent of the dance tips and pay for private rooms earned by Plaintiff and other Class members.

72.     These are unlawful "kick backs" within the meaning of the FLSA.

73.     The monies given to Plaintiff and other Class members by the customers for the dances performed were not entered into Defendants' gross receipts.

74.     Defendants did not issue the members of the Class W-2 forms, 1099 forms, or any other wage-related documents indicating any amounts paid from their gross receipts to Plaintiff and other Class members as wages.

75.     Employers may apply a tip credit to offset any minimum wage obligation owed to tipped employees only if the employer has informed the employee of the applicability of this provision in advance and the employee retains all tips received.

76.     An employer may require employees to pool their tips only when the pool consists of employees who customarily and regularly receive tips.

77.     Defendants never informed Plaintiff and other Class members of the applicability of this provision in advance (instead telling them that it did not apply) and therefore were prohibited from applying a tip credit to offset Plaintiff's and other Class members' minimum wage.

78.     Bouncers and DJs are not employees who customarily and regularly receive tips. Defendants' bouncers and DJs received regular paychecks valued at or above the hourly minimum wage. Therefore, the bouncers and DJs invalidated any tip pool and Plaintiff and other Class members were entitled to retain the entirety of the tips received from customers.

79.     Plaintiff and other Class members were entitled to the full minimum wage due under the applicable federal and/or state law (including Colorado law) without any tip credit *and* to retain the full amount of any dance tips and pay for private room performances given to them by customers.

80.     Plaintiff and other Class members have suffered financial loss, injury, and damage as a result of Defendants' failure to pay them minimum wages and/or overtime pay, requiring them to pay stage and room fees, requiring them to pay a daily fee, and requiring them to share a percentage of their tips with the bouncers and DJs.

***Defendants intentionally and illegally mistreated Plaintiff and other Class members and willfully violated the FLSA and the labor laws of the states in which they operate, including the Colorado Labor Code.***

81.     All actions by Defendants described herein were willful, intentional, and not the result of negligence or good-faith but incorrect assumptions.

82. At all relevant times, Defendants knew or recklessly disregarded that the FLSA, Colorado Labor Code, and labor laws of the other states in which they operate applied to Plaintiff and other Class members and, that under the economic reality test, Plaintiff and other Class members were obviously employees, not independent contractors, entitled to a minimum wage.

83. Defendants' knowledge of the FLSA, and its provisions, is obvious based on provisions in the contract provided to Plaintiff and other Class members upon the beginning of their employment with Defendants.

84. In the contract, Defendants acknowledge the requirements of the FLSA, then willfully flout them in favor of denying Plaintiffs and other Class members their earned minimum wages, overtime pay, and the full retention of their tips, charging the Plaintiff dancers fees to work, and subjecting them to various fines, so as to enrich themselves at Plaintiff's and other Class members' expense.

85. At all relevant times, Defendants knew or recklessly disregarded that Plaintiff and other Class members were entitled to one and one half the minimum wage during weeks Plaintiff and other Class members worked overtime.

86. At all relevant times, Defendants knew or recklessly disregarded that Plaintiff and other Class members were tipped employees.

87. At all relevant times, Defendants knew or recklessly disregarded that the bouncers and DJs were not employees who customarily and regularly received tips and that bouncers and DJs invalidated any tip pool.

88. At all relevant times, Defendants knew or recklessly disregarded that the dance tips and room fees received by Plaintiff and other Class members were Plaintiff's and other

Class members' sole property and that the dance tips and room fees were tips, not wages or service charges.

89.     Defendants themselves viewed the dance tips and customers' room payments as tips by requiring Plaintiff and other Class members to "tip-out" the bouncers and DJs using money earned by Plaintiff and other Class members from dance tips and room payments.

90.     At all relevant times, Defendants knew or recklessly disregarded the requirement that they pay Plaintiff's and other Class members' wages finally and unconditionally or "free and clear."

91.     Defendants also willfully failed to meet the wage requirements of the FLSA by requiring Plaintiff and other Class members to pay "kick backs" directly or indirectly to Defendants, or to another person for Defendants' benefit, including the whole or part of the wage delivered to Plaintiff and other Class members.

92.     Defendants refused to issue Plaintiff and other Class members any tax documentation regarding their wages and employment, despite requests to do so from Plaintiff and other Class members.

