IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00631-RM-MEH

GEORGINA SANTICH,
JANEL ANDERSON,
JESSICA SAULTERS ARCHULETTA,
ADRIANNE AXELSON,
EMILY BACHELDER,
ALENA BAILEY,
RACHEL BERRY,
NICOLE BUJOK,
BRANDI CAMPBELL,
TALITA CATTO,
MELISSA CHAVEZ,
ARIEL CLINE,
MEGAN FITZGERALD,
AMANDA GABRIEL,
AMY GLINES,
JOHANNA GRISSOM,
AMANDA LIVINGSTON,
ARIELLE MANSFIELD,
CHADA MANTOOTH,
KARLA MARTINEZ,
CHRISTINA MASSARO,
ALEXIS NAGLE,
LAPORTIA OAKLEY,
GALE RAFFAELE,
AMRICA TERRELL,
PENNY WATKINS,
CASANDRA WINDECKER,
MELANIE TRACY,
PORSCHA GREEN,
AMANDA SHAFER,
ASHLEY WOZNEAK,
REBECCA RAIL,
ANDREA ABBOTT, and
KIMBERY HALE, all individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

VCG HOLDING CORP.,
LOWRIE MANAGEMENT, LLLP,

TROY LOWRIE,
MICHAEL OCELLO,
DENVER RESTAURANT CONCEPTS LP d/b/a PTs Showclub,
KENKEV II, INC. d/b/a PTs Showclub Portland,
INDY RESTAURANT CONCEPTS, INC. d/b/a PTs Showclub Indy,
GLENARM RESTAURANT, LLC d/b/a Diamond Cabaret,
GLENDALE RESTAURANT CONCEPTS, LP d/b/a The Penthouse Club,
STOUT RESTAURANT CONCEPTS, INC. d/b/a La Boheme, and
VCG RESTAURANTS DENVER, INC. d/b/a PT's All Nude,

      Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

      Defendants seek to compel Plaintiffs to arbitrate this Fair Labor Standards Act ("FLSA") collective action case. Mot. to Compel Arbitration, ECF No. 74.  According to Defendants, every Plaintiff signed binding arbitration agreements containing class-action waivers.  Although Plaintiffs do not dispute this, they contend the arbitration agreements are unconscionable and invalid under two federal statutes.  Because Plaintiffs' unenforceability arguments do not specifically challenge the clause delegating questions of validity to the arbitrator, the Court agrees with Defendants that the arbitrator must decide whether the parties' arbitration provision is unconscionable and invalid based on federal statutes.  Furthermore, although the Court recommends holding that the fee-shifting and cost-sharing provisions in the parties' agreement effectively preclude Plaintiffs from asserting their claims, these provisions are severable from the agreement as a whole.  Lastly, the Court recommends holding that the two Defendants who did not sign the arbitration agreements may nevertheless enforce them.

      In light of the Court's recommendation on Defendants' motion to compel arbitration, the Court recommends denying as moot Plaintiffs' motion for conditional certification.

## BACKGROUND

Plaintiffs—thirty-four exotic dancers—initiated this FLSA collective action on March 10, 2017. Compl., ECF No. 1. In an Amended Complaint, Plaintiffs assert that Defendants—adult entertainment clubs and entities that own the clubs—required them to sign contracts, called "leases," that improperly classified them as independent contractors. Am. Compl. ¶¶ 125–94, ECF No. 65. As independent contractors, Plaintiffs did not receive a wage, but instead paid Defendants a fee ranging from $120.00 to $200.00 each time they worked. *Id.* at ¶¶ 23–24. Further, Defendants allegedly required Plaintiffs to pay them a portion of the tips and other income Plaintiffs received. *Id.* at ¶ 28. Because Plaintiffs believe they are employees under the FLSA and various state wage acts, they seek "unpaid wages, fees, fines, tips, [and] interest . . . ." *Id.* at ¶ 141.

Defendants responded to the Amended Complaint by filing the present Motion to Compel Arbitration, which contends that each Plaintiff signed valid arbitration agreements containing collective action waivers. Mot. to Compel Arbitration 2, ECF No. 74. On June 19, 2017, Plaintiffs submitted their Response to Defendants' Motion to Compel Arbitration, ECF No. 105. Plaintiffs first argue that Defendants VCG Holding Corp and Lowrie Management cannot compel them to arbitration, because these Defendants are not parties to the leases. *Id.* at 4–6. Next, Plaintiffs assert the arbitration provision is unenforceable, because it is procedurally and substantively unconscionable. *Id.* at 8–19. In support of their procedural unconscionability argument, Plaintiffs attach their own affidavits, which discuss the conditions surrounding their assent to the leases. *See* ECF Nos. 106-1–106-12. Regarding substantive unconscionability, Plaintiffs assert the fee-shifting and cost-sharing provisions preclude them from pursuing their claims. *Id.* at 14–19. Importantly, Plaintiffs argue the Court, not the arbitrator, must decide whether the arbitration provision is

unconscionable. *Id.* at 7–8. Plaintiffs then assert the Court cannot sever the unconscionable provisions, because the arbitration provision "is plainly part of Defendants' scheme to violate the FLSA and other wage laws and to discourage Plaintiffs from enforcing their rights." *Id.* at 24. Finally, Plaintiffs contend the class-action waiver is illegal under the National Labor Relations Act ("NLRA") and the Fair Labor Standards Act ("FLSA"). *Id.* at 24–29. Although Plaintiffs contend this case undisputedly belongs in federal court, they seek a jury trial under 9 U.S.C. § 4 in the event they have only shown a disputed issue of material fact as to the making of the agreement. *Id.* at 30.

On July 10, 2017, Defendants filed their Reply in Support of their Motion to Compel Arbitration, ECF No. 120. Defendants first argue that the arbitrator must decide the validity of the leases, because the arbitration provision contains a clause delegating issues of arbitrability to the arbitrator. *Id.* at 2–4. Next, assuming the Court disagrees with its delegation argument, Defendants contend that many Plaintiffs have not submitted evidence challenging the validity of their leases, and regardless, the arbitration provision is not unconscionable. *Id.* at 5–18. Defendants then argue that VCG and Lowrie can compel Plaintiffs to arbitration, because the Amended Complaint relies on the leases and alleges interconnected misconduct between the signatory and nonsignatory Defendants. *Id.* at 21. Finally, Defendants argue the NLRA and FLSA do not conflict with the leases' class-action waivers. *Id.* at 21–25.

