## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-631-RM-MEH

GEORGINA SANTICH, individually and on behalf of all others similarly situated, et al.,

     Plaintiffs,

v.

VCG HOLDING CORP, et al.,

     Defendants.

---

## COMBINED OBJECTION TO MAGISTATE JUDGE'S RECOMMENDATION ON DEFENDANTS' MOTION TO COMPEL ARBITRATION [Doc. 149] AND MOTION TO CERTIFY TO THE COLORADO SUPREME COURT

---

### I. INTRODUCTION

Defendants have exploited their superior bargaining strength and Plaintiffs' vulnerability by forcing Plaintiffs[1] to sign so-called "Entertainment Leases" ("Leases") purporting to classify Plaintiffs as unpaid "lessees" of portions of Defendants' adult entertainment clubs. Yet there can be no doubt that Defendants knew that they treated Plaintiffs as "employees," and thus that their misclassification of Plaintiffs violates the Fair Labor Standards Act ("FLSA").[2] This case is virtually identical to cases here and throughout the country, in which almost "without exception,…courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage." *Clincy v. Galardi South Enterprises, Inc.*, 808 F.Supp.2d 1326, 1343 (N.D. Ga. 2011). *See* Ex. 1, *Dancer Cases*. Yet Defendants did not.

---

[1] "Plaintiffs" refers to Named and Opt-in Plaintiffs, and putative class/collective action members.

[2] *See, e.g.*, *VCG Holding Corp. Report – SEC Form 10-K* (Dec. 31, 2010), *available at* https://www.sec.gov/Archives/edgar/data/1172852/000095012311030479/d81034e10vk.htm (Dept. of Labor found that one VCG club violated federal wage laws and placed Defendants under a nationwide audit to determine if there were similar violations at their other locations); *McGrew v. VCG Holding Corp.*, No. 3:16-cv-00397-TBR (W.D. Ky. 2016) (suit against VCG for wage violations); *Johnson v. VCG-IS LLC*, No. 8:16-cv-00137-DOC-JCG (C.D. Cal. 2016) (same); *Webb v. Platinum of Illinois Inc.*, 3:14-cv-982-NJR-SCW (S.D. Ill. 2014) (same); *Apple v. VCG Holding Corp.*, No. 3:14-cv-00114 (S.D. Ill. 2014) (same).

Instead, Defendants control Plaintiffs as employees without paying them *any* wage by purporting to give them the "choice" to perform as a so-called "Independent Professional Entertainer" under a "Lease" or work as an "Employee." In reality, Defendants dissuade Plaintiffs from "choosing" to be classified as employees and the Lease is peppered with provisions designed to prevent challenges, including automatic breach of the Lease (being fired), and having to pay Defendants' costs and fees if Defendants win. [Doc. 74], Ex. 5I, pp. 14-15. The Lease thus ensures that Defendants reap the benefits of illegally misclassifying Plaintiffs while simultaneously preventing Plaintiffs from exercising their legal rights. This strategy renders the Lease's mandatory arbitration clause invalid and unenforceable.

While Magistrate Judge Hegarty correctly held unenforceable the Lease provisions forcing Plaintiffs to split the costs of arbitration ("cost-sharing") and pay Defendants' fees and costs if Plaintiffs either lose a challenge to the Arbitration Clause or lose a challenge to their misclassification ("fee-shifting"), [Doc. 149] at 18-19, he made at least three discrete errors of law. Contrary to his Recommendation: (1) this court, not an arbitrator, must decide whether the Arbitration Clause is enforceable; (2) the unconscionable cost-sharing and fee-shifting provisions invalidate the Lease in its entirety, including the Arbitration Clause; and (3) Defendants VCG Holding Corporation and Lowrie Management—neither of whom were parties to the Lease— may not enforce the Arbitration Clause. This Court must reject the Recommendation and deny Defendants' Motion to Compel Arbitration. Alternatively, Plaintiffs request that this Court certify two questions of state law raised by the Recommendation to the Colorado Supreme Court.

## II. LEGAL STANDARD

"[N]o legislation pursues its purposes at all costs." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). Arbitration under the Federal Arbitration Act ("FAA") is "simply a matter of contract between the parties; it is a way to resolve those disputes—but only those

disputes—that the parties have agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Arbitration agreements are "as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967). "Before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated." *Howard v. Ferrellgas Partners*, 748 F.3d 975, 977 (10th Cir. 2014) (Gorsuch, J.). The parties must have "an express agreement to arbitrate" that "was validly formed and…is legally enforceable." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303 (2010). An arbitration agreement is valid and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This "saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as…unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Courts must "remain attuned to well-supported claims that the agreement…resulted from the sort of…overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627 (1985). Thus, a court shall compel arbitration only "upon being satisfied that the making of the agreement for arbitration…is not in issue." 9 U.S.C. § 4; see *also* 9 U.S.C. § 3. "The party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement." *Fundamental Admin. Servs., LLC v. Patton*, 504 F. App'x 694, 698 (10th Cir. 2012). Critically, "[u]nlike the general presumption that a particular issue is arbitrable when the existence of an arbitration agreement is not in dispute…, when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). Thus, the court must "view[] the facts most favorable to the party opposing arbitration." *Howard*, 748 F.3d at 977.

