**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:17-cv-00631-RM-MEH

GEORGINA SANTICH, et al.,

Plaintiffs,

v.

VCG HOLDING CORP, et al.,

Defendants.

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION ON DEFENDANTS' MOTION TO COMPEL ARBITRATION [Doc. 149] AND MOTION TO CERTIFY TO THE COLORADO SUPREME COURT**

---

Defendants, by and through their undersigned counsel, hereby submit their Response to Plaintiffs' Objection to Magistrate Judge's Recommendation on Defendants' Motion to Compel Arbitration [Dkt. 149] and Motion to Certify to the Colorado Supreme Court [Dkt. 162], as follows:

## INTRODUCTION

Magistrate Judge Hegarty correctly compelled this matter to arbitration. Nonetheless, in a last-ditch effort to avoid the proper application of the various and in many cases, multiple arbitration provisions Plaintiffs entered into, Plaintiffs now argue that Magistrate Judge Hegarty got it wrong, by arguing his analysis of binding Supreme Court and Tenth Circuit authority is incorrect. Plaintiffs rely on non-binding and non-persuasive treatises for their proposition that Magistrate Hegarty erred in applying the Federal Arbitration Act ("FAA") to the facts of this case. In advancing their argument, Plaintiffs misconstrue the relevant facts and omit that only 12 of the

35 named Plaintiffs have submitted any evidence whatsoever to support claims of unconscionability. Additionally, Plaintiffs fail to even acknowledge that several of the 12 Plaintiffs who did submit a declaration challenging the execution of the arbitration provision ***subsequently*** signed valid and enforceable arbitration agreements when they were represented by counsel and the factual circumstances regarding the execution of those agreements was submitted to the Court on video. In his recommendation, Magistrate Judge Hegarty relied on binding Supreme Court precedent, Tenth Circuit case law, District of Colorado case law, and persuasive case law from the Colorado Court of Appeals in making his recommendation. Plaintiffs have not presented any binding authority that conflicts with the precedent Magistrate Judge Hegarty relied on; instead, they have piecemealed opinions from other circuits and states to support their disagreement with the recommendation. As such, their objection alleging that Magistrate Judge Hegarty's recommendation was clearly erroneous or contrary to law is unsupported and should be rejected.

## PROCEDURAL BACKGROUND

Plaintiff Santich initiated this lawsuit on March 10, 2017. [Dkt. 1]. On March 31, 2017 Defendants moved to dismiss the lawsuit and compel arbitration because Plaintiff Santich signed an agreement to arbitrate any claims against the Defendants. [Dkt. 20]. After asking for additional time to respond to the Motion to Dismiss and Compel Arbitration, [Dkt. 36], Plaintiff filed an Amended Complaint, [Dkt. 65], adding 35 entertainers as named Plaintiffs. On May 15, 2017, following the filing of the Amended Complaint, this Court denied without prejudice Defendants' Motion to Dismiss and to Compel Arbitration and to Strike Class and Collective Action allegations as moot. [Dkt. 67]. On May 26, 2017, Defendants filed their renewed Motion to Dismiss and

Compel Arbitration because each of the newly named Plaintiffs also signed binding arbitration agreements. [Dkt. 74]. Plaintiffs responded to the Defendants' renewed motion on June 19, 2017. [Dkt. 105]. Defendants then filed their reply in support of their motion to stay or dismiss on July 11, 2017. [Dkt. 122]. Plaintiffs then filed a motion for leave to file a surreply on July 21, 2017 [Dkt. 131] which the Court denied on August 10, 2017. [Dkt. 139]. On September 26, 2017, Magistrate Judge Hegarty issued a recommendation on Defendants' Motion to Compel Arbitration. [Dkt. 149]. Plaintiffs filed their objection to Magistrate Judge Hegarty's recommendation on November 14, 2017. [Dkt. 162]. [1]

## LEGAL STANDARD

While Defendants' Motion to Compel Arbitration contained a dispositive aspect in that it requested dismissal of the case as an alternative to a stay, the Court is not required to apply a *de novo* standard of review. The Tenth Circuit has held that a motion may be considered dispositive for purposes of 28 U.S.C. §636 (b)(1) if it has an "identical effect" as one of the motions excepted in that statute. *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000). In applying this standard, this Court has held that a motion to compel arbitration is non-dispositive, as an "Article III judge ultimately will be required to confirm, modify, or vacate any arbitration involving the parties in this action." *Vernon v. Qwest Communs. Int'l, Inc.*, 857 F. Supp. 2d 1135, 1141 (D. Colo. 2012) (citing *All Saint's Brands, Inc. v. Brewery Group Denmark, A/S*, 57 F. Supp.2d 825, 833 (D. Minn. 1999); *Herko v. Metropolitan Life Insurance Co.*, 978 F. Supp. 141, 142 n.1 (W.D.N.Y. 1997)). Thus, the motion is non-dispositive.

