**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 17-cv-00631-RM-MEH

GEORGINA SANTICH,
JANEL ANDERSON,
JESSICA SAULTERS ARCHULETTA,
ADRIANNE AXELSON,
EMILY BACHELDER,
ALENA BAILEY,
RACHEL BERRY,
NICOLE BUJOK,
BRANDI CAMPBELL,
TALITA CATTO,
MELISSA CHAVEZ,
ARIEL CLINE,
MEGAN FITZGERALD,
AMANDA GABRIEL,
AMY GLINES,
JOHANNA GRISSOM,
AMANDA LIVINGSTON,
ARIELLE MANSFIELD,
CHADA MANTOOTH,
KARLA MARTINEZ,
CHRISTINA MASSARO,
ALEXIS NAGLE,
LAPORTIA OAKLEY,
GALE RAFFAELE,
AMRICA TERRELL,
PENNY WATKINS,
CASANDRA WINDECKER,
MELANIE TRACY,
PORSCHA GREEN,
AMANDA SHAFER,
ASHLEY WOZNEAK,
REBECCA RAIL,
ANDREA ABBOTT, and
KIMBERY HALE, all individually and on behalf of all others similarly situated,

       Plaintiffs,

v.

VCG HOLDING CORP.,
LOWRIE MANAGEMENT, LLLP,

TROY LOWRIE,
MICHAEL OCELLO,
DENVER RESTAURANT CONCEPTS LP d/b/a PTs Showclub,
KENKEV II, INC. d/b/a PTs Showclub Portland,
INDY RESTAURANT CONCEPTS, INC. d/b/a PTs Showclub Indy,
GLENARM RESTAURANT, LLC d/b/a Diamond Cabaret,
GLENDALE RESTAURANT CONCEPTS, LP d/b/a The Penthouse Club,
STOUT RESTAURANT CONCEPTS, INC. d/b/a La Boheme, and
VCG RESTAURANTS DENVER, INC. d/b/a PT's All Nude,

     Defendants.

---

## ORDER:
### ON RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
### AND
### GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO CERTIFY QUESTION TO THE COLORADO SUPREME COURT

---

This matter is before the Court on the Recommendation of United States Magistrate Judge Michael E. Hegarty (the "Recommendation") (ECF No. 149) on "Defendants' Motion to Stay or Dismiss Proceedings Pursuant to Sections 3 and 4 of the Federal Arbitration Act, to Compel Plaintiffs[] to Arbitration, and to Strike Class and Collective Action  Allegations" (the "Motion to Compel") (ECF No. 74).  In the Recommendation, the Magistrate Judge recommended granting Defendants VCG Holding Corp. ("VCG"), Lowrie Management, LLLP ("Lowrie"), and Denver Restaurant Concepts LP d/b/a PTs Showclub's[1] (collectively, "Defendants") Motion to Compel; ordering Plaintiffs to arbitrate; severing the fee-shifting provisions in certain agreements between some of the parties; and allowing two nonsignatory Defendants (VCG and Lowrie) to enforce these agreements.  Plaintiffs filed a "Combined Objection to Magist[r]ate Judge's Recommendation on Defendants' Motion to Compel

---

[1] There are 11 named defendants in this case, eight of whom have not been served.  In footnote 1 of their Motion to Compel, Defendants asserted the arguments made in the Motion to Compel would pertain to those eight defendants once served.  No one has challenged that assertion.

Arbitration [Doc. 149] and Motion to Certify to the Colorado Supreme Court" (the "Objection")

(ECF No. 162), to which Defendants filed a response and Plaintiffs filed a reply (ECF Nos. 171

& 178). Thereafter, the parties filed supplemental authorities for the Court's consideration (ECF

Nos. 180 & 182). These matters are ripe for the Court's determination.

## I. BACKGROUND

### A. The Amended Complaint

Briefly,[2] at issue in this case is whether Plaintiffs, women working as dancers in adult

entertainment establishments, are independent contractors or employees, notwithstanding

Plaintiffs having signed documents allegedly "electing" to be independent contractors and titled

as an "Entertainment Lease" (hereafter, "Lease" or "Leases"). Plaintiffs allege Defendants

engaged in various wrongful actions, such as denying them earned minimum wages, overtime

pay, and the full retention of their tips; charging them fees to work; and subjecting them to fines.

They bring claims under the Fair Labor Standards Act ("FLSA"); the Colorado Wage Claim Act;

the Colorado Minimum Wage Act; the Maine Independent Contractor Law; the Maine

Employment Practices Laws; the Indiana Minimum Wage Law; and common law (unjust

enrichment).

### B. The Motion to Compel and Recommendation

The Leases contain arbitration clauses and delegation clauses.[3] Thus, Defendants'

Motion to Compel followed seeking to compel arbitration, including arbitrating the issue of

---

[2] The parties are well versed with the allegations; therefore they will only be briefly summarized here.
[3] A delegation clause is an agreement to arbitrate threshold issues concerning the arbitration agreement; it is an agreement "to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).

arbitrability.[4]  Plaintiffs, of course, opposed the Motion to Compel.  The parties submitted papers, including affidavits, for consideration.  The Magistrate Judge recommended the following:

    (1)  That the arbitrator determine the arbitrability and validity of the arbitration agreements because:

        (a) Each Plaintiff signed an arbitration agreement that clearly and unmistakably permits the arbitrator to determine the issues of arbitrability[5] and validity;

        (b) The Plaintiffs' procedural unconscionability arguments challenge the entire agreement (Leases) or the arbitration provision, not the specific delegation clause.  Therefore, the delegation clause may be severed and the arbitrator should decide the procedural unconscionability arguments;

        (c) The Plaintiffs' substantive unconscionability arguments challenge provisions of the arbitration agreement other than the delegation clause, thus such arguments are also for the arbitrator to determine; and

        (d) The Plaintiffs' statutory validity challenges (*i.e.*, that the arbitration provision is unenforceable because the class action waiver violates the NLRA[6] and FLSA) do not specifically pertain to the delegation clause and, therefore, the validity of the class action waiver is also for the arbitrator to decide;

    (2) That the cost-sharing and fee-shifting provisions in the arbitration agreements[7]

---

[4] Defendants, however, argued it is the courts who decide the issues of (1) whether nonsignatory Defendants may compel arbitration; and (3) whether the collective and class action waivers in the Leases require Plaintiffs to arbitrate individually.