93.     According to Defendants' own Securities and Exchange Commission filings: "In October 2008, PT's Showclub in Louisville, Kentucky was required to conduct a self-audit of employee payroll by the Department of Labor ("DOL"). After an extensive self-audit, it was determined that (a) the club incorrectly paid certain employees for hours worked and minimum wage amounts and (b) the club incorrectly charged certain minimum wage employees for their uniforms. As a result, the DOL required that the club issue back pay and refund uniform expenses to qualified employees[.]"

94.     Because it was found that they violated federal laws during the audit of their Louisville, Kentucky nightclub, Defendants were placed under a nationwide audit in March of 2009 by the DOL to determine if they had incurred wage/hour violations at each of their nightclub locations, which includes PT's Showclub in Denver, Colorado, and the corporate offices of VCG Holding Corp. In response to this audit, Defendants' counsel advised Defendants that they retain $200,000 in anticipation of having to pay this amount to settle the wage/hour claims against them. Upon information and belief, Defendants ultimately settled with the DOL.

95.     The DOL audit(s) put Defendants on notice that their actions as alleged in this Complaint and Jury Demand violated the FLSA and the labor laws of the states in which they operate.

96.     A lawsuit against Defendants for violating the FLSA filed in the Southern District of Illinois by employees at PT's Centreville in 2014 is further evidence of Defendants' willful violation of the FLSA and the labor laws in the states in which they operate. The 2014 lawsuit, *Brandy Apple, et al v. VCG Holding Corp.*, put Defendants on notice that their employment practices at PT's across the United States, including PT's Showclub, violated the FLSA.

97.     The Complaint alleged the same violations of the FLSA as this Complaint and Jury Demand. Specifically, the lawsuit alleged that Defendants (1) misclassified dancers as independent contractors, as opposed to employees; (2) required dancers to split their table dance tips with the nightclub; (3) required dancers to further split their table dance tips with the nightclub's bouncers and DJs; (4) failed to pay the dancers any wages; and (5) demanded payments, including "house fees." In response to the lawsuit, Defendants' attorney stated to

media outlets that the dancers were "better off" not being considered employees and, even when confronted with allegations and evidence to the contrary, vigorously denied that dancers were employees pursuant to the FLSA.

98. Despite being aware of the FLSA's and state labor laws' application to Plaintiff and other Class members, Defendants intentionally and willfully chose to misclassify Plaintiff and other Class members as independent contractors, to withhold minimum wages, to deny overtime pay, and to require Plaintiff and other Class members to share their tips with employees who do not customarily and regularly receive tips.

*Class Allegations*

99. Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

100. All requirements of Fed.R.Civ.P. 23(a) and (b) are satisfied.

101. All members of the Class are victims of a single decision, policy, and/or plan designed by Defendants to intentionally deny Plaintiff and other Class members of minimum wages and overtime pay, to require Plaintiff and other Class members to pay various fees to work, and to require Plaintiff and other Class members to share a percentage of their tips.

102. The members of the Class to be certified against Defendants are defined as follows:

> All individuals, who at any time from the date three years prior to the date this Complaint was originally filed continuing through the present, worked as dancers at clubs owned or operated by Defendants, including at PT's Showclub in Denver, Colorado, and were designated as independent contractors.

103. Plaintiff also seeks to maintain sub-classes to address damages claims of class members in eight states. This damages sub-classes will include:

All individuals, who at any time from the date three years prior to the date this Complaint was originally filed continuing through the present, worked as dancers at clubs owned or operated by Defendants in Colorado, California, Florida, Illinois, Indiana, Kentucky, Maine, and North Carolina, and were designated as independent contractors.

104.    Members of the sub-classes seek damages that are available under the relevant statutes of Colorado, California, Florida, Illinois, Indiana, Kentucky, Maine, and North Carolina.

105.    The members of the Class are so numerous that joinder of all members is impracticable. Although the exact number of potential Class members is currently unknown, on information and belief, the number of dancers who have worked for Defendants during the relevant time period exceeds 500 women.

106.    There are questions of law and fact common to the Class including whether the Defendants violated the FLSA and/or the labor laws of the states in which they operate (including but not limited to the Colorado Labor Code) by treating Plaintiff and other Class members as independent contractors instead of employees, whether Plaintiff and other Class members were denied minimum wages and/or overtime pay, whether the monies given to Plaintiff and other Class members as dance tips and room fees are tips to which they are solely entitled, whether the bouncers and DJs are employees who customarily and regularly receive tips, whether Defendants charged Plaintiff and other Class members to work, whether Defendants intentionally denied Plaintiff and other Class members the full retention of their tips, whether Defendants required Plaintiff and other Class members to pay "kick backs" in violation of the FLSA, and whether Defendants were unjustly enriched at the expense of Plaintiff and other Class members.