Plaintiffs filed a Motion for Leave to File Surreply on July 21, 2017, ECF No. 131. This Court denied Plaintiffs' motion in an August 10, 2018 order. ECF No. 139. The Court held that each of the arguments in Defendants' reply directly rebuts the contentions Plaintiffs asserted in their response. *Id.* at 4–5. Additionally, although Defendants submitted reply declarations in support of their arguments, those statements directly refuted the statements Plaintiffs made in response. *Id.* at

5.  Plaintiffs subsequently objected to this Court's order denying them leave to file a surreply.  ECF No. 142.  On September 25, 2017, the Honorable Raymond P. Moore overruled Plaintiffs' objections and affirmed this Court's order.  ECF No. 148.

## LEGAL STANDARD

Issues of arbitrability are governed by the Federal Arbitration Act ("FAA").  *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017).  Under the FAA, when parties agree to settle a controversy by arbitration, courts must enforce that agreement "save upon grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Such grounds include "generally applicable contract defenses, such as fraud, duress, or unconscionability."  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  Importantly, if a contract contains an arbitration provision, the party opposing arbitration must assert his validity challenges against the arbitration provision, not the contract as a whole.  *See, e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405 (1967) (holding that the arbitrator must decide whether the defendant fraudulently induced the plaintiff to enter into the contract, because the plaintiff did not argue that the defendant fraudulently induced it to agree to the arbitration provision).  This is because, if the party opposing arbitration does not contest the validity of the arbitration provision, the agreement to arbitrate "is severable from the remainder of the contract."  *Rent-A-Center, W., Inc.*, 561 U.S. at 70–71.

Just as parties can agree to arbitrate the merits of a dispute, they can agree to arbitrate arbitrability—*i.e.* the validity and scope of an arbitration provision.  *Id.* at 69 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just

as it does on any other."). If the parties' contract delegates issues of arbitrability, the party opposing arbitration must specifically dispute the validity of the delegation clause. *Id.* at 72. Otherwise, the delegation clause is severable from the arbitration provision as a whole, and the arbitrator must decide arbitrability disputes. *Id.*

When analyzing whether the parties agreed to submit a specific dispute to arbitration, "[a]ll 'doubts are to be resolved in favor of arbitrability.'" *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995) (quoting *Oil, Chem., & Atomic Workers Int'l Union, Local 2-124 v. Am. Oil Co.*, 528 F.2d 252, 254 (10th Cir. 1976)). However, the law reverses the presumption when determining whether parties agreed to arbitrate arbitrability. *See, e.g.*, *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) ("[T]he law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement."). Upon reviewing the parties' arguments and being satisfied that the making of the agreement to arbitrate (or the agreement to delegate arbitrability) is not in issue, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

## ANALYSIS

Because the question of who should decide arbitrability is a threshold issue, the Court will address it first. *Commc'n Workers of Am. v. Avaya, Inc.*, 693 F.3d 1295, 1303 (10th Cir. 2012) ("The Court should have begun its analysis by asking whether the parties did or said anything to rebut the presumption that questions about the arbitrability of an arbitration dispute will be resolved by the courts."). The Court recommends reserving Plaintiffs' unconscionability and statutory

validity arguments for the arbitrator.  The Court will then analyze whether the agreements' fee-shifting clause thwarts Plaintiffs' ability to pursue their FLSA claims.  Although the Court finds that shifting fees in the event Defendants prevail would prevent Plaintiffs from pursuing their claims, the Court recommends holding that the invalid provision is severable from the agreement.  Finally, the Court recommends permitting the nonsignatory Defendants to compel Plaintiffs to arbitration.

## I.     The Arbitrator Must Decide Arbitrability.

Plaintiffs contend the Court should decide arbitrability, because they "challenge the enforceability of the entire Arbitration Clause, including the 'delegation' provision."  Resp. to Mot. to Compel Arbitration 7, ECF No. 105.  Defendants respond that by relying on the circumstances surrounding the signing of the leases, Plaintiffs' unconscionability arguments challenge the entire agreement, not just the delegation clause.  Reply in Support of Mot. to Compel Arbitration 3, ECF No. 120.  As such, Defendants assert the arbitrator, not the Court, must decide the validity of the leases.  *Id.* at 4.

Courts have identified two subissues when analyzing whether an arbitration agreement properly delegates arbitrability disputes.  First, the parties must clearly and unmistakably demonstrate their intent to delegate validity disputes to the arbitrator.  *First Options of Chi. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986))).  The parties can demonstrate such intent through express language or a course of conduct.  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 79–80 (2010) (Stevens, J., dissenting) (citing *First Options of Chi.*, 514 U.S. at 946).

Second, courts must analyze whether the party opposing arbitration contests the validity of

the agreement as a whole or the arbitration and delegation provisions specifically. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967) (holding that a court may consider claims for fraudulent inducement as to the arbitration provision itself, but not "claims of fraud in the inducement of the contract generally"); *Rent-A-Center, W., Inc.*, 561 U.S. at 72 (holding that courts may not determine challenges to an arbitration provision when the party opposing arbitration failed to specifically dispute the validity of the clause delegating arbitrability issues to the arbitrator). Challenges to the contract as a whole (or to the arbitration provision as a whole when the provision contains a delegation clause) are for the arbitrator to decide. If the party resisting arbitration does not specifically dispute the validity of the delegation clause, the court must sever that clause and allow the arbitrator to determine the validity of the arbitration provision. *Rent-A-Center, W., Inc.*, 561 U.S. at 72 ("[U]nless [the plaintiff] challenged the delegation provision specifically, [the court] must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole to the arbitrator.").