While Magistrate Judge Hegarty correctly recited the case law on the FAA, he erred in applying it by issuing several recommendations—on delegation, severance, and the nonsignatory Defendants—that are "contrary to law." *See Neighbors v. Smith*, 2017 U.S. Dist. LEXIS 72251, at *3 (D. Kan. May 11, 2017). This Court thus must conduct a de novo review.[3]

## III. ARGUMENT

### A. This Court must decide whether the Arbitration Clause is enforceable.

While Magistrate Judge Hegarty correctly recognized that the law reverses the presumption in favor of arbitrability when determining whether the parties agreed to arbitrate arbitrability, [Doc. 149] at 6, he failed to apply this principle by resolving all doubts in favor of Plaintiffs in determining whether Plaintiffs' arguments challenged the delegation clause, *id.*, 8, 11, 16. In fact, both Plaintiffs' procedural and substantive unconscionability arguments specifically challenged the delegation clause. That those arguments also apply to the Lease or Arbitration clause as a whole is irrelevant. "[T]o the extent that Plaintiffs argue that the delegation clause itself is unconscionable for the same reasons that the [Lease] or arbitration provisions as a whole are unconscionable…, the Court [should] consider[] those arguments *as applied* to the delegation clause." *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 730 (E.D.N.Y. 2017).

---

[3] "[C]ourts are divided on whether motions to compel arbitration are dispositive" for purposes of review of a magistrate order by the district court under Fed. R. Civ. P. 72. *Clowdis v. Colo. Hi-Rec Moving & Storage, Inc.*, 2012 U.S. Dist. LEXIS 35602, at *2 n.2 (D. Colo. Mar. 15, 2012). Although a motion to compel arbitration is not listed as a dispositive motion in 28 U.S.C. § 636(b)(1)(A), "motions not designated on their face" as dispositive motion "are nevertheless to be treated as such a motion when they have an identical effect." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1453, 1462 (10th Cir. 1988). "[T]he effect of [an order compelling arbitration] is to terminate the litigation in…[c]ourt and transfer the case to another forum for a determination of the merits." *Flannery v. Tri-State Div.*, 402 F. Supp. 2d 819, 821 (E.D. Mich. 2005). Magistrate Judge Hegarty's recommendation therefore should be reviewed de novo (the standard for magistrate recommendations on dispositive motions), *id.*, a view Magistrate Judge Hegarty apparently shares because he designated his decision a "recommendation," not an "order." However, because his decisions on delegation, severance, and the nonsignatories all depend on interpretation of the Lease and the application of law—purely legal questions—review is plenary whether under the "'contrary to law' branch of the Rule 72(a) standard" or "Rule 72(b)'s de novo standard." *PowerShare, Inc. v. Syntel*, 597 F.3d 10, 15 (1st Cir. 2010); *see also Neighbors*, 2017 U.S. Dist. LEXIS 72251, at *3. Thus, "there is no practical difference" between review under Rule 72(a) or Rule 72(b). *PowerShare*, 597 F.3d at 15.

First, the way in which Defendants presented the Leases to Plaintiffs precluded Plaintiffs from validly assenting to any of the contract terms, *including* the Arbitration Clause and the delegation provision within it. [Doc. 106] at 7. Because Plaintiffs argue that they were precluded from validly assenting to the delegation clause, Plaintiffs made a specific challenge to the delegation clause, which this Court must decide and cannot refer to the arbitrator. This case is thus analogous to *Spahr v. Secco*, 330 F.3d 1266, 1273 (10th Cir. 2003), which held that a claim that a party lacked the mental capacity to enter into a contract necessarily encompassed a challenge to the contract's arbitration provision because such a claim "[could] logically be directed only at the entire contract." The challenge therefore "naturally [went] to both the entire contract and the specific agreement to arbitrate in the contract," and was for the court to resolve. *Id.* Plaintiffs' argument that they lacked the ability to voluntarily enter into the Lease also logically can only be directed at the entire Lease and consequently goes to the Arbitration Clause contained within it, and the delegation provision within the Arbitration Clause. Magistrate Judge Hegarty's discussion of and attempt to distinguish *Spahr*, [Doc. 149] at 15, is erroneous. First, the Tenth Circuit did not limit its holding in *Spahr* to challenges based on a party's status; it merely noted that "[c]ommentators have explained the distinction between challenging a contract on the basis of status (i.e., mental incapacity) and challenging a contract on the basis of the conduct [or behavior] of the bargaining party (i.e. fraudulent inducement)." *Spahr*, 330 F.3d at 1273 n.8. In addition to reading this footnote too broadly, Magistrate Judge Hegarty mistakenly assumes that Plaintiffs' procedural unconscionability challenges belong in the latter category of challenges. However, the cited commentator does not place unconscionability in either category, and indeed, his description of the doctrine illustrates that it is a hybrid of both. *See* E. Allan Farnsworth, *Farnsworth on Contracts*, §§ 4.1, 4.28 (3d. ed. 2004).

Farnsworth describes contract challenges based on behavior as those concerned with "abuse of the bargaining process." *Id.* at § 4.9. He does not consider procedural unconscionability a challenge based solely on the abuse of the bargaining process but rather a type of "contemporary control" on contracting that is "broadly conceived to encompass not only the employment of sharp bargaining practices…but a lack of understanding and inequality of bargaining power, a term that is often used to include bargaining skill." *Id.* at § 4.28. Procedural unconscionability challenges therefore entail examining *both* the behavior of the parties—"sharp bargaining practices"—and the status of the parties—their ability to understand the contract and their bargaining power. *Id.* Indeed, a party's intoxication, a factor that Plaintiffs argue helps demonstrate procedural unconscionability here, *see* [Doc. 106] at 9-10, is considered by Farnsworth a condition that "may…render a party unable to understand the nature and consequences of the transaction," and thus constitutes a challenge based on status, *Farnsworth on Contracts* at § 4.6. Thus, like a mental incapacity challenge, a procedural unconscionability challenge such as Plaintiffs' that is based in part on a party's inability to understand the nature and consequences of contracting can logically be directed only at all the terms of the contract. *Spahr*, 330 F.3d at 1273.