[1] The issues raised in Plaintiffs' objection to Magistrate Judge Hegarty's recommendation were fully addressed in the briefing for Defendants' Motion to Compel Arbitration [Dkt. 74]. Defendants rely on and incorporate herein those arguments set forth in Dkts. 74 and 122.

Further, the proper standard of review results from the nature of the matter considered. *See Segal v. L.C. Hohne Contractors, Inc.*, 303 F. Supp. 2d 790, 794-96 (S.D. W. Va. 2004) (recognizing that despite the magistrate judge's issued findings and recommendation, the proper review is for clear error under Rule 72(a) due to the nature of the motion and recommendation). Here, although there is a request for dismissal in the alternative to a stay, the nature of the motion and the Magistrate Judge's recommendation focuses on compelling arbitration, which is a non-dispositive issue. Courts have held that motions to stay litigation pending the resolution of parallel arbitration proceedings are not among those enumerated in 28 U.S.C. §636(b)(1)(A). *PowerShare, Inc., v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010). ("A federal court's ruling on a motion to stay litigation pending arbitration is not dispositive of either the case or any claim or defense within it.")[2] Additionally, the request for dismissal in the alternative to a stay does not place the motion within the listed motions in §636(b)(1)(A) unless the Magistrate Judge reaches that issue. *Tige Boats, Inc. v. Interplastic Corp.*, No. 1:15-CV-0114-P-BL, 2015 U.S. Dist. LEXIS 169788, at *9 (N.D. Tex. Dec. 21, 2015). Here, Magistrate Judge Hegarty's recommendation did not address the issue of dismissal, similar to the magistrate judge in *Tige Boats.* Instead, Magistrate Judge Hegarty recommended the Court "*stay* the litigation, at least until the *arbitrator* determines the validity of the lease agreements" [Dkt. 149, p. 26] (emphasis added). Because the Magistrate did not reach the issue of dismissal, the motion is non-dispositive. *Id.*

[2] "Although granting or denying a stay may be an important step in the life of a case (lawyers are keenly aware that there are substantive consequences to whether or not a stay is granted), in the last analysis a stay order is merely suspensory. Even if such a motion is granted, the court still retains authority to dissolve the stay or, after the arbitration has run its course, to make orders with respect to the arbitral award. *See* Federal Arbitration Act, 9 U.S.C. § 9 (permitting parties to apply to the court for an order confirming the award); *id.* § 10 (providing district courts with authority to vacate an arbitral award); *id.* § 11 (providing district courts with authority to modify an arbitral award). We acknowledge that the scope of judicial review of arbitral awards is very narrow, but that does not extinguish such review." *PowerShare, Inc.*, 597 F.3d at 14 (1st Cir. 2010).

Where a magistrate judge rules on a non-dispositive issue, the district court's review is limited to considering whether the order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). Under the clearly erroneous standard, "the reviewing court [must] affirm unless it, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.,* 333 U.S. 364, 395 (1948).

## ARGUMENT

### I. The Magistrate Judge Did Not Err in Recommending that the Arbitrator Should Decide Arbitrability.

Magistrate Judge Hegarty relied on two U.S. Supreme Court cases for the proposition that courts look to two issues when analyzing whether an arbitration agreement delegates arbitrability disputes. [Dkt. 149, p. 7]. Courts look to 1) whether the parties clearly and unmistakably demonstrated their intent to delegate validity disputes to the arbitrator and 2) whether the party opposing the arbitration contests the validity of the agreement as a whole or the arbitration and delegation provisions specifically. *Prima Paint Corp. v. Flood and Conklin Mfg. Co.,* 388 U.S. 395, 403 (1967); *Rent- A- Center, W., Inc., v. Jackson,* 561 U.S. 63, 72 (2010) (unless the Plaintiff challenged the delegation provision specifically, the court must treat it as valid under §2 (of the FAA) and must enforce it under §§3 and 4, leaving any challenge of arbitrability as a whole to the arbitrator). Plaintiffs do not contest that the leases clearly and unmistakably demonstrate their intent to delegate the questions of validity to the arbitrator. Instead, their argument rests on the second prong of the analysis where they challenge Magistrate Judge Hegarty's reliance on *Rent-A-Center*, and *Prima Paint*, two U.S. Supreme Court cases, and his distinguishing analysis of *Spahr v. Secco,* 330 F.3d 1266, 1273 (10th Cir. 2003), arguing that their challenge to the leases as a whole challenges the delegations clause specifically.