[5] The Recommendation on this issue, to which no party objected, found the agreement covered arbitrability and validity.  (Rec., pages 7-10.)

[6] The National Labor Relations Act.

[7] The arbitration agreements are the clauses in the Leases which provide for arbitration.

preclude Plaintiffs from effectively vindicating their claims, but they are severable from the agreements because:

(a) This is an issue for the court to decide, regardless of whether the parties agreed to delegate arbitrability to the arbitrator;

(b) The Leases have a severability or savings clause where the parties agreed to sever any invalid provisions and enforce the remainder; and

(c) These provisions do not rise to a blatant misuse of the arbitration procedure or a scheme to chill Plaintiffs from exercising their rights; and

(3) That the nonsignatory Defendants (VCG and Lowrie) may enforce the arbitration agreement because:

(a) This is an issue for the court to decide; and

(b) The claims against the signatory Defendants are interdependent with those against the nonsignatory Defendants, and the claims are intertwined with duties and obligations in the Leases.

The Magistrate Judge also recommended that this Court stay this litigation at least until the arbitrator determines the validity of the arbitration agreement. In light of his Recommendation, the Magistrate Judge also recommended that Plaintiffs' Expedited Motion to Proceed as a Conditional Collective Action, to Provide Notice, and to Toll all Statute of Limitations (ECF No. 61) be denied as moot. Plaintiffs' Objection followed.

## II.  LEGAL STANDARD

### A. Dispositive/Non-dispositive Motions

To start, the parties disagree over whether the Magistrate Judge's Recommendation is on a dispositive or non-dispositive motion. As such, they disagree over the standard of review to be applied by this Court. The Magistrate Judge treated the Motion to Compel as dispositive, and

Plaintiffs assert it is in fact dispositive but acknowledge that courts are divided on the issue. Regardless, Plaintiffs assert that because the Magistrate Judge's recommendations depend on the interpretation of the Leases and application of law, the review is plenary under the "contrary to law" branch of the Rule 72(a) standard which review has no practical difference under the *de novo* standard of Rule 72(b). Defendants contend the Motion to Compel is not dispositive,[8] relying principally on *Vernon v. Qwest Communs. Int'l, Inc.*, 857 F. Supp. 2d 1135 (D. Colo. 2012) ("*Qwest I*") issued by Magistrate Judge Craig B. Shaffer, but do not challenge Plaintiff's plenary review assertion.

The Court's review shows the Tenth Circuit has apparently not decided the issue, and finds it need not do so here. As Plaintiffs observe, Defendants rely on *Qwest I* but fail to inform the Court that Judge R. Brooke Jackson thereafter "elect[ed] to assume that the motion [to compel arbitration] was *dispositive*" and reviewed Magistrate Judge Shaffer's *Qwest I* order *de novo*. *Vernon v. Qwest Communs. Int'l, Inc.*, 925 F. Supp. 2d 1185, 1189 (D. Colo. 2013) (emphasis added). Further, both parties rely on *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) with which, upon review, the Court agrees. There, the First Circuit determined there is no practical difference between review under Rule 72(b) and the "contrary to law" standard under Rule 72(a). Accordingly, this Court need not decide whether the Motion to Compel in this case is dispositive or nondispositive.[9]

---

[8] Defendants' request for leave to file a response to the Objection indicates their earlier uncertainty as to the nature of the Motion to Compel. (ECF No. 165, page 1 n.1.)

[9] Nonetheless, to the extent there are arguments which implicate or rely on the "abuse of discretion standard," the Court follows Judge Jackson's analysis and will elect to treat the Motion to Compel as dispositive and conduct a *de novo* review.

**B. FAA and Arbitration Agreements**

As no party objects to the legal standard[10] set forth by the Magistrate Judge, and the Court finds the standard is correctly stated, the legal standard set forth in the Recommendation is incorporated herein by reference. Where appropriate or necessary to do so, the Court addresses or applies such standard as set forth herein.

**III. ANALYSIS**

**A. Plaintiffs' Objection – General**

Plaintiffs assert the Magistrate Judge made three errors of law. Specifically, Plaintiffs argue that, contrary to the recommendation: (1) this court, not an arbitrator, must decide whether the arbitration clause[11] is enforceable; (2) the unconscionable cost-sharing and fee-shifting provisions invalidate the Leases in their entirety, including the arbitration clauses at issue; and (3) Defendants VCG and Lowrie, as nonsignatories to the Leases, may not enforce the arbitration clause. As such, Plaintiffs argue, this Court should reject the Recommendation. In the alternative, Plaintiffs request this Court to certify the following two questions to the Colorado Supreme Court: (1) "How should courts determine whether a severability clause in a contract of adhesion should be enforced, unenforceable terms severed from the contract, and the contract enforced in their absence?"; and (2) "What principles should courts apply in determining whether a signatory is equitably estopped from avoiding arbitration on claims brought against a nonsignatory?" (ECF No. 162, pp. 14-15, 17.) Defendants filed no objection, but argue the Magistrate Judge correctly compelled arbitration. In addition, Defendants assert that certification is not warranted.

---

[10] Plaintiffs state that Judge Hegarty "correctly cited the case law on the FAA." (ECF No. 162, page 4.)
[11] The parties do not contend the arbitration clauses at issue are materially different for the purposes of the issues raised by the Motion to Compel.