107.     The claims of the named Plaintiff are typical of the claims of the class because she was not paid a minimum wage or overtime pay, was required to pay in order to work, and was required to share her tips like all other Class members.

108.     The named Plaintiff will fairly and adequately protect the interests of the Class and the proposed sub-class for those Class members who were employed at Defendants' clubs in the State of Colorado. The named Plaintiff, like all Class members, has suffered financial loss, injury, and damage as a result of Defendants' failure to pay her minimum wages and/or overtime pay, requiring her to pay fees in order to work, and requiring her to share a percentage of their tips with the bouncers and DJs.

109.     The named Plaintiff has no interest that would be adverse to the interests of the Class.

110.     The named Plaintiff has retained counsel experienced in employment disputes and, particularly, claims against adult entertainment establishments under the FLSA and state labor laws.

111.     This class action is maintainable under Fed.R.Civ.P. 23(b)(1). The prosecution of separate actions on behalf of individual class members would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

112.     This class action is maintainable under Fed.R.Civ.P. 23(b)(3). The questions of law and fact are common to Plaintiff and predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE FAIR LABOR STANDARDS ACT - 29 U.S.C. 201, *et. seq*.

113.     Plaintiff hereby incorporates all paragraphs by reference all as if fully set forth herein.

114.     This claim arises from Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq*., for failure to pay Plaintiff and other Class members a minimum wage and overtime pay to which they were entitled, requiring that they share their tips with DJs and bouncers, and charging Plaintiff and other Class members various fees to work.

115.     At all times relevant, Defendants have been, and continue to be, "employers" engaged in commerce, within the meaning of the FLSA 29 U.S.C. § 201, *et. seq*.

116.     At all times relevant, Defendants have employed and continue to employ employees, including Plaintiff and other Class members, who engage or engaged in commerce.

117.     At all times relevant, upon information and belief, Defendants have had an annual gross volume of sales made or business done in excess of $500,000.00.

118.     The minimum wage and overtime provisions of the FLSA, 29 U.S.C. § 201, *et. seq*., apply to Defendants and protect Plaintiff and other Class members.

119.     The named Plaintiff has consented in writing to be a part of this action, pursuant to 29 U.S.C. § 216(b). As this case proceeds, it is likely that other individuals will sign consent forms and join as Class Members.

120.     Pursuant to the FLSA, 29 U.S.C. § 206, Plaintiff and other members of the Class were entitled to be compensated at a rate of $7.25 per hour at all times relevant.

121.    Pursuant to the FLSA, 29 U.S.C. § 207, Plaintiff and other members of the Class were entitled to be compensated at one and one-half the minimum wages for hours they worked over forty hours a week.

122.    Defendants were not allowed to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 201, *et. seq*., because Defendants provided no notice to employees of their intention to take a tip credit (instead telling them that it did not apply because they were independent contractors) and because Plaintiff and other Class members were not allowed to retain all of their tip money.

123.    Defendants demanded that Plaintiff and other Class members pay "kick backs" in the form of fees and tip shares.

124.    Defendants failed to pay Plaintiff's and other Class members' unconditional wages, as Plaintiff and other Class members were required to "kick back" fees and tips, directly or indirectly to Defendants or to others for Defendants' benefit.

125.    Defendants, pursuant to their policies and practice, refused and failed to pay a minimum wage and/or overtime pay to Plaintiff and other Class members.

126.    Defendants, pursuant to their policies and practices, charged Plaintiff and other Class members various fees in order to work.

127.    By failing to compensate Plaintiff and other Class members, Defendants violated, and continue to violate, Plaintiff's and other Class members' statutory rights under FLSA, 29 U.S.C. § 201, *et seq*.

128.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255.

129.     The named Plaintiff, on behalf of herself and all members of the Class of Plaintiffs, seeks damages in the amount of their respective unpaid wages, liquidated damages as provided under the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper and as set forth herein.

130.     The named Plaintiff, on behalf of herself and all members of the Class of Plaintiffs, seeks recovery of attorneys' fees and cost to be paid by Defendants as provided by the FLSA, 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE COLORADO MINIMUM WAGE ACT ("CMWA") –**
**C.R.S. § 8-6-101, *et. seq.***

131.     Plaintiff hereby incorporates all paragraphs by reference as if fully set forth herein.

132.     This claim arises from Defendants' willful violation of the Colorado Minimum Wage Act, C.R.S. § 8-6-101 *et seq.* as implemented by Colorado Minimum Wage Order Numbers 30. 31, 32, and 33, 7 CCR 1103-1, for failure to pay a minimum wage and overtime pay to Plaintiff and other Class members to which they were entitled.