The Court first finds the leases clearly and unmistakably agree to arbitrate issues of arbitrability. Then, the Court holds that Plaintiffs' challenges to the leases attack either the agreements as a whole or separate provisions of the agreements. They do not specifically challenge the delegation clause. As such, the Court recommends permitting the arbitrator to determine the validity of the arbitration agreements.

A.    Clear and Unmistakable Intent to Delegate Arbitrability to the Arbitrator

The parties clearly and unmistakably demonstrate their intent to delegate questions of validity to the arbitrator. Indeed, Plaintiffs do not argue to the contrary. Of the thirty-four plaintiffs

in this lawsuit, twenty-seven signed leases containing identical express delegation clauses.[1]  These clauses provide: "**THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE FORMATION, VALIDITY, INTERPRETATION, AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THESE ARBITRATION PROVISIONS.**"[2]  *See, e.g.*, ECF No. 74-13, at 15.

The remaining seven Plaintiffs' operative leases include provisions incorporating the American Arbitration Association ("AAA") rules, which permit the arbitrator to determine issues of his own jurisdiction.[3]  *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1283 (10th Cir. 2017)

---

[1]  Many of these Plaintiffs also signed prior agreements that did not have this language. However, the leases contain a superseding effects clause, which terminated any similar leases or contracts then in effect.  Therefore, the leases on which these Plaintiffs base their claims include a delegation clause.  Further, even if the operative leases did not contain superseding effects clauses, the prior leases incorporate the AAA rules, which, as the Court discusses, also demonstrates clear and unmistakable intent to arbitrate arbitrability.

[2]  The Plaintiffs who signed leases containing express delegation clauses are: (1) Georgina Santich, ECF No. 74-13, at 15; (2) Janel Anderson, ECF No. 74-21, at 14; (3) Adrianne Axelson, ECF No. 74-30, at 12; (4) Emily Bachelder, ECF No. 74-30, at 12; (5) Alena Bailey, ECF No. 74-36, at 11; (6) Rachel Berry, ECF No. 74-37, at 12; (7) Nicole Bujok, ECF No. 74-38, at 12; (8) Talita Catto, ECF No. 74-42, at 10; (9) Ariel Cline, ECF No. 74-47, at 12; (10) Megan Fitzgerald, ECF No. 74-53, at 14; (11) Amanda Gabriel, ECF No. 74-57, at 13; (12) Amy Glines, ECF No. 74-62, at 11; (13) Johanna Grissom, ECF No. 74-63, at 14; (14) Amanda Livingston, ECF No. 74-64, at 13; (15) Arielle Mansfield, ECF No. 74-66, at 12; (16) Chada Mantooth, ECF No. 74-69, at 14; (17) Karla Martinez, ECF No. 74-78, at 15; (18) Alexis Nagle, ECF No. 74-85, at 14; (19) Gale Raffaele, ECF No. 74-88, at 13; (20) Amrica Terrell, ECF No. 74-103, at 11; (21) Casandra Windecker, ECF No. 74-107, at 14; (22) Melanie Tracy, ECF No. 74-110, at 13; (23) Porscha Green, ECF No. 74-111, at 14; (24) Ashley Wozneak, ECF No. 74-115, at 14; (25) Rebecca Rail, ECF No. 74-119, at 13; (26) Andrea Abbott, ECF No. 74-120, at 13; and (27) Kimberly Hale, ECF No. 74-112, at 13.

[3] The Plaintiffs who signed leases incorporating the AAA rules are: (1) Jessica Saulters Archuletta, ECF No. 74-23, at 13; (2) Brandi Campbell, ECF No. 74-39, at 12; (3) Melissa Chavez, ECF No. 74-46, at 13; (4) Christina Massaro, ECF No. 74-83, at 13; (5) Laportia Oakley, ECF No. 74-86, at 13; (6) Penny Watkins, ECF No. 74-105, at 7; and (7) Amanda Shafer, ECF No. 74-112, at 14.

(holding that incorporation of the JAMS rules, which are "substantially identical" to the AAA rules, demonstrated clear and unmistakable evidence of intent to arbitrate arbitrability); *Dish Network LLC v. Ray*, 226 F. Supp. 3d 1168, 1173 (D. Colo. 2016) (holding that the parties' "incorporation of the AAA rules constitutes clear and unmistakable evidence of their intent to delegate questions of arbitrability to the arbitrator."). Accordingly, the Court recommends holding that each Plaintiff signed an arbitration agreement that clearly and unmistakably permits the arbitrator to determine issues of validity.[4]

B.   Unconscionability Arguments

Plaintiffs claim the leases are procedurally and substantively unconscionable. Resp. to Mot. to Compel Arbitration 8–19. Regarding procedural unconscionability, Plaintiffs assert: (1) the leases constituted standardized agreements executed by parties of unequal bargaining strength, (2) Defendants did not give Plaintiffs an opportunity to become familiar with the lease provisions, (3) Defendants presented Plaintiffs with the leases after they auditioned at the club and while they were undressed or wearing lingerie, (4) Plaintiffs frequently had at least a few drinks before signing the contracts, (5) Plaintiffs had no opportunity to modify or negotiate the lease terms, (6) Defendants' managers rushed Plaintiffs to sign the leases and did not allow them to ask questions, and (7) Defendants held a unilateral right to modify the leases at their discretion. *Id.* at 9–13.

As previously stated, arbitrability disputes are for the arbitrator unless the party contesting arbitration specifically challenges the delegation clause included in the parties' agreement. *Rent-A-*

---

[4] To the extent Plaintiffs believe their unconscionability challenges indicate a lack of clear and unmistakable intent, the Supreme Court has rejected this argument. In *Rent-A-Center, West, Inc.*, the Court stated that the clear and unmistakable requirement "pertains to the parties' *manifestation of intent*, not the agreement's *validity*." 561 U.S. at 69–70 n.1.