This point which "rests on *the simple 'nonexistence' of the agreement to arbitrate itself*," is, contrary to Magistrate Judge Hegarty's view, "perfectly compatible with *Prima Paint*—as the need to find a legally enforceable assent to submit to arbitration is a conceptual cornerstone of that decision." Alan Scott Rau, *Everything You Really Need to Know about "Separability" in Seventeen Simple Propositions*, 14 Am. Rev. Int'l Arb. 1, 15 (2003). "'*Prima Paint* does not merely preserve for the courts challenges that are 'restricted' or 'limited' to 'just' the arbitration clause alone—this would be senseless; *it preserves for the courts any claim at all that necessarily calls an agreement to arbitrate into question.*" *Id.* at 17; *see also Prima Paint*, 388 U.S. at 404

(When a challenge "goes to the '*making*'" of the arbitration agreement, the "court may proceed to adjudicate it." (emphasis added)).

And, as *Spahr* recognizes, the facts of *Prima Paint* are distinguishable from those here. *Prima Paint* addressed a challenge based on fraud in the inducement and, unlike procedural unconscionability or capacity, "when a party challenges a contract on the basis that it was induced by fraud…, it is conceivable either that (1) he or she was fraudulently induced to agree to a contract containing [a specific provision]; or (2) he or she was fraudulently induced to agree to the [specific] provision in particular." *Spahr*, 330 F.3d at 1273. "[C]ourts must order arbitration [because] [the] defense [may] be valid against the contract as a whole but [may be] ineffective against the arbitration provision." *Adkins v. Sogliuzzo*, 2010 U.S. Dist. LEXIS 11107, at *28 (D.N.J. Feb. 9, 2010). Conversely, when a party claims, like Plaintiffs here, that the conditions of the contracting precluded the party from understanding the nature and consequences of the transaction and therefore validly assenting to the terms, the party's claim cannot logically be directed either at the entire contract or just certain provisions of the contract; it can logically be directed only at the entire contract. *See Spahr*, 330 F.3d at 1273.[4]

Plaintiff's substantive unconscionability arguments are also specifically directed at the delegation clause, unlike in *Rent-A-Center*, where "[n]owhere in his opposition to [the] motion to compel arbitration did [the plaintiff] even mention the delegation provision," and specifically, "none of [the plaintiff's] substantive unconscionability challenges was specific to the delegation provision."  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72-73 (2010). The Court explicitly

---

[4] *Buckeye* is similarly distinguishable in that it addressed a "challenge[] [to] [the] contract as a whole…on the ground that the illegality of one of the contract's provisions"—but not the arbitration provision—"render[ed] the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). The Court held that such a challenge must be decided by 'the arbitrator because the challenge did not challenge the arbitration provision specifically. *Id.* at 445-46. Here, in contrast, Plaintiffs' unconscionability argument specifically challenges terms of the Arbitration Clause as those terms are applied to the delegation provision.

observed, however, that had the plaintiff's arguments challenging the contract's fee-splitting arrangement "challenged the delegation provision by arguing that [fee-splitting] *as applied* to the delegation provision rendered *that provision* unconscionable," it may be that "the challenge should have been considered by the court." *Id.* at 74. Plaintiffs, of course, made this exact challenge here, *see* [Doc. 106] at 8, arguing that if the delegation provision were enforced, Plaintiffs would not be able to effectively vindicate their rights because due to the cost-sharing and fee-shifting provisions, they could not afford the proceeding necessary for a determination whether the Arbitration Clause is valid, and are unlikely to risk doing so. *See Dean v. Draughons Junior Coll.*, Inc., 2012 U.S. Dist. LEXIS 158294, at *60-61 (M.D. Tenn. Nov. 5, 2012) (refusing to enforce a delegation provision because plaintiffs could not afford to pay an arbitrator to decide whether the arbitration agreement was enforceable, and therefore "if the court were to enforce the Delegation Provision, the plaintiffs would effectively be foreclosed from pursuing their claims"); *see also Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 160 F.3d 1230, 1235 (10th Cir. 1999).

When faced with very similar challenges, courts have concluded that a party has specifically challenged the delegation clause: "[w]hile…allegedly prohibitive arbitration cost and…alleged bargaining power disparity may be equally applicable to all [contract] provisions," when "[the] [p]laintiff specifically argues those factors make the delegation provision itself unconscionable," the plaintiff has "specifically challenged the delegation provision as required in *Rent-A-Center*." *Johnson v. Wells Fargo Bank*, 2015 U.S. Dist. LEXIS 185016, at *5-6 (N.D. Ga. June 16, 2016); *see also Savaria v. Dynamex, Inc.*, 310 F.R.D. 412, 420, 422 (N.D. Cal. 2015). In contrast, plaintiffs in cases Magistrate Judge Hegarty cited "failed to assert *any* argument levied specifically toward the delegation clause," *Colon v. Conchetta, Inc.*, 2017 U.S. Dist. LEXIS 91001, at *11 (E.D. Pa. June 14, 2017) (emphasis added); *see also Alwert v. Cox Communs., Inc.*,