Plaintiffs attempt to take a second bite at the apple when they then once again attempt to argue that this case is analogous to that of *Spahr v. Secco*, 330 F.3d 1266, 1273 (10th Cir. 2003). However Defendants successfully distinguished *Spahr* from the facts and issues present here in their reply brief. [Dkt. 120]. Even though Magistrate Judge Hegarty clearly set forth sound reasoning based in Supreme Court authority of why the holding in *Spahr* does not apply here, Plaintiffs once again argue that *Spahr* applies.

In *Sphar*, the Tenth Circuit held that the rule announced in *Prima Paint*—that unless a defense relates specifically to the arbitration provision of the agreement (or the delegation clause) it must be submitted to the arbitrator as part of the underlying dispute—does not apply where the challenge relies on the fact that the party lacked the mental capacity to enter into a contract. Magistrate Judge Hegarty and the Tenth Circuit noted that when a challenge goes to the party's status (i.e. mental capacity) as opposed to the party's behavior as it did in *Spahr*, the rule set forth in *Prima Paint* does not apply.[3] The *Prima Paint* rule applies when the challenge focuses on how the parties acted during the bargaining process period as opposed to the more permanent state of the parties involved. *Spahr*, 330 F.3d at 1273 n.8. Plaintiffs' unconscionability arguments are founded in the parties' alleged behavior during the signing of the lease agreements. *See* Plaintiffs'

---

[3] To the extent Plaintiffs argue that the FAA does not apply to the arguments they advance regarding contract formation, they are incorrect. "The Act's key provision, once again, states that an arbitration agreement must ordinarily be treated as 'valid, irrevocable, and enforceable.' 9 U. S. C. §2; see *supra*, at 197 L. Ed. 2d, at 811. By its terms, then, the Act cares not only about the 'enforce[ment]' of arbitration agreements, but also about their initial 'valid[ity]'—that is, about what it takes to enter into them. Or said otherwise: A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the Act than a rule selectively refusing to enforce those agreements once properly made. Precedent confirms that point. In *Concepcion*, we noted the impermissibility of applying a contract defense like duress 'in a fashion that disfavors arbitration.' 563 U. S., at 341, 131 S. Ct. 1740, 179 L. Ed. 2d 742. But the doctrine of duress, as we have elsewhere explained, involves 'unfair dealing at the contract formation stage.' *Morgan Stanley Capital Group Inc.* v. *Public Util. Dist. No. 1 of Snohomish Cty.*, 554 U. S. 527, 547, 128 S. Ct. 2733, 171 L. Ed. 2d 607 (2008). Our discussion of duress would have made no sense if the FAA, as the respondents contend, had nothing to say about contract formation." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1428 (2017)

Response to Defendants' Motion to Dismiss [Dkt. 105, p.7] ("Defendants had a uniform practice of presenting the leases in a manner that that precluded valid assent to the terms"). Therefore, Plaintiffs' challenge is based on the parties' behavior during the bargaining process, not their mental capacity status. As such, the holdings set forth in the Supreme Court Cases of *Rent-A-Center* and *Prima Paint* apply here, requiring a specific challenge to the delegation clause, rather than the entire lease as a whole.

Magistrate Judge Hegarty also correctly relies on *Rent-A-Center* and other sound case law for the proposition that a party cannot simply state that their unconscionability arguments against the entire lease applies to the delegation provision as well. [Dkt. 149, pp. 11-13]; *Rent-A-Center W., Inc.*, 561 U.S. at 73 (affirming the district court's order compelling arbitration because the plaintiff "opposed the motion to compel on the ground that the *entire arbitration agreement*, including the delegation clause was unconscionable). Simply labeling ones challenges to the agreement as a challenge to the delegation clause does not mean that the arguments actually apply to the delegation clause specifically. *Wiles v. Palm Springs Grill, LLC,* No. 15-CV-81597-KAM, 2016 WL 4248315, at *2 (S.D. Fla. Aug. 11. 2016). Additionally, as Magistrate Judge Hegarty correctly noted that where an arbitration provision can only be unenforceable if the entire agreement is unenforceable, the challenge applies to the entire agreement, not the [delegation] provision. *Alwert v. Cox Communs., Inc. (In re Cox Enters., Inc., Set-top Cable Television Box Antitrust Litig.),* 835 F.3d 1195, 1209-11 (10th Cir. 2016). Magistrate Judge Hegarty correctly analogizes this Tenth Circuit holding to Plaintiffs' allegations in this case – if, as Plaintiffs allege, their unconscionability arguments that Defendants did not give Plaintiffs an opportunity to become familiar with the lease provisions and presented the leases to Plaintiffs while they were wearing

lingerie, the delegation clause would only be unenforceable because the entire lease agreement would be unenforceable. However, at no point have Plaintiffs argued or presented evidence that Defendants rushed Plaintiffs only through the delegation clause, made them wear lingerie while reading only the delegation clause, or made them have an alcoholic drink just before they were going to read just the delegation clause. All of Plaintiffs' unconscionability arguments are to the lease agreement as a whole, not to the delegation clause. [Dkt. 105].