**B. Matters to which no Objection has been filed.**

Based on the parties' papers, no party objects to the following recommended findings and conclusions:

1) That each Plaintiff signed an arbitration agreement that clearly and unmistakably permits the arbitrator to determine the issues of arbitrability and validity;

2) That the court decides, regardless of whether the parties agreed to delegate arbitrability to the arbitrator, whether the cost-sharing and fee-shifting provisions preclude Plaintiffs from effectively vindicating their claims;

3) That the cost-sharing and fee-shifting provisions in the Leases preclude Plaintiffs from effectively vindicating their claims; and

4) That the Leases have a severability or savings clause where the parties agreed to sever any invalid provisions and enforce the remainder.

As no objection has been filed, the Court reviews these recommendations for clear error. *See* Fed. R. Civ. P. 72 (b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *see also Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate."). Finding no clear error, the above recommendations are accepted.

**C. Matters to which any "objection" has been waived**

In footnote 5 of the Objection, Plaintiffs argue they specifically challenged the delegation clause in footnote 19 of their response (the "Response") to the Motion to Compel (addressing the enforceability or unenforceability of the class and collective action waiver as illegal), but the Magistrate Judge allegedly failed to address this argument. It cannot be said that simply using

the word "delegate" in such a footnote constitutes a specific challenge to the delegation provision, or that a footnote constitutes an objection or "specific objection" to the Recommendation as required under Fed. R. Civ. P. 72(a) and 72(b)(2). Instead, any such argument, contained in a perfunctory manner in footnotes, is waived. *See, e.g., San Juan Citizens Alliance v. Stiles*, 654 F.3d 1038, 1056 (10th Cir. 2011) (collecting cases). Accordingly, the Court finds unchallenged the Magistrate Judge's recommended finding that Plaintiffs' statutory validity challenges (*i.e.*, that the arbitration provision is unenforceable because the class action waiver violates the NLRA and FLSA) do not specifically pertain to the delegation clause and, therefore, the validity of the class action waiver is also for the arbitrator. For this same reason, Defendants' request to strike the class and collective action allegations is denied.

### D. Matters to which an objection has been filed.

#### 1. Who decides arbitrability? The Arbitrator.

Plaintiffs assert that this Court should decide whether the arbitration clause is enforceable. Plaintiffs contend that, in deciding whether Plaintiffs' arguments challenged the delegation clause, the Magistrate Judge incorrectly applied the principle that, in determining whether parties agreed to arbitrate arbitrability, the law reverses the presumption in favor of arbitrability. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Spahr v. Secco*, 330 F.3d 1266, 1270 (10th Cir. 2003). In other words, Plaintiffs contend the Magistrate Judge failed to resolve all doubts in favor of Plaintiffs in determining whether they challenged the delegation clause.

Here, Plaintiffs argue, their procedural and substantive unconscionability arguments specifically challenged the delegation clause; that those arguments also applied to the Lease or arbitration clause as a whole is irrelevant. Specifically, as to their procedural unconscionability argument, Plaintiffs contend the manner in which Defendants presented the Leases to Plaintiffs

precluded them from validly assenting to any of the contract terms, including the arbitration clause and delegation provision; therefore, Plaintiffs assert, their case is analogous to *Spahr, supra.* As to their substantive unconscionability argument, relying on *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 74 (2010), Plaintiffs contend they *have* challenged the delegation clause. Referring to their Response to Defendants' Motion to Compel, Plaintiffs assert they argued there that if the delegation provision were enforced, they would be unable to vindicate their rights due to the fee-shifting and cost-sharing provision. The Court addresses – and rejects – each argument in turn.

*Procedural Unconscionability*.[12] As an initial matter, Plaintiffs contend they did challenge the delegation clause, which challenge (they assert) *included* ("also appl[ied] to"[13]) the Lease and arbitration clause also. The Court's review, however, shows the opposite: Plaintiffs challenged the arbitration clause and Lease as a whole, which challenge they asserted *included* the delegation clause. (*E.g.*, ECF No. 105, page 7.) The fact that such challenge "includes the delegation clause" (and all other clauses), however, is insufficient, as the Magistrate Judge correctly recognized in reliance on *Rent-A-Ctr. See* 561 U.S. at 73 (plaintiff failed to specifically challenge delegation provision where his filings were accurately described as "[h]e opposed the motion to compel on the ground that the *entire arbitration agreement*, including the delegation clause, was unconscionable." (internal quotation marks omitted, italics in original)).[14]

As for Plaintiffs' objection to the Magistrate Judge's rejection of Plaintiffs' arguments based on *Spahr*, the Court finds the Magistrate Judge correctly analyzed and applied *Spahr* to the

---

[12] The Court notes there appears to be a conflation §§ 2 and 4 of the FAA. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded.") Nonetheless, regardless of whether the analysis is under §2 or §4, as set forth herein, Plaintiffs' arguments fail under the applicable law.

[13] Objection, page 4.

[14] This applies equally to any such challenge under Plaintiffs' substantive unconscionability arguments.

arguments and record in this case. Plaintiffs' objection appears to be based on two separate but related arguments. First, Plaintiffs argue they rely on *more* than *how* Defendants allegedly presented the Lease; that their argument is based "in part" on the status or characteristics of Plaintiffs. Next, Plaintiffs argue that *Spahr* was not limited to the status of a party but, instead, addressed a type of challenge that logically can "be directed only at the entire contract," such as their procedural unconscionability argument.