133.     At all times relevant, Defendants have been and continue to be "employers" within the meaning of the CMWA.

134.     At all times relevant, Defendants have employed and continue to employ employees, including Plaintiff and other Class members.

135.     The minimum wage and overtime provisions of the Colorado Minimum Wage Act - C.R.S. § 8-6-101, *et. seq.*, apply to Defendants and protect Plaintiff and other Class members.

136. Pursuant to the CMWA, Plaintiff and other Class members were entitled to be compensated at a rate of $8.00 per hour from January 1, 2014 to December 31, 2014, $8.23 per hour from January 1, 2015 to December 31, 2015, $8.31 per hour from January 1, 2016 to December 31, 2016, and $9.30 per hour from January 1, 2017 to the present.

137. Pursuant to the CMWA, Plaintiff and other members of the Class were entitled to be compensated at one and one-half the minimum wages for hours they worked over forty hours per week.

138. Defendants provided no notice to the employees of their intention to take a tip credit (instead telling them that it did not apply because they were independent contractors), and Plaintiff and other Class members were not allowed to keep all of their tip money.

139. Defendants, pursuant to their policies and practices, refused and failed to pay a minimum wage and/or overtime payments to Plaintiff and other Class members.

140. Defendants, pursuant to their policies and practices, charged Plaintiff and other Class members various fees in order to work.

141. By failing to compensate Plaintiff and other Class members, Defendants violated, and continue to violate, Plaintiff's and other Class members' statutory rights under the Colorado Minimum Wage Act.

142. The foregoing conduct, as alleged, constitutes a willful violation of the CMWA, C.R.S. § 8-4-122.

143. The named Plaintiff, on behalf of herself and the Class, seeks damages in the amount of their respective unpaid wages, interest, and such other legal and equitable relief as the Court deems proper and as set forth herein.

144.    The named Plaintiff, on behalf of herself and the Class, seeks recovery of attorneys' fees and costs to be paid by Defendants as provided by the CMWA, C.R.S. § 8-6-118.

### THIRD CLAIM FOR RELIEF
**UNJUST ENRICHMENT**

145.    Plaintiff hereby incorporates all paragraphs by reference as if fully set forth herein.

146.    By refusing to pay Plaintiff and other Class members wages for hours worked, including overtime pay, requiring Plaintiff and other Class members to share their tips, and charging Plaintiff and other Class members fees to work, Defendants were unjustly enriched at the expense of and to the detriment of Plaintiff and other Class members.

147.    Defendants' retention of any benefit collected directly and indirectly violated principles of justice, equity, and good conscience when they refused to pay Plaintiff 's and other Class members' wages, required Plaintiff and other Class members to share tips, and charged Plaintiff and other Class members unreasonable fees. As a result, Defendants have been unjustly enriched.

148.    Plaintiff and other Class members are entitled to recover from Defendants all amounts that Defendants have wrongfully and improperly obtained, and Defendants should be required to disgorge to Plaintiff and other Class members the benefit they have unjustly obtained.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in her favor and against Defendants, and award her all relief allowed by law, including but not limited to the following:

    a.    Issuance of notice pursuant to 29 U.S.C. § 216(b) as soon as possible to all dancers who worked for Defendants during any portion of the three years immediately preceding the filing of this action. Generally, this notice should

inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit without fear of reprisal, retaliation, or abuse by Defendants;

b.  Judgment against Defendants for an amount equal to Plaintiff's and other Class members unpaid back wages, overtime pay, fees, shared tips, and all other unlawful kick backs;

c.  Judgment against Defendants that their violations of the FLSA were willful;

d.  Liquidated Damages in amount equal to Plaintiff's and other Class members' damages pursuant to 29 U.S.C. § 216(b).

e.  Declaratory relief and other appropriate equitable relief, including injunctive relief;

f.  Pre-judgment and post-judgment interest at the highest lawful rate;

g.  Attorney's fees and costs as allowed by law;

h.  Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

i.  Such further relief as justice requires.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 10th day of March 2017.

KILLMER, LANE & NEWMAN, LLP

*s/ Mari Newman*

_____
Mari Newman
Darold W. Killmer
Andy McNulty
1543 Champa St., Ste. 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 fax
mnewman@kln-law.com
dkillmer@kln-law.com
amcnulty@kln-law.com

*Attorneys for Plaintiff*