10

*Center, W., Inc.*, 561 U.S. at 72.  The Court finds that all of Plaintiffs' procedural unconscionability arguments challenge the entire agreement, not the specific delegation clause.  In *Buckeye Check Cashing, Inc. v. Cardegna*, the Supreme Court defined a challenge to the contract as a whole as one that "directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or . . . [states] that the illegality of one of the contract's provisions renders the whole contract invalid." 546 U.S. 440, 444 (2006).  Each of Plaintiffs' arguments affects the entire agreement.  For example, Plaintiffs do not assert that the delegation clause was standardized and one-sided; they claim the entire lease was a one-sided agreement.  Resp. to Mot. to Compel Arbitration 9.  In *Colon v. Conchetta, Inc.*, the court reserved for the arbitrator the determination of whether the "arbitration clause [is] unconscionable due to [its] one-sided nature."  No. 17-0959, 2017 WL 2572517, at *4 (E.D. Pa. June 14, 2017).  According to the court, the challenge "related to the enforceability of the arbitration agreement as a whole, rather than a specific challenge to the arbitration agreement's delegation clause".  *Id.*  Similar to its standardized agreement argument, Plaintiffs assert they did not have an opportunity to negotiate "any terms"; they do not contend Defendants specifically denied them the opportunity to negotiate the delegation clause.  Resp. to Mot. to Compel Arbitration 10.

Although some of Plaintiffs' procedural unconscionability arguments attack the validity of the arbitration provision, they do not specifically challenge the delegation clause.  For example, Plaintiffs cite to their affidavits, which assert Defendants' managers were told to never mention the arbitration provision and class-action waiver.  *Id.* at 12.  However, Plaintiffs do not assert the managers were told not to mention or explain the meaning of the delegation clause.  Therefore, the Court must sever the delegation clause and permit the arbitrator to decide Plaintiffs' procedural

unconscionability arguments.

Plaintiffs repeatedly attempt to frame their arguments as to the delegation clause by asserting that the invalid leases include the arbitration provision and delegation clause. For example, Plaintiffs state, "the manner in which Defendants presented the Leases to Plaintiffs precluded Plaintiffs from validly assenting to any of the contract terms, including the Arbitration Clause and the delegation provision within it." Resp. to Mot. to Compel Arbitration 7. However, the Supreme Court, and many courts below it, have rejected a party's attempt to require the court to determine the validity of a delegation clause only by stating that the clause is included in an invalid agreement. *Rent-A-Center, W., Inc.*, 561 U.S. at 73 (affirming the district court's order compelling arbitration, because the plaintiff "opposed the motion to compel on the ground that the *entire arbitration agreement*, including the delegation clause, was unconscionable"); *Wiles v. Palm Springs Grill, LLC*, No. 15-cv-81597-KAM, 2016 WL 4248315, at *2 (S.D. Fla. Aug. 11, 2016 ) ("Although [the] [p]laintiff labels her validity arguments as challenges to the arbitration agreement itself, a closer inspection reveals that at least some of those challenges are actually challenges to the contract as a whole."). Therefore, although the delegation clause is part of a potentially unconscionable lease agreement and arbitration provision, Plaintiffs' failure to specifically challenge the delegation clause requires that the Court sever and enforce that clause.

Plaintiffs' substantive unconscionability argument suffers from a similar flaw as does the procedural unconscionability argument—it challenges a provision of the arbitration agreement other than the delegation clause.[5] Plaintiffs argue the arbitration provision is substantively

---

[5] Plaintiffs separately argue that the Court must determine arbitrability, because Plaintiffs "cannot afford the proceeding necessary for a determination whether the Arbitration Clause is valid, and are unlikely to risk doing so given that they would have to pay Defendants' costs and

unconscionable, because the cost-sharing and fee-shifting provisions limit their access to a forum for resolution of their claims. Resp. to Mot. to Compel Arbitration 15–18. According to Plaintiffs, the costs of in-person hearings, discovery requests, routine motions, and decisions could easily reach thousands, if not tens of thousands, of dollars. *Id.* at 17. These costs are allegedly too substantial for Plaintiffs to risk incurring. *Id.* Importantly, these arguments discuss the cost of arbitrating the entire dispute, not the cost of permitting the arbitrator to determine only arbitrability. Therefore, they are for the arbitrator to decide. *See Rent-A-Center, W., Inc.*, 561 U.S. at 74 (affirming the district court's order compelling arbitration, because the plaintiff "did not make any arguments specific to the delegation provision; he argued that the fee-sharing and discovery procedures rendered the *entire* [arbitration] [a]greement invalid").

In addition to *Rent-A-Center, West, Inc.*, case law from the Tenth Circuit and other district courts supports the Court's holding that Plaintiffs' procedural and substantive unconscionability arguments are for the arbitrator to determine. In a 2016 case, the plaintiffs argued that the arbitration agreement between them and the defendant was illusory, because the contract containing the arbitration provision allowed the defendant to modify its terms at any time. *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1209–11 (10th Cir. 2016). The Tenth Circuit held that the plaintiffs' challenge was "to the entire agreement, because the arbitration provision would be unenforceable only if the entire agreement is unenforceable." *Id.* at 1211. Similarly, Plaintiffs' arguments that Defendants did not give Plaintiffs an opportunity to become

---

fees if the arbitrator rules that it is." Resp. to Mot. to Compel Arbitration 8, ECF No. 105. Unlike Plaintiffs' substantive unconscionability argument discussed here, the Court construes this argument as specifically challenging the delegation clause under the effective vindication doctrine. Because the effective vindication doctrine is a separate issue from arbitrability, the Court analyzes this argument in Section II, *infra*.

familiar with the lease provisions and that Defendants presented the leases to Plaintiffs while Plaintiffs were wearing lingerie will render the delegation clause invalid only if the entire agreement is unenforceable.  Because "Plaintiffs' [unconscionability] argument . . . can prevail only as an attack on the [lease] as a whole, [it] must be resolved by the arbitrator."  *Id.*