835 F.3d 1195, 1212 (10th Cir. 2016) (challenge based on contract language outside the arbitration provisions); *Wiles v. Palm Springs Grill, LLC*, 2016 U.S. Dist. LEXIS 106297, at *6 (S.D. Fla. Aug. 10, 2016) (same); *Getzelman v. Trustwave Holdings, Inc.*, 2014 U.S. Dist. LEXIS 105347 (D. Colo. Aug. 1, 2014) (vague allegation arbitration provisions unconscionable but no specific challenge to delegation provision).[5]

Accordingly, Plaintiffs specifically challenged the delegation provision of the Arbitration Clause, and this Court—not an arbitrator—must consider and decide Plaintiffs' arguments that the Arbitration Clause as a whole is unenforceable. *See* [Doc. 106] at 8-29.

### B. The Lease's invalid cost-sharing and fee-shifting provisions render the entire Lease—including the Arbitration Clause—unenforceable.

Magistrate Judge Hegarty made at least two legal errors in failing to invalidate the entire Lease because of its unconscionable provisions. [Doc. 149] at 18, 19-21.

First, "[s]everability is decided as a matter of state law," and a court "should deny [a] motion to compel arbitration…where the invalid terms of the arbitration clause render the entire clause void as a matter of state law." *Terminix Int'l Co. P'Ship v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005); *see also Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1032 (11th Cir. 2003) ("[I]n placing arbitration on an even footing with all other contracts, the FAA makes general sate contract law controlling," and thus "[t]he effect given [a] severability clause…is to be decided under the…state law applicable to [the arbitration] agreement."); *accord Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 219 (3d. Cir. 2003). Thus, even though the Lease contains a severability or savings clause, "the FAA requires that [this Court] turn to state law to determine

---

[5] Plaintiffs further specifically challenged the delegation clause by arguing that its enforcement would constitute an enforcement of the Arbitration Clause's illegal class action wavier. *See* [Doc. 106] at 24 n.19 ("[T]his Court cannot delegate the legality of the class/collective action wavier to the arbitrator because if it is illegal under federal law to preclude class and collective litigation of FLSA claims, enforcing the Arbitration Clause to any extent, even just to arbitrate the legality of the waiver, requires compelling arbitration on an individual basis, thereby violating federal law."). Judge Hegarty entirely failed to address this argument.

whether the…severability clause may be used to remove the offending terms" in the Arbitration Clause. *Andersen v. Intepros Fed., Inc.*, 240 F.Supp.3d 143, 162 (D.D.C. 2017).

Rather than rely on, or even examine, Colorado law on severance, Magistrate Judge Hegarty cited two federal cases in erroneously determining that the Lease's severability clause should be enforced and the invalid fee-shifting and cost-sharing provisions severed from the Arbitration Clause: *Pollard v. ETS PC, Inc.*, 186 F.Supp.3d 1166, 1178 (D. Colo. 2016), and *Daugherty v. Encana Oil & Gas (USA), Inc.*, 2011 U.S. Dist. LEXIS 76802, at *34-36 (D. Colo. July 15, 2011). *Pollard* cites only to *Daugherty* and provides extremely minimal analysis in deciding to sever invalid provisions from an arbitration agreement, and *Daugherty*, in turn, cites several federal cases in reaching the same conclusion. The first of these, *Fuller v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 88 F.Supp.2d 1158, 1162 (D. Colo. 2000), which is the only case *Daugherty* discusses, suffers from the same defect as *Daugherty*.[6]

Both cases, rather than examine Colorado law, apply a presumption in favor of arbitration that is erroneously derived from federal law. *Fuller*, 88 F. Supp. at 1162, *Daugherty*, 2011 U.S. Dist. LEXIS 76802, at *35-36. They thereby fail to recognize that any presumption in favor of arbitrability does not apply to a determination whether the parties have an enforceable arbitration agreement, *see Riley Mfg.*, 157 F.3d at 779, and severability, like "generally applicable contract defenses," is an issue of generally applicable state law "[that] may be applied to invalidate arbitration agreements without contravening' federal law." *Circuit City Stores, Inc. v. Mantor*,

---

[6] *Daugherty* also cites *Shankle*, 163 F.3d at 1235 n.6, in which the court actually *refused* to sever offending cost provisions from an arbitration provision and compel arbitration, as well as *Perez v. Hosp. Ventures Denver LLC*, 245 F.Supp.2d 1172, 1174 (D. Colo. 2003), and *Gourley v. Yellow Transp., LLC*, 178 F.Supp.2d 1196, 1204 (D. Colo. 2001), both of which addressed arbitration agreements that did not contain a savings or severability clause. *See Daugherty*, 2011 U.S. Dist. LEXIS 76802, at *34-35. None of these cases, therefore, support Magistrate Judge Hegarty's decision to sever the illegal cost-sharing and fee-shifting provisions here, nor do they provide any analysis of Colorado law on severability.

335 F.3d 1101, 1109 (9th Cir. 2003) (quoting *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686-87

(1996)); *see also* Margaret M. Harding, *The Redefinition of Arbitration by Those with Superior*

*Bargaining Power*, 1999 Utah L. Rev. 857, 945-46 (1999) ("[G]eneral contract law governing

severance does not require a court to treat severance of offending provisions in arbitration

agreements any differently than invalid provisions in any other contract," and "[t]o impose a bias

in favor of severance when an invalid arbitration clause is present would result in arbitration

agreements being treated differently than other agreements."). Therefore, Magistrate Judge

Hegarty should not have relied on *Pollard* or *Daugherty* in determining whether to sever the

cost-sharing and fee-shifting provisions of the Lease.