Delegation clauses are specifically designed to delegate any questions of enforceability to the arbitrator. A challenge to the lease agreement as a whole triggers the severance of and reliance on the delegation clause to resolve the overall enforceability dispute. A court cannot consider challenges to an agreement when the challenges do not specifically challenge the validity of the clause delegating arbitrability issues to the arbitrator. *Rent-A-Center, W.* 561 U.S. at 72. Plaintiffs do not present any authority contradicting or distinguishing the facts at hand from the *In re Cox Enters., Inc., Set-top Cable Television Box Antitrust Litig* case, and have, therefore, not shown that Magistrate Judge Hegarty's reliance on this case was clearly erroneous or contrary to law.

Magistrate Judge Hegarty next analogizes this case to *Getzelman v. Trustwave Holdings, Inc.*, No. 13-cv-02987-CMA-KMT, 2014 WL 3809736, at *4 (D. Colo. Aug. 1, 2014), where plaintiffs alleged many of the same unconscionability arguments alleged here, that they lacked bargaining power, did not have enough education to understand the agreement, and were not able to consult with legal counsel. There, Judge Arguello held that because the delegation provisions were not challenged separately as unconscionable, that arbitrability is an issue for the arbitrator to determine. *Id.* Plaintiffs attempt to distinguish their claims from *Getzelman* and several other cases cited by Magistrate Judge Hegarty by noting that the plaintiffs in those cases did not assert *any*

argument levied specifically at the delegation clause, claiming that their arguments are more like the plaintiffs' arguments set forth in cases in a Georgia Northern District Court and a California Northern District Court, neither of which are binding authority on this Court. Moreover, Plaintiffs did not, in fact, assert any arguments levied specifically at the delegation clause. Thus, just like the plaintiffs in *Getzelman*, all of their unconscionability arguments challenge the lease agreements as a whole, or the arbitration clause's fee provision, which Defendants have already agreed to sever from the agreement.[4] Plaintiffs' attempt to rely on district court opinions from other districts show only that Magistrate Judge Hegarty's reliance on this District and Supreme Court case law was not clearly erroneous or contrary to law.

## II. The Magistrate Judge Did Not Err in Recommending That the Fee-Shifting Provisions Are Severable From the Agreement As a Whole.

### A. The Fee Shifting Agreements Are Severable.

Magistrate Judge Hegarty stated in his recommendation that "although it is a close question, Plaintiffs have met their burden of demonstrating that enforcing the delegation clause while the fee-shifting provision would effectively preclude them from seeking redress under the FLSA." [Dkt. 149, p. 19]. He then relies on two Colorado District Court cases which held that invalid fee-shifting agreements can be severed from an agreement, preserving the validity of the remainder of the agreement. *See Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1179 (D. Colo. 2016) (quoting *Daugherty v. Encana Oil & Gas (USA), Inc.*, No. 10-cv-02272-WJM-KLM, 2011

---

[4] To the extent Plaintiffs claim that their challenge to the validity of the class-action waiver is an attack on the delegation clause specifically, this argument fails. "Plaintiffs' statutory validity challenges do not pertain specifically to the delegation clause." [Dkt. 149, p. 16]. Because the delegation clause is severable, it is for the arbitrator to determine whether the class action waiver is enforceable. *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (the arbitrator must determine whether "the illegality of one of the contract's provisions renders the whole contract invalid").

WL 2791338, at *12). Plaintiffs challenge Magistrate Judge Hegarty's reliance on these cases because they are not Colorado State Court cases. [Dkt 162, p. 11]. However, Plaintiffs cannot show that Magistrate Judge Hegarty's reasoning was clearly erroneous or contrary to law, including state law.

Colorado courts have held that whether the provisions of a contract are severable depends on the intention of the parties, and where that intention is unmistakably revealed in a written instrument, it is a question of law. *Cornerstone Group XXII, L.L.C. v. Wheat Ridge Urban Renewal Auth.*, 151 P.3d 601, 608 (Colo. App. 2006). *See also L.U. Cattle Co. v. Wilson,* 714 P.2d 1344, 1349 (Colo. App. 1986). Contrary to Plaintiffs' assertion, Colorado law clearly states that questions of severability that are contained in a written contract are for judges to determine. *Id.* Accordingly, Magistrate Judge Hegarty looked at the severance clause written into the lease agreements and applied applicable authority to properly determine that the fee-shifting provisions could be severed from the entire agreement. [Dkt. 149, p. 17].