Starting with Plaintiffs' first argument that they relied in part on their status or characteristics, the Court's review of Plaintiffs' Response shows that is not the argument they made before the Magistrate Judge.[15] (*E.g.,* ECF No. 105, page 2 (Defendants' alleged "strategy" to misclassify the entertainers); page 7 ("the manner in which Defendants presented the Leases to Plaintiffs"); page 9 ("Defendants had a uniform policy and practice of presenting Plaintiffs with the Leases in a manner…"); page 14 ("the circumstances surrounding Plaintiffs' signing").) This is also supported by the fact that their challenge was to the *validity* (rather than the formation) of the Leases. (*E.g.*, ECF No. 105, page 7 ("Plaintiffs' challenge to the *validity* of the Arbitration Clause raises a specific challenge to the delegation provision." (emphasis added)). *Spahr*, however, does not address the validity of an agreement; instead, it is a challenge to whether an agreement was ever concluded. *Spahr*, 330 F.3d at 1272. *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (distinguishing issue of validity with whether agreement was ever concluded and referring to *Spahr* as addressing "whether the signor lacked mental capacity to assent"); *In re Cox Enter., Inc. Set-Top Cable Television Box Litig.*, 835 F.3d 1195, 1210-11 (10th Cir. 2016) ("*Buckeye* treated *Spahr* as addressing not whether an agreement

---

[15] The Court recognizes there was a throw-away contention in Plaintiffs' Response that "many" Plaintiffs allegedly lacked legal capacity to contract. (ECF No. 105, p. 10.) But, such a cursory argument is waived. *See, e.g., San Juan Citizens Alliance*, 654 F.3d at 1056.

was enforceable, but whether any agreement between the alleged obligor and obligee was ever concluded." (internal quotation marks and citation omitted)).

For a similar reason, Plaintiffs' second argument fails. In *Spahr*, it was the status (lack of mental capacity) of that party which "logically" limited his ability to challenge "only the entire contract" as his status prevented him for entering into a contract at all. Thus, to fall within *Spahr*, the question to answer is whether a procedural unconscionability challenge *could* be directed at the delegation clause. *See Spahr*, 330 F.3d at 1272-73 (courts may apply *Prima Paint's*[16] rule with ease as "it is conceivable" that a party was fraudulently induced to agree to a contract which contains an arbitration agreement or to agree to the arbitration provision in particular). Here, Plaintiffs' procedural unconscionability arguments, as presented, challenge the Leases as a whole, *i.e.*, all provisions; they argue they could only have challenged the Leases as a whole. But, as the Magistrate Judge correctly found, an unconscionability challenge can be directed at specific provisions of a contract. This is supported by the affidavits Plaintiffs submitted, and referred to in their Response (*see* ECF No. 105, page 12).

Plaintiffs' evidence shows it is conceivable for a procedural unconscionable challenge to be directed at the arbitration clause or delegation provision, as demonstrated by the following. Here, for example, in describing the manner in which the Leases were presented, Graham Hansen[17] stated that he was instructed not only to dissuade entertainers from becoming "employees" but also "to never mention the arbitration and class action waiver," and, if asked, to tell the entertainer "This isn't saying that you can't sue us." (ECF No. 105-1, ¶¶12, 14; *see also* No. 105-2, ¶¶6, 9.[18]) This alleged conduct was directed at specific provisions in the Leases. Thus, when a party challenges a contract based on procedural unconscionability, "it is

---

[16] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).
[17] Mr. Hansen is a former manager for PT's Showclub and PT's All Nude in Denver.
[18] Affidavit of Robert Rhodes, a former manager of VCG Holding Corp.

conceivable" that the procedural unconscionability induced a party to agree to contracts with arbitration and delegation clauses, or to agree to the arbitration and delegation clauses in particular. *See Spahr*, 330 F.3d at 1273. Plaintiffs' challenges are, therefore, analogous to that of fraud in the inducement; thus, they were required to challenge the delegation clause specifically. Not as part of a larger challenge to the Lease.[19] This they did not do.

*Substantive Unconscionability.* Plaintiffs assert they challenged the delegation clause as substantively unconscionable as they argued "that if the delegation provision were enforced, [they] would not be able to effectively vindicate their rights…due to the fee-shifting and cost-sharing provisions."[20] The Magistrate Judge construed this argument "as specifically challenging the delegation clause under the effective vindication doctrine" and analyzed it under such doctrine (Rec., page 13 n.5).

The Court's review shows Plaintiffs did make the argument asserted, but as an effective vindication challenge rather than a substantive unconscionability argument. Here, Plaintiffs' Response to the Motion to Compel shows they argued the fee-shifting and cost-sharing provisions rendered *the arbitration clause* (rather than the delegation clause) unconscionable, and they considered a challenge to the arbitration clause to be a specific challenge to the delegation clause. (ECF No. 105, Response, *e.g.*, page 8 ("Plaintiffs' argument that the terms of the Arbitration Clauses are unconscionable is a specific challenge to the delegation clause…."), page 19 ("Accordingly, the Arbitration Clause that Defendants required Plaintiffs to sign is substantively unconscionable and unenforceable….").) This finding is also supported by

---

[19] Indeed, Plaintiffs' challenge appears to mirror that which the Ninth Circuit found was a threshold question of unconscionability for the court, but which the Supreme Court reversed in *Rent-A-Ctr.* 561 U.S. at 66-67. *Compare Rent-A-Ctr.*, 561 U.S. at 67 (Stating the Ninth Circuit "held that where a party challenges an arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to the agreement, the threshold question of unconscionability is for the court." (quotation marks and citation omitted)) *with* Plaintiffs' Response at ECF No. 105 at 9 (Defendants' alleged procedural unconscionable conduct "precluded valid assent to the terms" of the Leases, including the arbitration clause.)

[20] Objection, page 8.

Plaintiffs' reliance on the alleged costs of vindicating their *entire dispute*, not the cost of arbitrating arbitrability, to support unconscionability. (*See* ECF No. 105, Response, page 17 ("The cost-splitting and prevailing party provisions in the Arbitration Clause here preclude effective vindication of Plaintiffs' FLSA claims…."), page 18 n.13 (same).) Accordingly, having failed to challenge the delegation provision as substantively unconscionable, arbitrability is for an arbitrator to decide.