In *Getzelman v. Trustwave Holdings, Inc.*, the plaintiff argued that the agreement was unconscionable, because "he was forced to sign the agreement or lose his job, [he] lacked bargaining power, [he] could not understand the contract, [he] was unable to seek legal counsel, and [he] was not provided a copy of the agreement."  No. 13-cv-02987-CMA-KMT, 2014 WL 3809736, at *4 (D. Colo. Aug. 1, 2014).  Additionally, the plaintiff claimed the arbitration provision was standardized and deprived the plaintiff of financial protection.  *Id.*  The Honorable Christine M. Arguello held that the arbitrator must decide these issues, because the "[p]laintiff [did] not allege that the incorporation of the AAA Rules, which delegate the threshold issue of validity to the arbitrator, was procedurally or substantively unconscionable."  *Id.* at *5.  Here, Plaintiffs make many of the same unconscionability arguments as did the plaintiff in *Getzelman*.  Indeed, Plaintiffs argue they were unable to seek legal counsel, lacked bargaining power, and did not have sufficient education to understand the agreement.  Resp. to Mot. to Compel Arbitration 9–13.  Because Plaintiffs do not present evidence that the express delegation clauses and the incorporation of the AAA Rules were procedurally and substantively unconscionable, Plaintiffs' arguments are for the arbitrator to decide.

In *McGrew v. VCG Holding Corp.*, a court in the Western District of Kentucky was faced with a substantially similar issue. No. 3:16-cv-00397-TBR, 2017 WL 1147489 (W.D. Ky. Mar. 27, 2017).  The plaintiffs—exotic dancers at clubs owned by some of the Defendants in this case—argued that the arbitration agreements were invalid, because they were encouraged to drink

during their shifts, they were given little or no time to review the agreements, and the agreements were contracts of adhesion.  *Id.* at *8.  The court held that:

> Plaintiffs' procedural unconscionability arguments unquestionably go to the validity of their lease agreements as a whole, rather than the arbitration provisions specifically.  Plaintiffs do not contend that Defendants encouraged them to drink only when they were considering the arbitration clauses. They do not state that Defendants provided them ample time to review the portions of the agreements not dealing with arbitration. Rather, Plaintiffs allege that their lease agreements are procedurally unconscionable *in their entirety* because of the suggestive circumstances surrounding their execution. If Plaintiffs' allegations prove true, they may very well be entitled to have the agreements set aside. But that is for the arbitrator, not this Court, to decide in the first instance.

*Id.*  The Court agrees with the holding in *McGrew* and recommends adopting its rationale here.

Plaintiff's reliance on *Spahr v. Secco*, 330 F.3d 1266 (10th Cir. 2003) is misplaced.  In that case, the plaintiff claimed that the arbitration provision was unenforceable, because she did not have the mental capacity to enter into the entire contract.  *Spahr*, 330 F.3d at 1273.  The Tenth Circuit held that the challenge went to the entire contract and the specific agreement to arbitrate, because "a mental capacity challenge can logically be directly only at the entire contract." *Id.*  However, the court explicitly limited its holding to challenges based on the status of the party opposing arbitration, such as his mental capacity.  *Id.* at 1273 n.8.  The court explained that challenges based on the conduct of the bargaining parties, such as fraud in the inducement, can be directed at specific provisions in the contract.  *Id.* at 1273.  Similar to fraud in the inducement, unconscionability is based on the conduct of the bargaining parties or the terms of the contract.  Therefore, a party resisting arbitration can direct such a challenge at specific provisions of the agreement.  Indeed, the Supreme Court has recognized as much by requiring that an arbitrator decide whether an arbitration agreement is unconscionable.  *See Rent-A-Center, W., Inc.* 561 U.S. at 73.

In sum, the Court recommends holding that Plaintiffs' procedural and substantive

unconscionability arguments challenge the validity of the lease as a whole.  Because Plaintiffs do not separately contend the delegation clause is unconscionable, the Court recommends severing that clause and allowing the arbitrator to decide Plaintiffs' unconscionability arguments.

> C.    Arguments Regarding the Validity of the Class-Action Waiver

Plaintiffs' final argument asserts the arbitration provision is unenforceable, because the class-action waiver violates the NLRA and FLSA.  Resp. to Mot. to Compel Arbitration 24–29.  The Court also recommends reserving these issues for the arbitrator.  Just as was true with Plaintiffs' unconscionability arguments, Plaintiffs' statutory validity challenges do not pertain specifically to the delegation clause.  Instead, Plaintiffs argue that the illegality of the class-action waiver renders the entire arbitration agreement invalid.  *Id.* at 28 ("[T]his Court may not enforce the [Arbitration] Clause because the illegal class/collective action wavier may not be severed from the Arbitration Clause.").  The arbitrator must determine whether "the illegality of one of the contract's provisions renders the whole contract invalid."  *Buckeye Check Cashing, Inc.*, 546 U.S. at 444.

Other courts have reserved similar issues for the arbitrator.  In *Colon*, the court held that the plaintiff's "arguments regarding scope, whether the Agreement is illusory, unconscionability, and any violation of the NLRA miss the mark because a valid delegation clause is severable from the remainder of the contract and is unaffected by the contract's validity.  2017 WL 2572517, at *4.  Additionally, in *Torgenson v. LLC International, Inc.*, the court stated that the determination of whether the plaintiffs can arbitrate as a class is for the arbitrator to determine.  No. 16-cv-2495-DDC-TJJ, 2016 WL 4208103, at *4–5 (D. Kan. Aug. 10, 2016).  The Court agrees with the analysis in these cases and recommends holding that the validity of the class-action waiver is for the arbitrator to determine.