While Plaintiffs are not aware of any Colorado Supreme Court or even Colorado Court of

Appeals decisions addressing when a court should enforce a severability clause in a contract of

adhesion and sever unenforceable terms from an arbitration agreement, a federal court tasked

with predicting how a state's highest court would decide a matter of state law may rely on

"decisions from other jurisdictions…and treatises." *Wankier v. Crown Equipment Corp.*, 353 F.3d

862, 866 (10th Cir. 2003); *see also Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574-75 (10th

Cir. 1984) ("[T]he policies underlying the applicable legal doctrines and the doctrinal trends

indicated by [such] policies…may also inform [the] court's analysis."). Plaintiffs have cited

multiple sources in arguing that this Court should not sever the invalid provisions of the

Arbitration Clause from the rest of the Lease, *see* [Doc. 106] at 19-23, including the Restatement:

"[A] court will not aid a party who has taken advantage of [its] dominant bargaining power to

extract from the other party a promise that…offend[s] public policy by redrafting the agreement

so as to make a part of the promise enforceable." Restatement (Second) of Contracts, § 184, cmt.

(b). The Colorado Supreme Court has often adopted the Restatement (Second) of Contracts as

Colorado law, and there is no reason to believe it would not do so here, especially as multiple courts have adopted similar positions on overreaching in arbitration agreements.

For instance, the Third Circuit has refused to sever unconscionable provisions from an arbitration agreement when they "demonstrate[] a systematic effort to impose arbitration on an employee, not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage," or constitute "a deliberate attempt by the employer to impose an arbitration scheme designed to discourage an employee's resort to arbitration." *Nino v Jewelry Exch.*, 609 F.3d 191, 206-07 (3d. Cir. 2010); *see also Hall v. Treasure Bay V.I.*, 371 F. App'x 311, 314 (3d Cir. 2010); *Roe v. SFBSC Mgmt.*, 2015 U.S. Dist. LEXIS 26057, at *31 (N.D. Cal. Mar. 2, 2015) (refusing to sever multiple unconscionable provisions in an arbitration agreement between dancers and the clubs at which they performed because "however valuable and strongly preferred [arbitration is], [it] is meant only to provide an alternative forum to litigation, not to overstuff one party's quiver"); *Plasskett v. Bechtel Int'l, Inc.*, 243 F. Supp. 2d 334, 345 (D.V.I. 2003).[7]

Similarly, courts in the Tenth Circuit, like the District of Kansas, have held that even when state law favors severing offending provisions from contracts rather than voiding the entire contract, "an overeagerness to sever offending provisions will encourage parties with superior bargaining power to load their arbitration agreements with questionable, or even clearly unlawful provisions." *Clary v. Stanley Works*, 2003 U.S. Dist. LEXIS 12747, at *17 (D. Kan. July 24, 2003). Thus, if a contract contains at least "one arbitration provision that clearly violates" established

---

[7] *Hove v. Ferrellgas Inc.*, No. 02-RB-2186 (MJW) (D. Colo. Feb. 20, 2003), Ex. 2, p. 5, likewise refused to apply a severability clause to sever offending cost and fee provisions from an arbitration agreement because "[t]he savings clause does not permit the court to re-write the attorney fees rules of the arbitration agreement to provide the assurance and incentive provided by Title VII." *But see Lysyj v. Milner Distrib. All., Inc.*, 2014 U.S. Dist. LEXIS 9845, at *17 (D. Colo. Jan. 24, 2014) (Moore, J.) (severing unconscionable fee splitting and prevailing party provisions from the rest of the arbitration agreement in an FLSA case because—unlike here— they did not "permeate the compete contract to such an extent as to affect its enforceability entirely").

Tenth Circuit law, such as case law prohibiting arbitration agreements from "requiring employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum," the court has refused to sever the offending term, concluding that "[i]n order to promote fundamental fairness in the arbitral arena, courts must require parties to reach an arbitration agreement that is enforceable as written." *Id.* at *17, 19 (citation omitted). Otherwise, "[a]rbiration clause may effectively become in terrorem devices, whose purpose is to frighten away potential litigants," yet "for those brave souls who are willing to challenge the unlawful provisions, the courts will simply whittle down the arbitration clause until it is within the outer limits of enforceability." *Id.* at *18-19. "Such a system flies in the face of the Supreme Court's conclusion that arbitration furthers broader social purposes by providing an alternative forum where a prospective litigant may effectively vindicate his rights." *Id.* at *19.

Defendants here have done exactly what these courts have feared and included the unconscionable cost-sharing and fee-shifting provisions as part of an integrated scheme to chill Plaintiffs from exercising their legal rights. *See Summers v. Crestview Apts.*, 236 P.3d 586, 592-93 (Mont. 2010). As Plaintiffs describe in detail in their Response to Defendants' Motion to Compel, *see* [Doc. 106] at 19-23, the unconscionable provisions of the Arbitration Clause are key parts of a contract, the purpose of which is to illegally misclassify Plaintiffs and discourage them from exercising their lawful right to challenge that misclassification. In this respect, Magistrate Judge Hegarty made his second legal error regarding severability in refusing to examine the scheme of the Lease as a whole in determining whether to sever the offending provisions. *See* [Doc. 149] at 20. Because severability is a matter of state contract law, and Colorado contract law provides that a "court should interpret a contract in its entirety," Magistrate Judge Hegarty erred in not considering Plaintiffs' arguments that the entire Lease, including the unconscionable