**B. There Was No Integrated Scheme to Chill Plaintiffs From Exercising Their Legal Rights.**

In their response brief and their objection to Magistrate Judge Hegarty's recommendation, Plaintiffs argue, without any binding authority to support their argument, that an unenforceable provision of a contract should not be enforced if the contract provisions constitute an integrated scheme to chill Plaintiffs from exercising their legal rights. [Dkt. 162, p. 12]. Plaintiffs then challenge the fact that Magistrate Judge Hegarty looked only at the fee provision and not the entire contract to determine if there was an integrated scheme to chill Plaintiffs from exercising their legal rights. Although not required by any binding precedent, Magistrate Judge Hegarty found that the cost-sharing and fee-sharing provision of the lease agreement was not part of an integrated

scheme to prevent Plaintiffs from exercising their rights. [Dkt. 149, p. 20]. As noted in Colorado case law, decisions to sever ultimately rests in the court's discretion. *Cornerstone Group XXII*, 151 P.3d at 608. As such, Magistrate Hegarty's decision to sever the cost-sharing and fee-sharing provision from the rest of the lease was not erroneous or contrary to any Colorado or Tenth Circuit binding law.

**C. The Issue Should Not Be Certified to The Colorado Supreme Court.**

Plaintiffs' disagreement with Magistrate Hegarty's analysis does not warrant certification to the Supreme Court. The Colorado Supreme Court may answer questions of law certified to it by a United States District Court, when requested by the certifying court, if there is involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court. Colo. App. R. 21.1(a). The decision to certify a question is discretionary. *See Massengale v. Okla. Bd. of Examiners in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994) ("under the diversity statutes the federal courts have the duty to decide questions of state law even if difficult or uncertain"). Certification may be appropriate "where the legal question at issue is novel and the applicable state law is unsettled." *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990). However, "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). "Absent some recognized public policy or defined principle guiding the exercise of jurisdiction conferred, federal courts bear a duty to decide questions of state law when necessary to render a judgment." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235 (10th Cir. 2012) (internal quotations and citations omitted).

Plaintiffs seek to have the question of how courts should determine "whether a severability clause in a contract of adhesion[5] should be enforced, unenforceable terms severed from the contract, and the contract enforced in their absence?" [Dkt. 162, pp. 14-15]. The question which Plaintiffs seek to have certified to the Colorado Supreme Court is not novel. This Court has held that a question should not be certified to the Colorado Supreme Court if the issue has already been decided, even if decided by a federal court. *Warren v. Liberty Mut. Fire Ins. Co.*, Civil Action No. 05-cv-01891-PAB-MEH, 2011 U.S. Dist. LEXIS 70496, at *4 (D. Colo. June 29, 2011) (An issue that the Tenth Circuit remanded to the District Court is not novel and does not warrant certification to the Colorado Supreme Court). The Colorado District Court has answered the question regarding severability more than once. In *Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1179 (D. Colo. 2016) this Court held that where a contract contains a severability clause, void or otherwise unenforceable provisions may be severed from the contract. *Id., citing Daugherty, U.S. Dist. LEXIS 76802, 2011 WL 2791338 at *12.*[6] In *Daugherty*, this court emphasized that severing the unenforceable provisions of the arbitration agreement follows federal and statutory law creating a

[5] While Plaintiffs argue the lease agreements are contracts of adhesion, they do not present any evidence of that fact, nor did Magistrate Judge Hegarty determine the lease to be a contract of adhesion. Moreover, as the Supreme Court made clear in *AT&T Mobility LLC v. Conception*, 563 U.S. 333, (2011), that states may not, even where a contract is one of adhesion, take steps that "conflict with the FAA or frustrate its purpose to ensure provide arbitration agreements are enforced according to their terms. (*Conception* at 347, n. 6) (affirming the validity of class action waivers in arbitration agreements and rejecting the application of California's *Discovery Bank* rule, that applied only to contracts of adhesion) as invalid under the FAA). Even if the agreement is found to be a contract of adhesion, the FAA requires that "that an arbitration agreement must ordinarily be treated as "valid, irrevocable, and enforceable." 9 U. S. C. §2. By its terms, then, the Act cares not only about the "enforce[ment]" of arbitration agreements, but also about their initial "valid[ity]"—that is, about what it takes to enter into them. Or said otherwise: A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the Act than a rule selectively refusing to enforce those agreements once properly made.") *Kindred Nursing Centers L. P. V. Clark*, 581 U. S. ____ at 7(2017) (citation omitted).