### 2. Severability of Cost-Sharing and Fee-Shifting Provisions? They are severable.

The Magistrate Judge recommended finding that the cost-sharing and fee-shifting provisions thwart effective vindication of Plaintiffs' ability to pursue their claims; therefore, such provisions are unenforceable. As stated above, no party objects to such recommendation. The Magistrate Judge further recommended finding that (1) the Leases contain severability or savings clauses; and (2) these provisions are severable from the Lease as a whole and do not prohibit the court from compelling arbitration. It is the recommended finding that the provisions are severable (and, therefore, Plaintiffs may be compelled to arbitrate) to which Plaintiffs object.

Specifically, Plaintiffs contend that the cost-sharing and fee-shifting provisions invalidate the entire Lease, including the arbitration clause. Plaintiffs contend the Magistrate Judge made two legal errors in reaching his recommended finding. First, Plaintiffs argue that severability is decided as a matter of state law, and the Magistrate Judge did not rely on or examine Colorado law on severance. Second, Plaintiffs argue the Magistrate Judge should have examined the alleged "scheme" of the Lease *as a whole* in determining whether to sever the provisions as, under Colorado contract law, courts should interpret a contract in its entirety.[21] In the

---

[21] In evaluating whether to sever, the Magistrate Judge had declined to consider Plaintiffs' unconscionability challenges to the Lease/arbitration clause as he had recommended reserving the merits of those challenges for the arbitrator; therefore, he only considered the cost-sharing and fee-shifting provisions in evaluating Plaintiffs' "scheme" argument.

alternative, Plaintiffs contend this Court should certify the question of severability as to adhesion contracts to the Colorado Supreme Court as there are no Colorado Supreme Court cases on point or any Colorado cases that provide sufficient guidance.

Defendants, on the other hand, argue that Plaintiffs cannot show the Magistrate Judge's reasoning was clearly erroneous or contrary to law, but does not dispute that Colorado law applies. In addition, Defendants assert that, although not required by binding precedent, the Magistrate Judge found the cost-sharing and fee-shifting provisions were not part of an integrated scheme to prevent Plaintiffs from exercising their rights. Finally, Defendants contend the issue of severability is neither novel nor unsettled in Colorado; therefore, certification should not be had.

### a) *The unenforceable provisions are severable*

Plaintiffs argue that Colorado law applies, but their Response to the Motion to Compel never so argued. Instead, while the Response cites to some general Colorado law, it is replete with citations to decisions rendered in other jurisdictions. Regardless, as the parties apparently agree that Colorado law controls (and, on this record, the Court assumes it is so),[22] the Court will examine the issue accordingly.

Next, the Court's review shows the word "adhesion" did not appear in Plaintiffs' Response to the Motion to Compel. (*See* ECF No. 105.) Instead, Plaintiffs' repeated arguments were based on unconscionability. Regardless, Plaintiffs rely on the Restatement (Second) of Contracts § 184, cmt. (b), arguing that the Colorado Supreme Court would likely adopt the Restatement. Plaintiffs are somewhat correct. In *Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P.2d 585, 593 (Colo. 1984), *legislatively repealed on other grounds as stated in Schlessinger v.*

---

[22] The Court notes that there are Leases which were entered in other states. As the parties have not argued that any other state's law applies or that such other state's laws are different, the Court will assume, without deciding, that where state law is applicable, it is Colorado law which controls.

*Schlessinger*, 796 P.2d 1385, 1389 (Colo. 1990), the Colorado Supreme Court cited with approval to §184 of the Restatement. *Meyer* supports the Magistrate Judge's recommendation.

In *Meyer*, the Colorado Supreme Court held the "household exclusion" clauses in automobile liability policies of insurance were invalid because they violated the public policy of compulsory liability insurance required under the Colorado Auto Accident Reparations Act (the "Act"). And, the Colorado Supreme Court held that, where the clause has been held invalid, the limits of an insurer's liability are those provided under the policy rather than the lesser limits required by the statutory standard.[23] As support, in part, for the court's decision, it stated:

> Moreover, our choice of rules is supported by the well-established principle of contract law that where a provision in a contract is void because it is contrary to public policy, the remaining portions of the agreement are enforceable to the extent the illegal provision can be separated from the valid promises. *See, e.g., Reilly v. Korholz*, 137 Colo. 20, 320 P.2d 756 (1958) (even if provision in stock transfer agreement which required transferor to vote his remaining shares for transferee in board of directors election is void or contrary to public policy, valid portions are enforceable); *Otis Elevator Co. v. Maryland Casualty Co.*, 95 Colo. 99, 33 P.2d 974 (1934) (terms of contract exonerating elevator installer from liability void as against public policy); **Restatement (Second) of Contracts §§ 178, 184 (1979)**. *See generally* J. Calamari & J. Perillo, *The Law of Contracts* § 22-4(d) (2d ed. 1977).

689 P.2d at 593 (bold added). In *Reilly*, cited in *Meyer*, the Colorado Supreme Court stated that even if the portion of the agreement at issue were contrary to public policy, "it is severable and does not render the balance of the agreement void or contrary to public policy." 320 P.2d at 760. Further, the court cited to the "general rule" as:

> Where an agreement founded on a legal consideration contains several promises, or a promise to do several things, and a part only of the things to be done are illegal, the promises which can be separated, or the promise, so far as it can be separated, from the illegality, may be valid. The rule is that a lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time and for the same consideration, * * *.

---

[23] In *Meyer*, the insured purchased more coverage than required under the Act.

320 P.2d at 760 (quoting 17 C.J.S. Contracts § 289, p. 674 (quotation marks omitted)). *Compare Jones v. Feiger, Collison & Kilmer*, 903 P.2d 27, 35 (Colo. App. 1994), *as modified on denial of reh'g* (Feb. 2, 1995), *rev'd on other grounds*, 926 P.2d 1244 (Colo. 1996) (Offending provision was not subject to severance as those "terms are inextricably intertwined.")