II.   **Although the Cost-Sharing and Fee-Shifting Provisions Thwart Effective Vindication of Plaintiffs' Ability to Pursue Their Claims, These Provisions Are Severable From the Agreement as a Whole.**

Plaintiffs argue the Court cannot enforce the delegation clause, because the fee-shifting and cost-sharing provisions would effectively preclude Plaintiffs from pursuing their claims.  Resp. to Mot. to Compel Arbitration 8, ECF No. 105.  Pursuant to the effective vindication doctrine, "an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum." *Shankle v. B-G Maint. & Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999).  In other words, courts cannot enforce an arbitration agreement that operates as a prospective waiver of a party's right to pursue statutory remedies. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985).  Importantly, whether an agreement effectively precludes a litigant's ability to pursue her claims is a matter for the court to determine, regardless of the fact that the parties agreed to delegate arbitrability to the arbitrator. *See Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 378 (10th Cir. 2016) ("The effective vindication exception can apply even in situations where both parties voluntarily agreed, at the outset of their relationship, to arbitrate any claims that might arise between them."); *see also Erik Daniels v. Encana Oil & Gas (USA), Inc.*, No. 16-cv-01851-CBS, 2017 WL 3263228, at *4 (D. Colo. Aug. 1, 2017) ("[C]ourts can decide the enforceability of an arbitration agreement if it implicates the effective vindication doctrine, notwithstanding the arbitrability doctrine . . . .").  Therefore, although the leases validly delegate arbitrability issues to the arbitrator, the Court must determine whether the fee-shifting provision effectively precludes Plaintiffs' ability to pursue their FLSA claims.

According to Plaintiffs, "[i]f the delegation provision is enforced, [they] will not be able to

effectively vindicate their rights because they cannot afford the proceeding necessary for a determination whether the Arbitration Clause is valid, and are unlikely to risk doing so given that they would have to pay Defendants' costs and fees if the arbitrator rules that it is." Resp. to Mot. to Compel Arbitration 8. Defendants contend Plaintiffs have not presented sufficient evidence to demonstrate that they would be unable to bear the costs of arbitration. Reply in Support of Mot. to Compel Arbitration 12. The Court recommends finding that the cost-sharing and fee-shifting provisions thwart effective vindication of Plaintiffs' ability to pursue their claims. Nevertheless, the Court recommends compelling Plaintiffs to arbitration, because the provisions are severable from the agreement as a whole.

First, although it is a close question, Plaintiffs have met their burden of demonstrating that enforcing the delegation clause with the fee-shifting provision would effectively preclude them from seeking redress under the FLSA. Many Plaintiffs have submitted affidavits asserting that based on their weekly income, they would be unable to afford the cost of arbitration. *See* Aff. of Andrea Abbot ¶ 35, ECF No. 106-2; *see also* Aff. of Melissa Chavez ¶ 36, ECF No. 106-5. Furthermore, the costs and fees of arbitrating even a minor dispute, such as arbitrability, could reach well into the thousands of dollars. To be sure, Plaintiffs could have provided substantially more information regarding their income, expenses, and the specific costs of arbitrating validity issues. However, the Court holds that the affidavits Plaintiffs submitted sufficiently demonstrate that enforcing the fee-shifting and cost-sharing provisions would effectively preclude Plaintiffs from asserting their claims. *See Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1176 (D. Colo. 2016) ("[T]he most common examples of arbitrable provisions that thwart effective vindication of federal statutory rights, particularly FLSA rights, are those that impose prohibitive costs on the plaintiff (such as paying or

18

splitting the arbitrator's fee), or that would hold the plaintiff liable for the defendant's attorneys' fees and costs if the plaintiff is unsuccessful.").

The court's holding in *Daugherty v. Encana Oil & Gas (USA), Inc.* supports this Court's finding. No. 10-cv-02272-WJM-KLM, 2011 WL 2791338, at *10–11 (D. Colo. July 15, 2011). In that case, the parties' contract contained a fee-shifting provision, and the plaintiffs filed affidavits stating that they would be unable to risk paying the substantial costs and fees associated with arbitrating their claims in the event they were unsuccessful. *Id.* at *10. The court held that this provision effectively precluded the plaintiffs from pursuing their FLSA claims. *Id.* at *11. According to the court, the plaintiffs' "affidavits make plain they have no financial ability to pay [the defendant's] attorneys' fees were [the] [d]efendant to prevail before the arbitrator. The chilling effect of this fee-shifting provision on [the] [p]laintiffs' ability and willingness to attempt to press their claims under the FLSA is clear." *Id.* Similarly, Plaintiffs' affidavits here clearly establish that at their income level, they would be unable to afford the substantial attorney's fees that would be incurred in determining the arbitrability of their claims. Therefore, the Court recommends refusing to enforce these provisions.

That an arbitration provision contains an invalid clause does not necessarily prohibit the court from compelling arbitration. "Where a contract contains a 'severability' or 'savings' clause, void or otherwise unenforceable provisions may be severed from the contract." *Pollard*, 186 F. Supp. 3d at 1179 (quoting *Daugherty*, 2011 WL 2791338, at *12). Here, the lease agreements provide that, "if any provision of this Lease is declared to be illegal or unenforceable, this Lease shall, to the extent possible, be interpreted as if that provision was not part of this Lease; it being the

intent of the parties that such part be, to the extent possible, severable from this Lease as a whole."[6] ECF No. 74-13, at 14.  As such, the parties specifically agreed to sever any invalid provisions and enforce the remainder of the agreement.

Plaintiffs argue that the Court cannot enforce the severability clause, because "the Arbitration Clause and the Lease as a whole represent an integrated scheme to chill Plaintiffs from exercising their legal rights."  Resp. to Mot. to Compel Arbitration 19.  The Court disagrees. First, Plaintiffs cite only to a Montana state court case and a Ninth Circuit Court of Appeals case in support of their proposition that a scheme to chill a party from exercising his rights voids a severability clause.  *Id.*  The Court is unaware of any binding precedent holding the same.

Moreover, in the Ninth Circuit case, the court reached the merits of many of the plaintiffs' validity challenges and held that the invalid provisions, taken together, required that the court refuse to enforce the severability provision.  *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1248 (9th Cir. 1994) ("[T]he offending parts of the arbitration clause do not merely involve a single, isolated provision; the arbitration clause in this case is a highly integrated unit containing three different illegal provisions.").  Here, because the Court reserved the merits of Plaintiffs' unconscionability challenges for the arbitrator, the Court may analyze only whether the invalid cost-sharing and fee-shifting provisions constitute an integrated scheme to chill Plaintiffs from exercising their legal rights. The lease agreements' requirement that Plaintiffs pay Defendants' fees if Defendants prevail, although invalid, does not rise to the level of blatant misuse of the arbitration procedure or a scheme to chill Plaintiffs from exercising their rights.  *See Pollard*, 186 F. Supp. 3d at 1179 (severing a fee-

---

[6] The other two versions of the lease agreements contain identical language.  *See* ECF No. 74-23, at 13; ECF No. 74-42, at 8.

shifting provision in an FLSA case); *Daugherty*, 2011 WL 2791338, at \*12 (striking a fee-shifting provision from an arbitration agreement, because the parties' contract included a severability clause). Therefore, the Court recommends severing the fee-shifting and cost-sharing provisions from the lease agreements to the extent they differ from those contained in the FLSA.