arbitration provisions, was intended to discourage Plaintiffs from challenging their misclassification. *Copper Mt., Inc. v. Indus. Sys.*, 208 P.3d 692, 697 (Colo. 2009) (citation omitted). Magistrate Judge Hegarty does not cite to any conflicting decision that a delegation clause would or should prohibit a court from examining the entire contract to determine whether a party's intent in including certain arbitration provisions was to exploit the arbitration procedure to chill the other party from exercising their legal rights. *See Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1249 (9th Cir. 1994). In fact, the severability clause itself could not be applied if this were the rule because it is contained *outside* the Arbitration Clause and thus outside the delegation clause as well. *See* [Doc. 74], Ex. 5I, p. 14.

Accordingly, this Court should follow the Restatement and other courts and hold that because the Lease and the circumstances surrounding Plaintiffs' execution of it show that the Arbitration Clause's unconscionable provisions are part of Defendants' scheme to violate the FLSA and other wage laws and to discourage Plaintiffs from enforcing their rights, [Doc. 106] at 19-24, the cost-sharing and fee-shifting provisions may not be severed from the Arbitration Clause and therefore the Arbitration Clause is unenforceable. *See Nino*, 609 F.3d at 207.[8]

Alternatively, this Court can avoid having to predict how the Colorado Supreme Court would decide severability in this context by certifying the following (or similar) question to the Colorado Supreme Court under Rule 21.1 of Colorado's Rules of Appellate Procedure: "How should courts determine whether a severability clause in a contract of adhesion should be

---

[8] The same analysis applies to the cost-sharing and fee-shifting provisions as applied to the delegation clause because Magistrate Judge Hegarty erroneously severed those provisions from the delegation clause and otherwise enforced the clause. [Doc. 149] at 19. *See Savaria*, 310 F.R.D. at 421 ("Severing the unenforceable provisions of an arbitration clause (or as here, a delegation clause) would allow an employer to draft one-sided agreements and then whittle down to the least offensive-agreement if faced with litigation, rather than drafting fair agreements in the first instance.").

enforced, unenforceable terms severed from the contract, and the contract enforced in their absence?" A clear decision from the Colorado Supreme Court in this area would benefit courts in this District, which frequently must determine severability issues in resolving motions to compel arbitration. General severability law that emphasizes preserving the parties' bargain to the extent possible likely fails to encompass all the relevant considerations in this context because arbitration agreements are frequently contracts of adhesion and the party of weaker bargaining power unlikely had any intent that the arbitration agreement should survive its unconscionable terms. Harding, 1999 Utah L. Rev. at 942. Whether and how unenforceable terms should be severed from a contract of adhesion thus is an important question that arises frequently in federal court on which the Colorado Supreme Court should have an opportunity to speak.

### C. The nonsignatory Defendants should not be allowed to enforce the Arbitration Clause of a Lease to which they were not parties.

While the Colorado Supreme Court has not addressed the framework for determining whether the equitable estoppel doctrine allows a party to compel arbitration under a contract to which it is not a signatory, the Colorado Court of Appeals has concluded that in some circumstances—none of which are present here—equitable principles may counsel against allowing a party to an arbitration agreement to use the contract containing that agreement as a litigation sword without allowing a nonsignatory defendant to use the same agreement as a shield. *Meister v. Stout*, 353 P.3d 916, 920-21 (Colo. App. 2015). *Meister*'s adoption of an arbitration-specific theory of equitable estoppel, however, is problematic because the *Meister* standard is broader than the standard the Colorado Supreme Court has applied in other contexts. "[T]he purpose of [the FAA] was to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint*, 388 U.S. at 404 n.12. Under Colorado law, "[e]quitable estoppel is not a favored doctrine." *Jefferson Cty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830,

841 (Colo. 1992). To establish entitlement to equitable estoppel, a party must clearly show, among other things, that it detrimentally relied on the other party's conduct. *Id.*

But in the arbitration context some courts—including perhaps the court of appeals in *Meister*—have lost track of the reliance requirement. The confusion may follow in part from some courts' prior thinking that equitable estoppel was a matter of federal law under the FAA, which the Supreme Court rejected in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 639-40 (2009). Indeed, *Meister*, while recognizing that the body of law addressing equitable estoppel in the context of arbitration that had previously developed was decided pre-*Arthur Anderson*, nevertheless decided to follow the reasoning and discussion of that line of cases. *Meister*, 353 P.3d at 920-21 & n.3. However, almost every case relied on by *Meister* incorrectly focused on the purported federal policy in favor of arbitration in concluding that a nonsignatory may compel arbitration against a signatory under the doctrine of equitable estoppel without showing detrimental reliance.[9] Because equitable estoppel is a matter of state law rooted in the state's general contract doctrine, *Arthur Andersen*, 556 U.S. at 632, courts should not take into account any purported federal policy favoring arbitration in applying that doctrine. "The presumption in favor of arbitration does not extend…to non-signatories to an agreement; it applies only when both parties have consented to and are bound by the arbitration clause." *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014).