[6] Plaintiffs cited *Daugherty* in their own response brief [Dkt. 105, p. 15] for the proposition that the District of Colorado has found cost-sharing agreements in arbitration agreements unconscionable. Even though this Court in *Daugherty* decided to sever the invalid provision, Plaintiffs did not raise the issue of whether Colorado state courts have addressed the issue of severability at that time. Plaintiffs' newly raised request to certify the question to the Colorado Supreme Court is untimely.

presumption in favor of arbitrability. *Id.* Even if a federal court does not cite to controlling Colorado case law governing interpretation of specific contract provisions, the federal court does not have to certify the issue to the Colorado Supreme Court if there is sufficient guidance in existing case law. *Fid. Nat'l Title Ins. Co. v. Woody Creek Ventures, LLC,* 830 F.3d 1209, 1212 n.6 (10th Cir. 2016). That is the case here as Magistrate Judge Hegarty supported his analysis with ample and sufficient case law that demonstrates that question is neither novel nor unsettled. Because Plaintiffs have not shown that the issue is novel or even unsettled in Colorado, the motion to certify the question to the Colorado Supreme Court should be denied.

**III. The Magistrate Judge Did Not Err in Recommending That the Nonsignatory Defendants May Enforce the Arbitration Agreement.**

In his recommendation, Magistrate Judge Hegarty noted that Colorado law governs whether the nonsignatories can compel Plaintiffs to arbitration. Magistrate Judge Hegarty recognized that the Court must follow the most recent relevant decisions of the Colorado Supreme Court, and if no such decision exists, the Court must attempt to predict what Colorado's highest court would do. [Dkt. 149, p. 22] citing *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007). Further, the Court may seek guidance from decisions rendered by lower courts in Colorado, and district court decisions interpreting the law of Colorado. *Id.* Accordingly, Magistrate Judge Hegarty's reliance on Colorado Court of Appeals and District of Colorado case law in making his recommendation was not clearly erroneous or contrary to any law, but rather fully consistent with it

As Magistrate Judge Hegarty stated in his recommendation, the Colorado Court of Appeals has identified two circumstances in which the doctrine of equitable estoppel permits a nonsignatory to enforce an arbitration agreement. *Meister v. Stout*, 353 P.3d 916, 920 (Colo. App. 2015). As is

the case here – a nonsignatory Defendant may compel arbitration when the plaintiff relies on the terms of a written agreement to assert his claims *or* when the plaintiff alleges interconnected misconduct between the signatory and nonsignatory defendants and the misconduct is intertwined with the duties or obligations arising from the parties' contract. *Id.* In addition to *Meister*, Magistrate Judge Hegarty properly relies on a District of Colorado case, *Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d. 1174-75 which interpreted Colorado law by citing back to the *Meister* case and held that a nonsignatory can compel arbitration where the alleged misconduct is intertwined with the duties or obligations arising from the parties' contract. *Id.*

In their objection to Magistrate Judge Hegarty's recommendation, Plaintiffs attempt to skirt the standards set forth in *Meister* and *Pollard* by asserting for the first time that a party must demonstrate reasonable reliance before invoking equitable estoppel principals to compel arbitration. [Dkt. 162, p. 16]. This argument was not presented to the Court in Plaintiffs' response to the motion to compel [Dkt. 105], or at any other time and, therefore, should not be considered at this juncture. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). See *United States v. Garfinkle*, 261 F.3d 1030, 1030-31 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). Even if this argument was not waived, Plaintiffs failed to present any binding authority that shows Magistrate Judge Hegarty's reliance on *Meister* and *Pollard* was clearly erroneous or contrary to law.

Plaintiffs incorrectly assert that the Colorado Court of Appeals failed to consider the doctrine of reasonable reliance when it considered whether a nonsignatory may compel arbitration against a signatory under the doctrine of equitable estoppel. [Dkt. 162, p. 162]. In fact, the court in *Meister* did consider the reasonable reliance requirement test when it compared the holding of

12 federal and state court cases which held that equitable estoppel can be used to compel a signatory to arbitrate its claims against a nonsignatory *without* showing the nonsignatory's detrimental reliance to the three out-of-state cases that followed the proposition that the party asserting estoppel has to show detrimental reliance.[7] *See Meister,* 353 P.3d 920- 921. Therefore, Plaintiffs' assumption the Colorado Supreme Court would "insist" that nonsignatories show detrimental reliance to compel signatory plaintiffs to arbitration under the equitable estoppel doctrine is misplaced given both the Colorado Court of Appeals and the District of Colorado have declined to follow such principle when applying equitable estoppel in similar circumstances. *See Meister v. Stout,* 353 P.3d 916, 920 (Colo. App. 2015); *Pollard v. ETS PC, Inc.,* 186 F. Supp. 3d 1166, 1179 (D. Colo. 2016), and; *Daugherty, U.S. Dist. LEXIS 76802, 2011 WL 2791338 at *12.*