The severability of the cost-sharing and fee-shifting provisions is further reinforced by the fact that the Leases have severability or savings clauses, a matter not at issue in *Reilly* or *Jones* and not addressed in § 184 of the Restatement. And, under Colorado law, in order to determine whether a contract is severable "[t]he primary objective is to ascertain the intent of the contracting parties." *John v. United Advertising Inc.*, 165 Colo. 193, 198, 439 P.2d 53, 56 (1968). *See also CapitalValue Advisors, LLC v. K2D, Inc.*, 321 P.3d 602, 606 (Colo. App. 2013). Although these Colorado cases go on further to discuss gleaning the parties' intent from the terms and provisions of the contract in light of the surrounding circumstances, they did so where there was no severability or savings clause. Here, however, the Court needs to look no further than the Leases to determine the parties' intent as the Leases contain express provisions unambiguously requiring severability. *See CapitalValue*, 321 P.3d at 605 (The parties' intent is determined "by examining the language of the instrument itself." (citing *Ad Two, Inc. v. City & Cnty of Denver*, 9 P.3d 373, 376 (Colo. 2000))). Moreover, even assuming, *arguendo*, further examination is required even where the agreement contains a severability or savings clause, the Court also finds that the provisions are not inextricably intertwined with the other terms and conditions of the Leases, and that their severance would not effectively eviscerate the bargain entirely between the parties. As such, the Court agrees with the Magistrate Judge's determination and recommendation that the provisions are severable. [24]

---

[24] For these same reasons, Plaintiffs' "integrated scheme" argument in reliance on decisions from other jurisdictions is rejected. First, Plaintiffs have cited to no controlling authority to support such an argument. Further, as the

### b) *No Certification*

The Court agrees with Defendants and finds that the issue of severability need not be certified to the Colorado Supreme Court. "Whether to certify a question of state law to the state supreme court is within the discretion of the federal court." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1998) (citing *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974)). Certification may be appropriate "where the legal question at issue is novel and the applicable state law is unsettled." *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990). "Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo*, 843 F.2d at 407 (citations omitted). In this case, the Court finds the issue of severability is not novel or unsettled such that certification is warranted. Accordingly, Plaintiffs' alternative request for certification is denied.

### 3. Enforcement of Arbitration Agreement by Nonsignatory Defendants

The Magistrate Judge determined that whether nonsignatory Defendants VCG and Lowrie may enforce the arbitration clause was a question for the court and that Colorado law applies to this issue. As no party objects, the Court assumes it is so. With this premise, in reliance on *Meister v. Stout*, 353 P.3d 916 (Colo. App. 2015) and *Pollard v. ETS PC., Inc.* 186 F. Supp. 3d 1166 (D. Colo. 2016), the Magistrate Judge recommended finding the nonsignatory Defendants may compel arbitration because Plaintiffs' claims against the signatory Defendants are interdependent with those against the nonsignatory Defendants, and the claims are intertwined with duties and obligations in the Leases.[25]

---

Magistrate Judge correctly found, even if such an argument may apply, only the invalid provisions should be examined and such provisions do not require the Court to void or otherwise invalidate the severability clause.
[25] In footnote 8, the Magistrate Judge found that, because his findings on equitable estoppel are based on these grounds, it need not reach the reliance argument.

Plaintiffs' challenge here is as follows. First, Plaintiffs contend this Court should certify to the Colorado Supreme Court the issue of whether nonsignatories to an agreement must show *reliance* to compel signatories to arbitration under the equitable estoppel doctrine, something the *Meister* court did not require. Further, in their reply brief, Plaintiffs also argue certification should be had as *Meister* erroneously relied on pre-*Arthur Anderson LLP v. Carlisle*, 556 U.S. 624 (2009) cases that incorrectly applied a federal presumption in favor of arbitration.

Second, alternatively, Plaintiffs assert the recommendation should be rejected as the Magistrate Judge misapplied the law announced in *Meister,* and *Pollard* is distinguishable and was wrongly decided. According to Plaintiffs, reliance on the terms or obligations of the Lease is "key" to the application of equitable estoppel but, here, Plaintiffs assert, they do not rely on such terms or obligations; instead, their claims allegedly seek to defeat or are in conflict with them. Further, Plaintiffs allege, the language of the Lease offers the fact-finder no help in determining the intended relationship between the parties as it is the economic realities of the relationship which control.

Defendants, in response, assert Plaintiffs' argument that a showing of reasonable reliance is required was not raised in their Response to the Motion to Compel, or any other time; therefore, Defendants assert, such argument is waived. Nonetheless, Defendants contend that, even if not waived, Plaintiffs fail to show the Magistrate Judge's reliance on *Meister* and *Pollard* was clearly erroneous or contrary to law. Further, Defendants argue the issue has already been decided in *Pollard*, even if it is a federal court decision, so certification should not be had.

As to Plaintiffs' second argument, Defendants contend that the provisions of the Leases will be informative and necessary for any fact finder to determine the validity of the Leases and the parties' intended relationship, as well as to the reformation of the relationship should that be

required. Defendants also assert[26] that the arbitration clauses require arbitration against the club "and any other persons or entities associated with the club," citing to ECF No. 74, Exhibit 5h, at page 14.[27] Accordingly, Defendants argue, the nonsignatory affiliated Defendants can compel arbitration with the signatory Defendants.

### a) Certification is Appropriate

Defendants' primary argument[28] directed against certification is that the issue of what principles should apply has already been decided by a federal court via *Pollard*.[29] While it is true that the issue has been decided by courts in this District in reliance on *Meister*, it is nonetheless the pronouncement of state law by the Colorado Supreme Court, not Colorado's intermediate appellate court or another federal district court, which this Court must follow. *See BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1203 (10th Cir. 2016).[30] However, "[a]lthough we are not required to follow the dictates of an intermediate state appellate court, we *may* view such a decision as persuasive as to how the state supreme court might rule." *Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996) (emphasis added). *But see Lowell Staats Mining Co. v. Pioneer Uravan, Inc.,* 878 F.2d 1259, 1269 (10th Cir. 1989) ("In the

---

[26] Such assertion is found in footnote 9 of Defendants' Response to the Objection. (ECF No. 171, page 17 n.9.) As such, it may be considered waived. Nonetheless, the Court addresses it to show its complete lack of merit.