## III.    The Nonsignatory Defendants May Enforce the Arbitration Agreement.

Plaintiffs contend that even if this Court requires them to arbitrate their claims with the Defendants who signed the leases, the Court should not compel arbitration with the nonsignatory Defendants (VCG and Lowrie). Resp. to Mot. to Compel Arbitration 4–6, ECF No. 105. Defendants assert that Plaintiffs are equitably estopped from avoiding arbitration with VCG and Lowrie.[7] Mot. to Compel Arbitration 14–16, ECF No. 74; Reply in Support of Mot. to Compel Arbitration 18–21, ECF No. 120. Because this is an issue of the Court's authority to compel arbitration, it is for the Court, not the arbitrator, to determine. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017) (analyzing whether nonsignatory defendants could enforce an arbitration agreement notwithstanding that the parties clearly and unmistakably intended to delegate issues of arbitrability to the arbitrator).

Colorado law governs whether VCG and Lowrie can compel Plaintiffs to arbitration. *See id.* at 1293. Accordingly, the Court must follow the most recent relevant decisions of the Colorado

---

[7] Defendants contend in a footnote that in addition to equitable estoppel, the leases explicitly require arbitration of all claims against companies affiliated with the signatory Defendants. Reply in Support of Mot. to Compel Arbitration 20 n.14. In support of their argument, Defendants cite ECF No. 74-12 as the contract with this provision. *Id.* Although ECF No. 74-12 contains this language, the most recent version of the lease, which the parties signed in 2015, does not include this provision. ECF No. 74-13. Because the 2015 lease includes a superseding effects clause, provisions only in prior leases are not relevant to determining whether the nonsignatory Defendants may compel arbitration.

Supreme Court, and if no such decisions exist, the Court must attempt to predict what Colorado's highest court would do. *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007). "In doing so, [the Court] may seek guidance from decisions rendered by lower courts in [Colorado], appellate decisions in other states with similar legal principles, [and] district court decisions interpreting the law of [Colorado]." *Id.* at 666.

The Colorado Supreme Court has not discussed the circumstances in which a nonsignatory can compel a signatory to arbitration. However, the Colorado Court of Appeals has stated at least two circumstances in which the doctrine of equitable estoppel permits a nonsignatory to enforce an arbitration agreement. *Meister v. Stout*, 353 P.3d 916, 920 (Colo. App. 2015). First, a court may compel a nonsignatory plaintiff to arbitrate with a signatory defendant when "the [plaintiff's] claim arises from the agreement containing the arbitration provision." *Id.* The second scenario, under which there are two subsets, applies when a nonsignatory defendant attempts to bind a signatory plaintiff to an arbitration agreement. *Id.* Under this scenario, a defendant may compel arbitration when the plaintiff relies on the terms of a written agreement to assert his claims or when the plaintiff alleges interconnected misconduct between the signatory and nonsignatory defendants and the misconduct is intertwined with duties or obligations arising from the parties' contract. *Id.* at 920–21; *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 710 (10th Cir. 2011) ("[A]llegations of collusion will support estoppel 'only when they establish that the claims against the nonsignatory are intimately founded in and intertwined with the obligations imposed by the contract containing the arbitration clause.'" (quoting *In re Humana, Inc. Managed Care Litig.*, 285 F.3d 971, 975 (11th Cir. 2002))). Because this case involves nonsignatory defendants compelling signatory plaintiffs to arbitration, only the second scenario is relevant. Just as did the Honorable

22

William J. Martinez in *Pollard*, this Court predicts that the Colorado Supreme Court would adopt *Meister's* holding and find that allegations of interdependent misconduct that is intertwined with duties in the underlying contract will estop a plaintiff from avoiding arbitration. *Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1174–75 (quoting *Meister*, 353 P.3d at 921).

The Court recommends holding that the nonsignatory Defendants may compel Plaintiffs to arbitration, because Plaintiffs' claims against the signatory Defendants are interdependent on those against VCG and Lowrie, and the claims are intertwined with duties and obligations in the lease agreements.[8] First, the claims against the signatory and nonsignatory Defendants are interdependent. Plaintiffs make their allegations collectively against all Defendants. Am. Compl. ¶ 20, ECF No. 65 ("Defendants improperly classified Plaintiffs and other Class members as independent contractors . . . ."); *id.* at ¶¶ 125–42 (asserting the FLSA claim against all Defendants). Indeed, Plaintiffs concede their claims allege substantially interdependent misconduct. Resp. to Mot. to Compel Arbitration 5. As such, the Court finds that Plaintiffs' claims against the signatory Defendants are interdependent with those against VCG and Lowrie, and the only remaining issue is whether the allegations are intertwined with duties and obligations in the lease agreements.

The Court recommends holding that, although again a close call, Plaintiffs' claims are intertwined with duties and obligations arising from the agreements. As the main document governing the parties' relationship, the arbitrator will have to reference the leases' terms, requirements, and duties in adjudicating Plaintiffs' claims. For example, in deciding whether

---

[8] Because the Court finds that Plaintiffs are equitably estopped on these grounds, it is unnecessary for the Court to reach Defendants' reliance argument. Additionally, the Court need not discuss Defendants' argument that the signatory Defendants are agents of the nonsignatory Defendants.