The current, prevailing trend strikes back against the creation of an expansive arbitration-specific equitable estoppel doctrine and focuses on relevant state contract law to determine whether a nonsignatory may compel arbitration. *See, e.g., Crawford Prof'l Drugs, Inc. v. CVS*

---

[9] *See, Hill v. G.E. Power Sys.*, 282 F.3d 343, 347-48 (5th Cir. 2002); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999); *GATX v. Mgmt. Servcs. LLC v. Weaklnad*, 171 F. Spp. 2d 1159, 1166 (D. Colo. 2001); *Price v. Ernst & Young*, 617 S.E.2d (Ga. App. 2005); *Armas v. Prudential Sec.*, 842 So.2d 210, 212 (Fla. App. 2003); *German Am. Fin. Advisors & Trust Co. v. Reed*, 969 NE.2d 621, 627-28 (Ind. App. 2012).

*Caremark Corp.*, 748 F.3d 249 n.9 (5th Cir. 2014) (collecting cases).  For example, the Seventh

Circuit recently explained that when general principles of state contract law require reasonable

and detrimental reliance by the party seeking to apply estoppel, nonsignatories to arbitration

agreements must make a similar showing to benefit from the arbitration clause under equitable

estoppel doctrine. *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 753 (7th Cir. 2017); *see*

*also B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So.2d 483, 492-93 (Miss. 2005). This holding

is consistent with the Colorado Supreme Court's decisions on equitable estoppel in other

contexts, namely that the doctrine "arises where one party induces another to detrimentally

change position in reasonable reliance on that party's actions through words, conduct, or

silence." *V Bar Ranch LLC v. Cotten*, 233 P.3d 1200, 1210 (Colo. 2010). Pursuant to this general

case law on equitable estoppel, other courts' recent case law, and the Supreme Court's

instruction in *Arthur Andersen*, it is likely that the Colorado Supreme Court would insist that

nonsignatories show reliance to compel signatory plaintiffs to arbitration under the equitable

estoppel doctrine. But because the Colorado Supreme Court has not yet had considered the issue,

this Court should certify the following (or similar) question to the Colorado Supreme Court for

clarification: "What principles should courts apply in determining whether a signatory is

equitably estopped from avoiding arbitration on claims brought against a nonsignatory?"

    Alternatively, this Court should reject Magistrate Judge Hegarty's recommendation on

this issue, *see* [Doc. 149] at 23-26, because even under the rule from *Meister*, he misapplied the

law. *Meister* allows a nonsignatory to compel arbitration with a signatory when the signatory

"must rely on the terms of a written agreement containing an arbitration provision to assert his

claims," which occurs where (1) the signatory's claim "references or presumes the existence of

the written agreement"; or (2) the signatory alleges that the nonsignatory and at least one other

signatory engaged in "substantially interdependent and concerted misconduct…intertwined with duties or obligations arising from the underlying contract." *Meister*, 353 P.3d at 921. The limitation that a signatory *must rely* on the terms of the agreement to assert its claims makes sense because equitable estoppel doctrine is designed to prevent a "party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004). "The linchpin for equitable estoppel is equity…[and its application] works to prevent the inequitable result that would occur if a party was able to use a contract as both a sword and a shield." *Pershing L.L.C. v. Bevis*, 2014 WL 1818098 (M.D. La. May 7, 2014). Thus, "[e]quitable estoppel to compel arbitration has been limited to narrow situations" in which doing so was "necessary to prevent a party from using the terms or obligations of an agreement as the basis for [its] claims against a non-signatory, while at the same time refusing to arbitrate with the non-signatory under another clause of that same agreement." *Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1342, 1345 (Fed. Cir. 2017) (citation omitted). In this respect, the Tenth Circuit has made clear that reliance on the contract is "key": "[t]he plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory is…always the sina qua non of an appropriate situation for applying equitable estoppel." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 710 (10th Cir. 2011) (emphasis added) (citation omitted).

Magistrate Judge Hegarty thus clearly erred because Plaintiffs' claims ***do not*** rely on the terms or obligations of the Lease as the basis for their claims against the nonsignatories; they stand to *defeat* them. Merely because Plaintiffs' Complaint makes reference to the Lease does not establish they rely on it in making out their claims: "Plaintiffs' claims…must intimately rely on the existence of [the Lease], not merely reference [it]." *Waymo*, 870 F.3d at 1347. Plaintiffs'

FLSA claims not only do not rely on the Lease, they *conflict* with the Lease, which illegally classifies Plaintiffs as independent contractors. *See* [Doc 106] at 6.[10] Magistrate Judge Hegarty's statement that "the restrictions and requirements in [the Lease] will be extremely relevant in determining the type of relationship the parties had," [Doc. 149] at 25, is simply incorrect. The fact-finder will need not and should not rely on the Lease's terms to adjudicate Plaintiff's FLSA claim because the claim's validity expressly depends not on the contractual language but rather on "the economic realities of the relationship" between Plaintiffs and Defendants. *Baker v. Flint Eng'g & Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). Indeed, "[t]he FLSA is designed to *defeat* rather than implement contractual relationships." *Keller v. Miri Micorsystems LLC*, 781 F.3d 779, 808 (6th Cir. 2015) (emphasis added). The critical inquiry therefore is not whether the Lease purportedly gave Defendants a significant level of control over Plaintiffs' actions, [Doc. 149] at 24, but rather whether as a matter of economic reality, the *actual* relationship between Plaintiffs and Defendants was that of an employment relationship. Plaintiffs thus do not rely on any terms of the Lease in asserting their FLSA claims, a fact "[w]e know…to be true because even if [the Lease] contained entirely different terms…, that would not have any bearing on the validity of