Additionally, Plaintiffs request that this Court certify the question of "what principles should courts apply in determining whether a signatory is equitably estopped from avoiding

[7] "While there are no reported Colorado state court decisions addressing this scenario, many other courts have held that a nonsignatory may estop a signatory from avoiding an arbitration provision under these circumstances and compel arbitration. *See GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1165-67 (D. Colo. 2001) (collecting cases). This alternative theory of estoppel has been recognized by federal courts of appeal and state courts alike. *See, e.g., Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627-28 (4th Cir. 2006) ('When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement . . . arbitration is appropriate.' (internal quotation marks omitted)); *see also Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947-48 (11th Cir. 1999), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009); *Armas v. Prudential Secs, Inc.*, 842 So. 2d 210, 212 (Fla. Dist. Ct. App. 2003); *Price v. Ernst & Young, LLP*, [**921] 274 Ga. App. 172, 617 S.E.2d 156, 159-60 (Ga. Ct. App. 2005); *German Am. Fin. Advisors & Trust Co. v. Reed*, 969 N.E.2d 621, 627-28 (Ind. Ct. App. 2012); *Thompson v. Witherspoon*, 197 Md. App. 69, 12 A.3d 685, 693-95 (Md. Ct. Spec. App. 2011); *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 124 Nev. 629, 189 P.3d 656, 661-62 (Nev. 2008); *Hoffman v. Finger Lakes Instrumentation*, LLC, 7 Misc. 3d 179, 789 N.Y.S.2d 410, 414-15 (N.Y. Sup. Ct. 2005); *Woodhaven Homes, Inc. v. Alford*, 143 S.W.3d 202, 205-06 (Tex. App. 2004); 1 Martin Domke, *The Law of Practice on Commercial Arbitration* § 13:8 (3d ed. 2014); *but see Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 812 N.E.2d 534, 542-43, 285 Ill. Dec. 714 (Ill. App. Ct. 2004) (declining to adopt this application of equitable estoppel); *Billieson v. City of New Orleans*, 863 So. 2d 557, 563 (La. Ct. App. 2003) (declining to compel nonsignatory to arbitrate tort claims where party claiming equitable estoppel had not demonstrated it changed its position in justifiable reliance on nonsignatory's conduct); *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 492-93 (Miss. 2005) (requiring proof of detrimental reliance)." *Meister v. Stout*, 2015 COA 60, P13, 353 P.3d 916, 920-921, 2015 Colo. App. LEXIS 691, *6-7 (Colo. Ct. App. May 7, 2015).

arbitration on claims brought against a nonsignatory" lacks merit. As stated above, a question should not be certified to the Colorado Supreme Court if the issue has already been decided, even if decided by a federal court. *Warren v. Liberty Mut. Fire Ins. Co.,* Civil Action No. 05-cv-01891-PAB-MEH, 2011 U.S. Dist. LEXIS 70496, at *4 (D. Colo. June 29, 2011). The Colorado District Court applied *Meister* in *Pollard v. ETS PC, Inc.,* 186 F. Supp. 3d 1166, 1179 (D. Colo. 2016), in holding that a nonsignatory may enforce an arbitration agreement against the signatory party where the complaint contains allegations of interdependent misconduct that is intertwined with duties in the underlying contract. Thus, the issue Plaintiffs seek to certify has already been decided, and is not novel.

In a final attempt to avoid arbitration, Plaintiffs contest that even if *Meister* applies, "Magistrate Judge Hegarty misapplied the law" without citing any binding authority to support this claim. [Dkt. 162, p. 17]. As stated above, Magistrate Judge Hegarty applied the law from *Meister* and *Pollard* – a nonsignatory Defendant may compel arbitration against the signatory plaintiff when the signatory's claim references or presumes the existence of the written agreement or when the plaintiff alleges interconnected misconduct between the signatory and nonsignatory defendants and the misconduct is intertwined with the duties or obligations arising from the parties' contract. *Pollard,* 186 F. Supp. 3d at 1169. *Meister v. Stout,* 353 P.3d 916, 920 (Colo. App. 2015). Plaintiffs' argument that their claims do not rely on the lease agreements because they conflict with the lease agreements is unavailing. Plaintiffs state that their claims "stand to defeat" the terms in the lease agreements. [Dkt. 162, p. 18]. It makes no sense to expect a fact finder to determine whether Plaintiffs' claims "defeat" the terms of the lease agreement without being able to reference or rely on the language of the agreement. Specifically, paragraphs 12 (A),