As Plaintiffs argue in their reply, and as stated by the Magistrate Judge (ECF No. 149, page 21, n.7), the language Defendants relied upon (and relies upon again here) does not appear in the 2015 version of the Lease at issue, which is the most recent version, and that Lease contains a superseding effects clause rendering prior provisions irrelevant. As such, Defendants' reliance on such provision to support the assertion that nonsignatory Defendants may enforce the arbitration agreement is futile.

[27] Defendants referred to ¶14, but the Court assumes they mean page 14, as the language they rely on appears in ¶21, page 14, at ECF No. 74-12.

[28] The Court recognizes that Plaintiffs' failure to previously raise the alleged requirement of reliance may result in the waiver of such an argument. Nonetheless, in light of the fact that Defendants address this argument in their response to the Objection and the questions raised concerning the application of *Meister*, the Court will consider such argument.

[29] And, as submitted by Defendants in their Notice of Supplemental Authorities (ECF No. 182), subsequently in *Mantooth v. Bavaria Inn Rest., Inc.*, No. 17-cv-1150-WJM-MEH, 2018 WL 2241130, at *10, 11 (D. Colo. May 16, 2018).

[30] Defendants' reliance on *Warren v. Liberty Mut. Fire Ins. Co.*, No. 05-cv-01891-PAB-MEH, 2011 WL 2600704 (D. Colo. June 29, 2011), to show a contrary position is misplaced as *Warren* was based on the law-of-the-case doctrine.

absence of a state supreme court ruling, a federal court must follow an intermediate state court decision unless other authority convinces the federal court that the state supreme court would decide otherwise.").

In this District, the courts which have decided the issue have found *Meister* persuasive and predicted that the Colorado Supreme Court would follow the rationale in that decision. Plaintiffs' briefings raise issues which, upon the Court's review of controlling U.S. Supreme Court and Colorado Supreme Court decisions, persuade this Court that the question of whether reliance is required in order for a nonsignatory to invoke equitable estoppel against signatories should be resolved by the Colorado Supreme Court. As it currently stands, *Meister* fails to address this issue and the Court is unclear whether this element is required under Colorado law. This issue of law may be determinative of whether the nonsignatory Defendants may equitably estop Plaintiffs from pursuing their case before this court and there is no controlling precedent in the decisions of the Colorado Supreme Court.

Specifically, three principles or propositions persuade the Court that certification is appropriate in this case. First, contracts can be enforced by non-parties through "'*traditional principles*' of state law," including equitable estoppel. *Arthur Andersen*, 556 U.S. at 631 (emphasis added). Second, "arbitration agreements [are] as enforceable as other contracts, but not more so." *Prima Paint*, 388 U.S. at 404 n.12. "[C]ourts must [therefore] place arbitration agreements on an equal footing with other contracts." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Thus, "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue" are not permitted. *Concepcion*, 563 U.S. at 339. After all, it is a "fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr.*, 561 U.S. at 67. Third, Defendants do not dispute that Colorado law requires reliance by the party asserting equitable estoppel, as argued by Plaintiff. And, the Court's review of Colorado

Supreme Court decisions shows there is such a requirement. *E.g., V Bar Ranch LLC v. Cotten*, 233 P.3d 1200, 1210 (Colo. 2010) ("Generally, equitable estoppel arises where one party induces another to detrimentally change position in reasonable reliance on that party's actions through words, conduct, or silence." (citing *City of Thornton v. Bijou Irr. Co.*, 926 P.2d 1, 75 (Colo.1996))); *Dove v. Delgado*, 808 P.2d 1270, 1275 (Colo. 1991) (reliance by party asserting estoppel is one of four elements, all of which must be clearly shown); *Jefferson Cty. School Dist. No. R-1 v. Shorey*, 826 P.2d 830, 841 (Colo. 1992) (same). Here, *Meister*, addressed the first principle, but not the second or third.

As to the first principle, the *Meister* court stated that, "[u]nder Colorado law, both signatory and nonsignatory parties may be bound by an arbitration agreement if so dictated by ordinary principles of contract law." 353 P.3d at 920. As to the second principle, it is unclear whether that court may have applied equitable estoppel specific to arbitrations. And, as for the third principle, the requirement of reliance under the equitable estoppel doctrine was not addressed. [31] But, then, it does not appear these two principles were raised in that case. It may be that, under Colorado law, in the context of contracts, equitable estoppel raised by nonsignatories does not require reliance. It may be that Colorado law requires courts only to focus on the signatory's actions or conduct. But, this Court finds that is not an issue it – a federal court applying Colorado law – should decide.

---

[31] The Court recognizes the *Meister* court used the signal "*but see*" in comparing the cases which required a showing of reliance. The parties disagree as to this significance. The citations and comparison of cases arguably show the *Meister* court recognized some courts have required reliance. And, at the other end of the spectrum, it arguably, may show that the *Meister* court impliedly rejected such a requirement. Nonetheless, the *Meister* court did not address that issue. And, as the *Meister* court did not address reliance, it obviously did not require it.

Accordingly, the Court will certify the following question to the Colorado Supreme

Court:

> What elements must be established by a nonsignatory to an arbitration agreement in order for the doctrine of equitable estoppel to apply and thereby require a signatory to an arbitration agreement to arbitrate claims brought against a nonsignatory?