Plaintiffs were employees or independent contractors, the arbitrator will have to examine whether the leases gave Defendants a significant level of control over Plaintiffs' actions. Indeed, Plaintiffs recognize as much by relying on requirements in the leases to demonstrate Defendants exercised control over Plaintiffs. *See* Am. Compl. ¶¶ 46–48.

Judge Martinez' decision in *Pollard* supports this Court's holding. In that case, the plaintiffs asserted FLSA claims against the defendants for failing to pay overtime wages. *Pollard*, 186 F. Supp. 3d at 1169. The court held that the claims against the nonsignatory defendants were intertwined with duties or obligations arising from the parties' employment agreement. *Id.* at 1175. This was so, because "an arbitrator will need to examine and interpret the [employment agreements] to determine whether [the] [p]laintiffs' claims implicate or are affected by those Agreements." *Id.* Similarly, the arbitrator in this case will need to analyze the duties and obligations contained in the lease agreements to determine whether Plaintiffs were employees or independent contractors.[9]

The cases Plaintiffs rely on do not persuade the Court to the contrary. In *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, the plaintiff asserted antitrust claims against a signatory to a licensing and distributorship agreement and the signatory's parent company. 449 F. App'x at 710–11. The Tenth Circuit held that the antitrust claims were not intertwined with the obligations of the licensing and distributorship agreement. *Id.* As such, the parent company could not compel the plaintiff to arbitration. *Id.* at 711. However, in that case, the arbitrator would not have needed to analyze the terms and obligations of the licensing agreement to determine whether the signatory

---

[9] Although the parties in *Pollard* did not dispute that the plaintiffs were employees, the duties imposed by an agreement are just as relevant for determining whether employees are entitled to overtime as they are for determining whether individuals are employees or independent contractors.

and nonsignatory defendants agreed to engage in anticompetitive conduct.  Here, in contrast, the

restrictions and requirements in the lease agreements will be extremely relevant in determining the

type of relationship the parties had.[10]

Plaintiffs cite *Peck v. Encana Oil & Gas, Inc.*, 224 F. Supp. 3d 1181 (D. Colo. 2016) for the

proposition that equitable estoppel does not apply, because they are not "seeking to hold

[Defendants] 'liable pursuant to duties imposed' by the Lease, while simultaneously denying the

Clause's applicability because they are nonsignatories."  Resp. to Mot. to Compel Arbitration 5

(quoting *Peck*, 224 F. Supp. 3d at 1184).  However, that case involved a signatory defendant

compelling a nonsignatory plaintiff to arbitration.  *Peck*, 224 F. Supp. 3d at 1183.  Thus, the facts

in *Peck* implicated the first scenario discussed in *Meister,* which requires that "the [plaintiff's] claim

arises from the agreement containing the arbitration provision."  *Meister*, 353 P.3d at 920.  As

previously stated, a different standard exists when a nonsignatory defendant wishes to compel a

signatory plaintiff to arbitration.  Indeed, the court recognized this distinction in *Peck*:

> [T]he test applied by the court in *Pollard* is not the same test applicable to this case.
> In *Pollard*, the question was when non-signatory defendants could compel plaintiffs,
> who agreed to arbitrate their claims, to arbitrate their claims against the non-signing
> defendants. In making that determination, the court determines whether the signatory
> defendants and non-signatory defendants engaged in "interdependent and concerted
> misconduct" and whether that misconduct is "intertwined with duties or obligations

---

[10]  The Court does not read *Lenox MacLaren Surgical Corp.* as requiring that a plaintiff
plead a breach of obligations in a contract for his claims to be intertwined with the agreement.
Indeed, such a holding would conflate the two situations in which a nonsignatory defendant can
compel a signatory plaintiff to arbitration.  Apart from claims intertwined with the agreement, a
nonsignatory defendant can require a signatory plaintiff to arbitrate her claims when the
plaintiff's claims rely on the agreement.  *Meister*, 353 P.3d at 920.  "For a plaintiff's claims to
rely on the contract containing the arbitration provision, the contract must form the legal basis of
those claims . . . ."  *Lenox MacLaren Surgical Corp.*, 449 F. App'x at 710.  Therefore, if
intertwined misconduct existed only upon a breach of contract obligations, the requirement
would be the same as that for the reliance scenario.

arising from the underlying contract." This is a different question than the question this Court must reach, which is whether [the] [p]laintiff's claims "arise from" the contract containing the arbitration agreement and whether [the] [p]laintiff seeks the benefit of the agreement.

224 F. Supp. 3d at 1185.

In sum, the Court finds that Plaintiffs' claims against the signatory Defendants are interdependent with those against the nonsignatory Defendants and intertwined with the lease agreements. As such, the Court recommends holding that VCG and Lowrie can compel Plaintiffs to arbitration.

## CONCLUSION

The Court first recommends severing the delegation clause from the arbitration agreement and reserving Plaintiffs' unconscionability and statutory validity challenges for the arbitrator. Next, the Court recommends holding that the fee-shifting and cost-sharing provisions in the lease agreements violate the effective vindication doctrine. However, because the leases contain a severability clause, the Court recommends severing the provisions from the remainder of the agreement. Finally, the Court recommends holding that Defendants VCG and Lowrie may enforce the arbitration agreement, because Plaintiffs' claims against them are interdependent with those against the signatory Defendants and intertwined with the lease agreements.

As such, the Court respectfully **recommends** that Defendants' Motion to Stay or Dismiss Proceedings Pursuant to Section 3 and 4 of the Federal Arbitration Act, to Compel Plaintiffs to Arbitration, and to Strike Class and Collective Allegations [filed May 26, 2017; ECF No. 74] be **granted**. The Court recommends that the District Court stay this litigation at least until the arbitrator determines the validity of the arbitration agreements.

In light of the Court's holding on Defendants' Motion to Compel Arbitration, the Court

**recommends** that Plaintiffs' Expedited Motion to Proceed as a Conditional Collective Action, to Provide Notice, and to Toll all Statute of Limitations [filed May 12, 2017; ECF No. 61] be **denied as moot.**[11]

Entered and dated at Denver, Colorado, this 26th day of September, 2017.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

[11] Be advised that all parties shall have fourteen days after service to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).