---

[10] Magistrate Judge Hegarty erred in distinguishing *Peck v. Encana Oil & Gas, Inc.*, 224 F.Supp.3d 1181 (D. Colo. 2016). *See* [Doc. 149] at 25. Magistrate Hegarty relied on the seemingly different tests *Meister* applies when a nonsignatory is seeking to compel arbitration with a signatory versus when a signatory is seeking to compel arbitration with a nonsignatory. *Id.* at 25-26. But this is a distinction without a difference. While purporting to set out two tests, *Meister* in fact appears to treat the tests interchangeably, looking in both scenarios to determine whether the plaintiff's claims arose from the contract containing the arbitration agreement. Thus, in *Meister*, in which, like here, a nonsignatory defendant was seeking to compel arbitration with a signatory plaintiff, the court concluded that because the plaintiff's claims arose from the underlying contract—a determination based on the fact that the claims either were based on a violation of the contract or a violation of rights and obligations stemming from the contract—the plaintiff was equitably estopped from avoiding arbitration of his claims. *Meister*, 353 P.3d at 922. In this case, however, like in *Peck*, Plaintiffs' claims are *not* based on a violation of the contract or a violation of any rights of Plaintiffs or obligations of Defendants arising from the Lease; rather, the FLSA—and the rights the FLSA provides to Plaintiffs and the obligations it imposes on Defendants—forms the basis of Plaintiffs' claims. *Peck*, 244 F.Supp.3d at 1184.

[Plaintiffs'] claims against [the nonsignatories]," which instead will be determined based on the factual relationship of the parties. *White v. Sunoco, Inc.*, 870 F.3d 257, 265 (3d Cir. 2017).[11]

Because Magistrate Judge Hegarty misapplied *Meister* and other applicable law, this Court should find that the nonsignatory Defendants may not compel arbitration.[12]

## IV. CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO. LCIVR. 7.1(A)

Plaintiffs' counsel conferred with counsel for Defendants, who oppose this motion.

## V. CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court reject the Magistrate's Recommendation and deny Defendants' Motion to Compel Arbitration, and/or grant Plaintiffs' Motion to certify two questions of state law to the Colorado Supreme Court.[13]

Respectfully submitted this 14th day of November 2017.

---

[11] *Pollard* is distinguishable because the claim was the failure to pay overtime compensation to employees who had an employment contract with their employer, 186 F.Supp.3d at 1169, whereas Plaintiffs here do not have an "employment" contract, but rather a contract purporting to classify them as independent contractors. Thus, the plaintiffs in *Pollard* were not repudiating their contract in asserting their FLSA claims, which is exactly what Plaintiffs are doing here. In any event, Plaintiffs respectfully submit that *Pollard* was wrongly decided. The *Pollard* court held that the plaintiffs' FLSA claims were intertwined with their employment agreements because the arbitrator would need to examine and interpret the employment agreements to determine whether the plaintiffs' claims implicated or were affected by the agreements. *Id.* at 1175. In so holding, the court observed that the plaintiffs "would have a better argument" that they were not seeking to hold the nonsignatory defendants liable for duties imposed or owed pursuant to the agreements if "the FLSA were a statute that entitled employees to additional compensation regardless of whether the employees have a contract with their employer, and regardless of the contract's terms." *Id.* The court did not cite any authority for the proposition that the FLSA is not such a statute. But, in fact, that is exactly how the FLSA operates: if an employee has an employment relationship with his or her employer (and is not exempt from the scope of the statute for other reasons), then regardless whether the employee has an employment contract and regardless of the terms of that contract, the FLSA mandates that the employer pay the employee fair compensation for overtime work. "[T]he requirements of the Act cannot be changed by contract," as "employees [are] entitled to be compensated '*in accordance with the applicable provisions of the Fair Labor Standards Act, regardless of any employment contract to the contrary.*'" *Hodgson v. Lakewood Broad. Serv., Inc.*, 330 F.Supp. 670, 672 (D. Colo. 1971).

[12] At the very least, this Court should certify to the Colorado Supreme Court the conflict between *Meister* and *Pollard, see supra* note 11, so that federal courts can obtain clear guidance on state law regarding what it means in this context for a signatory plaintiff to "rely" on a contract containing an arbitration clause in asserting claims against a nonsignatory defendant.

[13] This Court should further decide Plaintiffs' Expedited Motion to Proceed as a Conditional Collective Action, to Provide Notice, and to Toll all Statue of Limitations, [Doc. 61], which Magistrate Judge Hegarty denied as moot in light of his Recommendation, [Doc. 149 at 26-27]. Because, for the reasons above, Magistrate. Judge Hegarty erred in granting Defendants' Motion to Compel Arbitration, he likewise erred in denying Plaintiffs' Motion for Conditional Certification as moot.

KILLMER, LANE & NEWMAN, LLP

*s/ Mari Newman*

_____
Mari Newman
Darold W. Killmer
Andy McNulty
Liana Orshan
1543 Champa St., Ste. 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 fax
mnewman@kln-law.com
dkillmer@kln-law.com
amcnulty@kln-law.com
lorshan@kln-law.com

*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2017, I filed the foregoing via CM/ECF, and the CM/ECF system will send notification to the following:

Ryan P. Lessmann
JACKSON LEWIS P.C.
950 17th Street, Suite 2600
Denver, CO 80202
LessmannR@jacksonlewis.com

Allan S. Rubin
JACKSON LEWIS P.C.
2000 Town Center, Suite 1650
Southfield, MI 48075
rubina@jacksonlewis.com

*Counsel for Defendants*

*s/ Liana Orshan*
Liana Orshan