(B) and (C) of the leases articulate the business relationship between the Clubs and the entertainers, including how the relationship is to be restructured in the event that the relationship between the Entertainers and the Club is found to be one of employment [Dkt. 87-4, p. 10] Paragraph 12 of the lease agreements titled "Business Relationship of Parties" will be informative and necessary for any fact finder to determine the validity of the leases and the intended relationship between the parties, as well as the reformation of the relationship in the event that the relationship is reclassified as one of employment.[8] Magistrate Judge Hegarty correctly stated that the arbitrator will need to examine and interpret the employment agreements to determine whether the Plaintiffs' claims implicate or are affected by the agreements. [Dkt. 149, p. 24] citing *Pollard*, 186 F. sup. 3d at 1169.

Further, Plaintiffs' Complaint includes ten allegations that they were improperly classified as independent contractors. Amended Compl. [Dkt. 65], ¶¶ 8, 10, 12, 20, 41, 104, 105, 117, 159, 163. However, each Plaintiff made the informed decision to be an independent contractor and reviewed the terms of the lease agreement which they now challenge. *See, e.g.*, Amended Comp. ¶¶ 24 (the payment of "House Fees"), 28 (payout of rent). Each agreement included any persons or entities associated with the club as a signing party to the contract. [9] Additionally, Plaintiffs do not contest that they allege substantially interdependent and concerted misconduct between the

[8] See *Blackie v. State of Maine*, 75 F.3d 716, 724 (1st Cir. 1996), which held in the context of an FLSA that the law does not prohibit a pre-agreed contractual provisions specifically negotiated to guard against a change in the legal relationship of the parties.

[9] In *Pollard* the court determined that because the arbitration clause in dispute required arbitration in "all claims against defendant ETS or its affiliated companies" that the non-signatories who were clearly affiliated with the signatories could compel arbitration. *Pollard*, 186 F. Supp. 3d at 1171. As opposed to the arbitration clause in dispute in *Peck*, which referred only to the signing parties, here, like in *Pollard*, the arbitration clauses require arbitration against the club "and any other persons or entities associated with the club." [Dkt. 74, Exhibit 5h, at ¶ 14]. Therefore, the non-signatory affiliated Defendants can compel arbitration with the signatory Defendants.

signatory and nonsignatory Defendants. *See* [Dkt. 105] and [Dkt. 162]. While Plaintiffs clearly articulate their disagreement with Magistrate Judge Hegarty's application of the law, they do not provide any authority showing that it was clearly erroneous or contrary to law.

## CONCLUSION

Magistrate Judge Hegarty correctly recommended that the arbitrator alone should decide the enforceability of the lease agreements, as Plaintiffs have challenged the formation of the entire agreements and the delegation clause is therefore severable. Plaintiffs did not set forth any compelling arguments supported by any binding authority that shows otherwise. Additionally, as Magistrate Judge Hegarty recommended, any claims that the nonsignatory Defendants cannot compel arbitration fail because the claims against the nonsignatories are intertwined with those against the signatories and rely on the lease agreements. Accordingly, the Court should adopt the recommendation of Magistrate Judge Hegarty and compel arbitration.

Respectfully submitted this 11th day of December, 2017.

JACKSON LEWIS P.C.

*s/ Ryan P. Lessmann*
Ryan P. Lessmann
Melisa H. Panagakos
950 17th Street, Suite 2600
Denver, Colorado 80202
Telephone: (303) 892-0404
Facsimile: (303) 892-5575
LessmannR@jacksonlewis.com
Melisa.Panagakos@jacksonlewis.com

Allan S. Rubin
2000 Town Center, Suite 1650
Southfield, MI 48075
Telephone: (248) 936-1900
Facsimile:
RubinA@jacksonlewis.com

*ATTORNEYS FOR DEFENDANTS*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 11th day of December, 2017, a true and correct copy of the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION ON DEFENDANTS' MOTION TO COMPEL ARBITRATION [Doc. 149] AND MOTION TO CERTIFY TO THE COLORADO SUPREME COURT** was served via CM/ECF on the following:

KILLMER, LANE & NEWMAN, LLP

Mari Newman
Darold W. Killmer
Andy McNulty
Liana Orshan
1543 Champa St., Ste. 400
Denver, CO 80202
mnewman@kln-law.com
dkillmer@kln-law.com
amcnulty@kln-law.com
lorshan@kln-law.com

*ATTORNEYS FOR PLAINTIFFS*

*s/ AuCamya M. Parish*
for Jackson Lewis P.C.