### b) Reliance on Meister and Pollard

In light of the Court's determination to certify the above question to the Colorado

Supreme Court, it need not address the second argument at this time.[32]

### E. The Supplemental Authorities

Plaintiffs and Defendants each filed a notice of supplemental authority(ies); the Court

finds they do not show a contrary result to what is set forth herein. Specifically, Plaintiffs'

reliance on *Degidio v. Crazy Horse Saloon & Rest., Inc.*, 880 F.3d 135 (4th Cir. 2018), is

misplaced for a number of reasons, not the least of which is the fact the district court refused to

enforce the arbitration agreements because "Crazy Horse had obtained the arbitration agreements

through a unilateral, unsupervised, and misleading pattern of communication with absent class

members initiated more than a year *after the pendency of this case*." *Id.* at 140 (emphasis

added). The Fourth Circuit relied on a history of misconduct by Crazy Horse during the

pendency of the case (*e.g.*, continuing to pursue merits-based litigation before asking the court to

compel arbitration) to affirm the district court's refusal to enforce the agreements which they

found to be "shams."

Defendants' reliance on *Epic Systems Corp. v. Lewis*, -- U.S. -- , 138 S. Ct. 1612, 200 L.

Ed. 2d 889 (2018) is also misplaced. There, the Supreme Court decided whether employer-

employee agreements that contain class and collective waivers and required employment

disputes be resolved by individualized arbitration violate the National Labor Relations Act. But,

---

[32] Except for the argument addressed in footnote 26.

Defendants did not challenge[33] the recommendation that Plaintiffs' statutory validity challenges (*i.e.*, that the arbitration provision is unenforceable because the class action waiver violates the NLRA and FLSA) do not specifically pertain to the delegation clause and, therefore, the validity of the class action waiver is for the *arbitrator*. As for *Mantooth v. Bavaria Inn Rest., Inc.*, No. 17-cv-1150-WJM-MEH, 2018 WL 2241130 (D. Colo. May 16, 2018), contrary to Defendants' assertion, as it is a district court opinion, it is not *controlling* authority on this Court. Nonetheless, the Court finds *Mantooth* lends support to some aspects of the Recommendation.[34]

### F. STAY OF ARBITRATION AND ADMINISTRATIVE CLOSURE

The Court finds arbitration should be compelled in favor of the signatories to the Leases. In light of the Court's certification of the question concerning nonsignatories, whether they may compel arbitration is currently an open question. It may be that they too may compel arbitration. After considering all the relevant factors, including Fed. R. Civ. P. 1, the interests of the parties in proceeding expeditious against any interest in conserving resources, the Court finds that a stay of its order compelling arbitration as to the signatories should be had until the Colorado Supreme Court determines whether it will agree to answer the question certified and, if so, a written opinion given. In addition, the Court finds that administrative closure is warranted pending such determination.

### IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

(1) Plaintiffs' objections in their "Combined Objection to Magist[r]ate Judge's Recommendation on Defendants' Motion to Compel Arbitration [Doc. 149] and Motion to Certify to the Colorado Supreme Court" (ECF No. 162) is OVERRULED

---

[33] And, as stated, any challenge by Plaintiffs has been waived.
[34] The Court recognizes there are motions for reconsideration pending in *Mantooth*.

as stated herein, and DEFERRED as to their argument regarding the nonsignatory Defendants as stated herein;

(2) The Recommendation of United States Magistrate Judge (ECF No. 162) is ACCEPTED IN PART and DEFERRED IN PART as stated herein;

(3) Defendants' Motion to Stay or Dismiss Proceedings Pursuant to Sections 3 and 4 of the Federal Arbitration Act, to Compel Plaintiffs[] to Arbitration, and to Strike Class and Collective Action  Allegations" (ECF No. 74) is GRANTED IN PART, DEFERRED IN PART, and DENIED IN PART as follows:

(a) Any portion of any Lease that any Plaintiff may have with Defendants is SEVERED to the extent it establishes a cost-sharing and fee-shifting obligation different from those established in 29 U.S.C. § 216(b);

(b) Whether nonsignatory Defendants VCG Holding Corp. and Lowrie Management, LLLP may compel Plaintiffs to arbitrate in accordance with the arbitration clause, severed of the cost-sharing and fee-shifting provisions as stated above, is DEFERRED until a determination is made by the Colorado Supreme Court as to the question certified;

(c) Signatory Defendants may compel Plaintiffs to arbitrate as stated herein; and

(d) Defendants' Motion to Compel is otherwise DENIED;

(4) This ORDER to compel arbitration in favor of signatory Defendants is hereby STAYED pending a determination by the Colorado Supreme Court on the question certified, unless otherwise ordered by the court;

(5) Plaintiffs' Motion to Certify to the Colorado Supreme Court (ECF No. 162) contained in their Objection is GRANTED IN PART and DENIED IN PART as stated herein;

(6) Pursuant to Colorado Appellate Rule 21.1, the Court CERTIFIES the following question to the Colorado Supreme Court:

What elements must be established by a nonsignatory to an arbitration agreement in order for the doctrine of equitable estoppel to apply and thereby require a signatory to an arbitration agreement to arbitrate claims brought against a nonsignatory?

(7) Pursuant to Colorado Appellate Rule 21.1(d), the Clerk shall forward this Order to the Colorado Supreme Court under the Clerk's official seal;

(8) Pursuant to Colorado Appellate Rule 21.1(e), the fees and costs assessed by the Colorado Supreme Court shall be borne by Plaintiffs;

(9) The following motions and objections are DENIED AS MOOT:

(a) Defendants' Objection To Magistrate Judge's Order [Dkt. 41] (ECF No. 51); and

(b) Defendants' Objection To Magistrate Judge's Order [Dkt. 81] (ECF No. 94);

(10) Plaintiffs' Expedited Motion to Proceed as a Conditional Collective Action, to Provide Notice, and to Toll all Statutes of Limitations (ECF No. 61) is DENIED AS MOOT as to the signatory Defendants and DEFERRED as to the nonsignatory Defendants until the resolution of the question certified; and

(11) Pursuant to D.C.COLO.LCivR 41.2, the Clerk shall ADMINISTRATIVELY CLOSE this case, subject to a motion to reopen for good cause.

DATED this 20th day of August, 2018.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge